Robert M. Waxman (SBN 89754)
  rwaxman@ecjlaw.com
David N. Tarlow (SBN 214050)
  dtarlow@ecjlaw.com
John W. Shenk (SBN 261573)
  jshenk@ecjlaw.com
**ERVIN COHEN & JESSUP LLP**
9401 Wilshire Boulevard, Ninth Floor
Beverly Hills, California 90212-2974
Telephone  (310) 273-6333
Facsimile  (310) 859-2325

Attorneys for ALORICA INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MELISSA LILLEHAGEN, SHARON SHAW, JANNA CARLILE, SHANAI WHITMORE, AKESHA GRIZZARD and JOSHUA DICKSON on behalf of themselves and others similarly situated,<br><br>　　　　　Plaintiffs,<br><br>　　v.<br><br>ALORICA INC.,<br><br>　　　　　Defendant. | Case No. SACV 13-00092 DOC (JPRx)<br><br>**[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, SUMMARY ADJUDICATION.**<br><br>The Hon. David O. Carter<br><br>Date:　　　October 20, 2014<br>Time:　　　8:30 a.m.<br>Courtroom:　9D |

Defendant ALORICA INC. ("Alorica") submits the following Separate Statement of Uncontroverted Facts and Conclusions of Law In Support of Its Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment.

## UNCONTROVERTED FACTS

1.　　Alorica is a company that provides customer management services to its corporate clients.  The over 8,700 call service representatives who have opted into this action worked at approximately thirty-seven (37) different call service center locations in at least sixteen (16) states around the country.  Alorica provides

1  call center services to its corporate clients.  In doing so, Alorica, *inter alia,* provides

2  telephonic technical support to customers of its clients, and telephonic sales services

3  and support to its clients.  Between January 18, 2010 and the present, Alorica

4  acquired two other call center companies (Ryla Teleservices, Inc. ("Ryla") and PRC,

5  LLC ("PRC")), as well as all of their accounts.  [Declaration of Elizabeth Anne

6  Romagnino ("Romagnino Dec.") ¶ 4.  Declaration of Cornelius Colao ("Colao

7  Dec.") ¶ 7.]

8      2.    The Alorica employees on the front line of Alorica's business who

9  actually answer and handle the calls placed to Alorica's call centers are called

10  customer service representatives ("CSRs").  [Declaration of David N. Tarlow

11  ("Tarlow Dec."), Exhibit A, of Opt-in Plaintiff Edward Amend ("Amend")

12  Deposition ("Depo.") 132:17-133:10.  Tarlow Dec., Ex. H, Named Plaintiff Brenda

13  Luper ("Luper") Depo. 12:11-13:3.  Tarlow Dec, Ex. L, Named Plaintiff Sharon

14  Shaw ("Shaw") Depo. 57:1-20.]

15      3.    Alorica has a policy to pay its customer service representatives for all

16  time worked. [Tarlow Dec. Exhibit M, Carol Smith ("Smith") Depo. 12:6-13, 26:5-

17  9, 54:12-55:3.  Smith Dec., ¶ 4-5.  Colao Dec. ¶ 4-8, Exhibits 1-3 thereto.

18  Romagnino Dec. ¶ 6-8.]

19      4.    "Floor walkers" at Alorica are employees who walk the production

20  floor and assist CSRs when they are on calls.  [Tarlow Dec., Exhibit J, Named

21  Plaintiff Ignacio Pizana ("Pizana") Depo. 22:4-23:21.]

22      5.    Named Plaintiff Ignacio Pizana and Steven Bass testified that they were

23  never customer service representatives.  [Tarlow Dec., Exhibit J, Pizana Depo.

24  19:18-20:9, 39:16-40:4, Exhibit B, Bass Depo., 14:6-12 .]

25      6.    Pizana and Opt-in Plaintiff Steven Bass ("Bass") each testified that he

26  served as a "floor walkers" for Alorica.  [Tarlow Dec., Exhibit J, Pizana Depo. 22:4-

27  8; Tarlow Dec., Exhibit B, Bass Depo. 77:16-78:4.]

28      7.    Plaintiffs have alleged that from January 18, 2010 to the present,

ERVIN COHEN & JESSUP LLP

Alorica has committed a violation of the Fair Labor Standards Act ("FLSA") by having a policy of failing to pay customer service representatives for breaks between five (5) and twenty (20) minutes.  In particular, Plaintiffs have alleged that Alorica enforced a company-wide policy "whereby customer service representatives were required to log off Alorica's computerized telephone system when taking breaks of less than twenty (20) minutes, particularly breaks that were not regularly-scheduled breaks.  Plaintiffs claim that by policy and practice, Alorica would require customer service representatives to log back onto Alorica's computerized telephone system upon return from a short break of less than twenty (20) minutes.  Alorica was not compensating customer service representatives for these short breaks (rest periods) of less than twenty minutes, particularly unscheduled breaks of less than twenty (20) minutes."  [Complaint ¶ 5.]

8.     Plaintiffs have asserted that Alorica has utilized a company-wide compensation scheme for each CSR "which treats any break time of less than twenty (20) minutes during a customer service representative's 'continuous workday' (as that term is defined under the FLSA) as uncompensated time." [Complaint ¶ 6.]

9.     Alorica has a policy which they provide each of its full time CSRs with authorized paid rest breaks each work day, ranging from 10 to 15 minutes per 8 hour shift.  Specifically, Named Plaintiff Janna Carlile ("Carlile") declared:

> The 'Break 'code in the Policy only applied to two 10 minute breaks per 8 hour shift.  If I took longer than 10 minutes on either of these two scheduled pay break times during the workday, a supervisor would log me off the phone system.  If I needed to take a break of less than 20 minutes, and had already used my two scheduled paid break times during the workday, I was required to log off the phone system and then log back on upon returning from my short break…This policy/practice was applied equally to my co-workers at the Alorica call center at which I worked.

Opt-in Plaintiff Edward Amend ("Amend") declared:

> Alorica's actual policy/practice has been to not pay for all breaks shorter than 20 minutes, but rather to pay for the two 15 minute breaks during an 8 hour shift.

[PROPOSED] STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  [Tarlow Dec., Exhibit J, Pizana Depo. 10:7-18.  Tarlow Dec., Exhibit A, Amend

2  Depo (49:16-22).  Amend Dec. dated September 27, 2013, ¶ 8.  Named Plaintiff

3  Janna Carlile ("Carlile") Dec. ¶ 4, dated September 10, 2013.  Shaw Dec. ¶ 5, dated

4  August 6, 2013.  Declaration of Named Plaintiff Melissa Lillehagen ("Lillehagen")

5  Dec. ¶ 5, dated June 7, 2013.  Named Plaintiff Shanai Whitmore ("Whitmore") Dec.

6  ¶ 5, dated June 5, 2013.  Colao Dec. ¶ 4-5, Exs. 1-3. Tarlow Dec., Exhibit B, Bass

7  Depo. 59:9-18; Exhibit 1 thereto at ALOR3003260-ALOR3003261). Colao ¶ 9. ]

8       10.     Pizana and Opt-In Plaintiff Alfonso Moore ("Moore) testified that they

9  were paid for other breaks, such as to use the restroom or to get a drink of water

10 outside of their normally paid scheduled breaks.  Moore specifically testified that

11 when he took an unscheduled bathroom break, he understood that it was a paid

12 break because "I can't help it if I have to go to the bathroom."  [Tarlow Dec.,

13 Exhibit J, Pizana Depo. 16:9-23, 17:23-18:18.  Tarlow Dec., Exhibit I, Moore Depo.

14 34:8-35:10.]

15      11.     Each CSR's time clock (which initially measures their time at work) is

16 linked to their telephone.  As Alorica is comprised of several different call facilities,

17 some of which have been acquired from competitors in the call service industry,

18 PRC, LLC or Ryla, the time clock technology utilized at the various Alorica call

19 center facilities can differ from site to site.  At some facilities, the CSRs' time

20 clocks are started when they enter their login identification directly into their

21 telephone.  This is called the "hard phone" time clock.  Once the CSR enters his or

22 her login identification number onto the hard phone, they are on the clock at Alorica

23 for the day.  In other Alorica facilities, the CSR's time clock is started when they

24 enter their login identification number into their desktop computer, which is linked

25 to their telephone.  This is called the "soft phone."  Once the CSR enters his or her

26 login identification number into the soft phone, they are on the clock at Alorica for

27 the day.  [Lacewala Dec. ¶ 3.  Colao Dec. ¶ 7-8, 15-16, Exhibits 1-3.]

28      12.     Alorica has a time keeping policy which states that (i) the applicable

ERVIN COHEN & JESSUP LLP

1  hard phone or soft phone program was the Alorica employees' time clock for

2  payroll purposes, and (ii) that the CSR is not to log himself off the time clock during

3  the work day except at those locations where they are specifically instructed to log

4  off only for lunch (which is an unpaid break).  [Tarlow Dec., Exhibit E, Carlile

5  Depo. 45:6 – 46:21, Exhibits 6 and 7 thereto); Tarlow Dec., Exhibit H, Depo. of

6  Named Plaintiff Brenda Luper ("Luper Depo.") 30:13-24; Exhibit 2 thereto; Tarlow

7  Dec., Exhibit I, Pizana Depo. 12:7-10, 24:23 – 25:6; Exhibit 1 thereto; Tarlow Dec.,

8  Exhibit B, Bass Depo. 59:9-18; Exhibit 1 thereto at ALOR3003260-

9  ALOR3003261).  Declaration of Cornelius Colao ¶ 8-10, 15.]

10      13.    Alorica CSRs are instructed to stay logged into the timekeeping system

11  during scheduled and unscheduled rest breaks, such as bathroom usage breaks, as

12  necessary, *i.e.* where CSRs can get a drink of water or otherwise use the facilities as

13  needed.  [Tarlow Dec., Exhibit D, Deposition of Opt-In Plaintiff Sergio Campos

14  ("Campos Depo.") 48:18-49:5.  Tarlow Dec., Exhibit N, Deposition of Opt-In

15  Plaintiff Luis Tellez ("Tellez Depo.") 49:7-50:8.  Tarlow Dec., Exhibit J, Pizana

16  Depo. 10:7-18, 12:7-10, 64:11-14. Tarlow Dec., Exhibit I, Moore Depo. 32:2-7,

17  Tarlow Dec., Exhibit B, Bass Depo. 27:7-19.  Colao Dec. ¶ 8-10, Exhibits 1-3.]

18      14.    Alorica's three (3) written policy documents entitled: (i) the Time

19  Clock Policy and Acknowledgement; (ii) the Hard Phone Basic Log In/Out Policy

20  and Acknowledgement; and (iii) the Softphone Basic Information Policy and

21  Acknowledgement all contain the following or substantially similar language:

22      Scheduled personal rest breaks and restroom usage as necessary are not
        considered meal periods and are paid time so you do not need to clock out.
23      You will just use the correct AUX Code to go on scheduled rest break time
        and/or to use the restroom as necessary.  Scheduled breaks may only last for
24      the specified period of time and except as otherwise stated in this Policy shall
        not exceed the total time allotted for them, whether single or combined.
25      However, when necessary at any time during their shift employees can use the
        restrooms and this will still be paid time outside of the scheduled break times.
26      If you need to use the restrooms other than on your scheduled breaks, please
        hit [Aux Code Out] and then [Aux Code In] when you return from the
27      restroom just as you do when on or returning from a scheduled rest break.
        Employees who claim to use the restroom but who do not actually use the
28      restroom when claiming to do so and instead take added personal breaks

ERVIN COHEN & JESSUP LLP

beyond their scheduled breaks and/or in addition to the scheduled break time, are taking unauthorized additional rest breaks against the Company's policies. Those employees are subject to discipline and the Company likewise has no obligation to pay for such additional and excess rest breaks.

Sixty (60) current or former Alorica customer service representatives, several of which were employed by Alorica prior to January 18, 2011, have stated in declarations under penalty of perjury that the policy set forth in Paragraph # 14 above has been in effect at all times since they have worked for Alorica, and over - 13,000 thousand CSRs, which constitutes more than 96% of Alorica's workforce, have acknowledged same.  [By way of example, see Tarlow Dec., Ex. U, Nora Toussaint Dec.; Tarlow Dec., Ex. T, Mariam Shwell Dec.; Tarlow Dec., Ex. Q, Victor Correa Dec.; Tarlow Dec., Ex. P, Claudia Rodriguez Burdette Dec.; Tarlow Dec., Ex. R, Marcia Gooden Dec.; Tarlow Dec., Ex. S, Gwendoyn Hughes; Tarlow Dec., Ex. V, Rosabel Welbourn Dec..  See Tarlow Dec., Ex. W (Declarations of 53 other CSRs). Colao Dec. ¶ 4-8.]

15.    CSRs are instructed that they should always remain logged in during their shift, and to hit what is called an auxiliary or paid "AUX" code or a paid "Idle" state code, specifically designated "Break", when taking a break or using the restroom as necessary, *i.e.* where CSRs can get a drink of water or otherwise use the facilities as needed .   These AUX and Idle state codes track the reason why the CSR put the phone into that state, and re-route all customer service calls to other CSRs. The "break" code does not log the CSRs off of the Alorica time clock.  It is a paid state. [Tarlow Dec., Exhibit D, Campos 54:15-56:23; Tarlow Dec., Exhibit K, Reynolds Depo. 33:4-8, 33:18-34:5;  Tarlow Dec., Exhibit I, Pizana Depo. 10:7-16:23.  Tarlow Dec., Exhibit I, Moore Depo. 97:8-13.  Declaration of Cornelius Colao ¶ 4-8.   Lacewala Dec. ¶ 4.  Smith Dec. ¶ 4.]

16.    "Break" code AUX entries are paid time.  The "Lunch" AUX codes are the only unpaid idle states.  [Tarlow Dec., Exhibit I, Pizana Depo. 10:7-16:23. Tarlow Dec., Exhibit I, Moore Depo. 97:8-13.  13.  Declaration of Cornelius Colao

ERVIN COHEN & JESSUP LLP

1 ¶ 4-8.   Declaration of Dawood Lacewala ¶ 4.]

2          17.      At some of Alorica facilities, the timekeeping system does not have a

3 "Lunch" AUX code entry, so CSRs are instructed to log off the system for lunch,

4 which is unpaid in any event.  [Tarlow Dec., Exhibit J, Pizana Depo. 11:6-10.]

5          18.      The document titled "Avaya Phone Basic Information" which was

6 provided to CSRs at facilities that utilize the hardphone technology, states in bold on

7 page 2 "**Remember:  You stay logged into the Avaya phone for breaks and**

8 **lunch."**  Named Plaintiff Carlile signed this document on April 27, 2010.  [Tarlow

9 Dec., Exhibit E,  Carlile Depo. 45:6-16, Exhibit 6 thereto.]

10          19.      CSRs who worked at facilities which utilized the soft phone technology

11 were issued a document titled "Softphone Basic Information and

12 Acknowledgement."  This document states on page 1 that "The first thing you

13 should do at the beginning of your shift is to log onto Softphone."  It explains that:

14          **SOFTPHONE (i.e. the software tool you were trained to use) IS**
           **THE TOOL THAT CAPTURES YOUR TIME FOR PAYROLL**
15          **PURPOSES so it is very important that you log onto it at the start**
           **of your shift in order to get paid before doing any and all work."**
16

17 On page 4 of this document, it explains that:

18          Aux Codes are to be used when on breaks (i.e., each Agent will have
           scheduled paid breaks depending on their shift, plus restroom breaks as
19          necessary), lunches and other authorized assignments.  Break code may
           be used for the authorized breaks and restroom.  Meal break will be the
20          code you may use for lunch/mealtime.  Coffee, snack and restroom
           breaks are not bonafide meal periods and you must be careful to use the
21          correct Aux Code to classify these paid non-meal period breaks.  At all
           other times agents are expected to be in 'Ready' status and receiving
22          calls.

23 At the bottom of page 4, it states:

24          How to Log Out of the Softphone At The End Of Your Shift  1.  After
           all necessary actions to wrap up your work including finishing
25          customer calls and notes, etc. is done then while in a 'NotReady' status
           click on the "Logout" icon.  2.  Softphone logs you off the system and
26          SAP.  The "Logout" icon logs you out of the software and the payroll
           time clock.
27

28 The Softphone Basic Information document does not instruct the CSR to log off

1 during their shift on breaks.  [Tarlow Dec., Exhibit J, Pizana Depo. 24:23-27:2,

2 Exhibit 1 thereto.]

3     20.    Alorica has issued a written "Time Clock Policy" to CSRs states:

> Non-Exempt employees with a bona fide meal break are required to clock-in/out on four (4) separate occasions during an eight (8) hour scheduled shift (in and out for their shift and in and out for their meal break)…Non-exempt employees are to be completely relieved from their work during their bona fide meal break.  If the employee is required to perform during their meal break, this would be considered time worked.  Coffee or snack breaks are not bona fide meal periods.  These are rest or break periods and **do not require clocking-in or out, they only require that the non-exempt employee use the correct Aux Code to classify their break time**.  It is the responsibility of the employee to follow through with the above procedure to ensure the employee is paid accurately for time worked.

11 [Tarlow Dec., Exhibit H, Luper Depo. 30:13-31:5, Exhibit 2 thereto.  Tarlow Dec.,

12 Exhibit B, Bass Depo. 59:13-20, Exhibit 1 thereto.]

13     21.    Alorica has maintained an Employee Handbook from at least January

14 10, 2010 to present, which has been updated from time to time, which contains its

15 policies with respect to schedule adherence.  The Attendance and Absences section

16 of the Employee Handbook states:

> The Company relies on your work and expects regular attendance during work hours.  We expect you to be present promptly at your scheduled starting time, and to continue to work until the scheduled ending time.  Unsatisfactory attendance, reporting late or leaving early may result in disciplinary action, up to and including termination of employment.  (Page 25, Employee Handbook with Footer stating "Copyright 1999-2011; Page 28 of Employee Handbook with Footer that shows "Revised 07.09.2012".)

21 [Tarlow Dec., Exhibit I,  Moore Depo. 96:10-11, Ex. 2 thereto at ALOR3001157.

22 Tarlow Dec., Exhibit H, Luper Depo. 54:1-7, Exhibit 5 thereto at ALOR 3000946.

23 Tarlow Dec., Exhibit J, Pizana Depo. 47:9-48:5.]

24     22.    The "Standards and Conduct" section of the Alorica Employee

25 Handbook has a passage which states:

> The Company strives for an efficient, productive, fair and safe work environment that fosters dedication and mutual respect among employees…Each of our employees shall conduct themselves with integrity and show respect for all those around them in the workplace, including fellow employees, our clients and our vendors.  As an employee of the Company,

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

conducting yourself with integrity means…*Adhering to your schedule and attendance procedures.  (Page 26 of the Employee Handbook with Footer showing "Copyright 1999-2011")

Some examples of **UNACCEPTABLE actions** while you are involved in Company business (whether on or off Company premises) which violated the Code include, but are not limited to, the following:  (Page 26 of the Employee Handbook with Footer showing Copyright 1999-2011.)

*Excessive tardiness or absenteeism.  (Page 26 of the Employee Handbook with Footer showing Copyright 1999-2011; Page 41 of Employee Handbook with Footer which shows Copyright 1999-2010). …

*Working unauthorized overtime, or failure to report overtime hours worked;  (Page 26 of the Employee Handbook with Footer showing "Copyright 1999-2011"; Page 30 of Employee Handbook with Footer that shows "Revised 07.09.2012".) …

Any conduct that compromises the values of the Code may be the basis for investigation or disciplinary action if the Company believes such conduct may negatively affect or harm your job performance or the well-being of others around you in the workplace.  (Page 27 of the Employee Handbook with Footer showing "Copyright 1999-2011).

[Tarlow Dec., Exhibit I,  Moore Depo. 96:10-11; Ex. 2 thereto at ALOR3001157.

Tarlow Dec., Exhibit H, Luper Depo. 54:1-7, Exhibit 5, at ALOR3000946 thereto.

Exhibit N, Tellez Depo., 45:22-46:9 Exhibit 2 thereto.]

23.    Alorica has communicated to its CSRs that Schedule Adherence is important to the company, and the Named Plaintiffs and Opt-In Plaintiffs who have been deposed in this matter understood that fact.  [Tarlow Dec., Exhibit G, Lillehagen Depo.  130:18 – 133:6; Exhibit 44 thereto; Tarlow Dec., Exhibit E, Carlile Depo.  14:15 – 15:5, 15:25 – 16:4.  Tarlow Dec., Exhibit L,  Shaw Depo. 62:25 – 63:23, 67:24 – 68:8, 71:1-9, Ex. 20, ¶ II, Ex. 21, seventh bullet point. Tarlow Dec., Exhibit O,  Whitmore Depo. 71:20 – 72:5, 73:4-13, 74:12-18, 78:2-14, 89:4-10; Tarlow Dec., Exhibit H,  Luper Depo. 17:17 – 18:15, 20:3-6; Tarlow Dec., Exhibit I,  Pizana Depo. 37:18-24, 40:25-42:-25; Tarlow Dec., Exhibit D, Campos Depo. 28:21-24, 33:21-34:20, 39:9 – 40:5, 91:2-6; Tarlow Dec., Exhibit N, Tellez Depo. 95:16-25, Ex. 5 thereto; Tarlow Dec., Exhibit I, Moore Depo. 126:14 – 127:18; Tarlow Dec., Exhibit B, Bass Depo. 35:20 – 36:20; Tarlow Dec., Exhibit C,

Beckerley Depo. 27:12-15, 27:23 – 28:15, 28:19 – 29:1, 30:21 – 32:8; Tarlow Dec.,
Exhibit A, Amend Depo. 107:20-110:15, 116:7-14; Tarlow Dec., Exhibit K,
Reynolds Depo. 46:6-24, 48:25 – 50:14.]

24.     A CSR's failure to adhere their schedule subjects them to discipline
with Alorica.  [Tarlow Dec., Exhibit N, Tellez Depo. 95:16-25, Ex. 5 thereto;
Tarlow Dec., Exhibit I, Moore Depo. 126:14 – 127:18; Tarlow Dec., Exhibit A,
Amend Depo. 107:20-110:15, 116:7-14; Tarlow Dec., Exhibit K, Reynolds Depo.
46:6-24, 48:25 – 50:14.]

25.     Alorica instructs its managers that if a CSR has been gone from their
work station for 30 minutes or more, the manager is to first search for the CSR and
only then, if the CSR cannot be located, to log that CSR off of Alorica's
timekeeping system.  [Tarlow Dec., Exhibit M, Carol Smith Depo. 54:19 – 55:2.
Smith Dec. ¶ 4.]

26.     Named Plaintiff Lillehagen testified that she could not recall how long
she was away from her desk when she was logged off her phone and that it could
have been as much as an hour.  [Tarlow Dec., Exhibit G, Lillehagen Depo. 89:6 –
90:7.]

27.     Named Plaintiff Shaw testified that she, personally, was never logged
off the Alorica computer system during any rest break after January 18, 2010.  The
only time she was ever logged off the phone was when she went to Human
Resources on one occasion, not during a rest break.  Named Plaintiff Shaw testified
that while she was aware of other CSRs being logged off their phones by managers,
she had no information whatsoever as to the amount of time any such CSR had been
away from her station or any other circumstances surrounding the logoff event.
[Tarlow Dec., Exhibit L, Shaw Depo. 82:14-83:5, 85:4-14, 89:4-14.]

28.     Named Plaintiff Carlile testified that she was not "directly" aware of
any policy of ever logging CSRs out of the Alorica timekeeping system because it
never happened to her and because she had never heard from anyone else that they

1  had ever been logged out by a manager.  Rather, she was only logged out when she

2  had been in team meetings or on lunch, but she did not testify that she was ever

3  logged out of the timekeeping system during any break.  [Tarlow Dec., Exhibit E,

4  Carlile Depo. 32:25-33:4, 52:5 – 53:18, 56:21 – 57:19.]

5       29.     Named Plaintiff Luper testified that she had been logged out by a

6  manager "several times" but cannot say how long she was away from her station on

7  any of those occasions.  Luper also claimed that she had seen managers and

8  "floaters" log other CSRs off the phone, but had no idea how long any of those

9  CSRs were away from their stations or any of the circumstances surrounding a

10  manager logging another CSR off the phone.  [Tarlow Dec., Exhibit H, Luper Depo.

11  60:5– 62:12, 63:2-23).]

12       30.     Named Plaintiff Pizana testified that he would return to his phone

13  sometimes after being away to find himself logged off the timekeeping system, but

14  could not say how it happened, how long he had been away from his work station on

15  any given occasion, or any other specific circumstances.  Pizana admitted that "the

16  only reason I would see that I would be logged out is if I went over my break or I

17  wasn't on any unauthorized AUX."  Pizana also admitted he had never seen anyone

18  logging any other CSR out of their phone while on a break, even though he was a

19  floor walker.  [Tarlow Dec., Exhibit J, Pizana Depo. 64:15 – 65:15, 67:25 – 68:7,

20  69:16-19, 70:4-8, 87:25 – 88:21.]

21       31.     Reynolds testified that managers logged her off her phone on more than

22  one occasion but she did not recall how long she was gone on any of those

23  occasions, nor does she remember what AUX state the phone was in when she was

24  logged off.  Reynolds testified she saw managers logging other CSRs off their

25  phones but admits she had no idea how long the CSRs in question was away from

26  their work station in any of those instances.  Tarlow Dec., Exhibit K, Reynolds

27  Depo. 55:7-22, 57:8-10, 60:7-20.]

28       32.     Beckerley testified that she was never logged out of the phone

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  timekeeping system by a manager, but claims that she saw other CSRs being logged

2  off the phone, although she could not tell how long any CSRs might have been away

3  from their work stations, the reason that CSRs were away from their wok station, or

4  what AUX code their phone was in at the time.  She also admitted that she could not

5  even tell whether another CSR had been logged off by a supervisor, only that a

6  supervisor had approached another CSR's station and done something with the

7  CSR's computer.  [Tarlow Dec., Exhibit C, Beckerley Depo. 51:23 – 53:5, 53:12 –

8  54:4.]

9       33.   Campos testified that he was never logged out by a manager during any

10  break but specifically remembered being logged out on three occasions when he was

11  late returning from lunch.  Campos admitted to returning late from breaks

12  "numerous times."  The only specific log out he recalled during a break was his

13  friend Alex was logged out by a manager while taking a rest break that lasted more

14  than 20 minutes, which Campos recalled clearly because he remembered that Alex

15  was gone the whole time Campos handled a call that lasted 25-30 minutes.  [Tarlow

16  Dec., Exhibit D, Campos Depo. 61:21 – 62:16, 68:8 – 69:3, 79:24 – 83:24.]

17       34.   Tellez testified that he does not know how long he was ever on any

18  break when he was logged out of the timekeeping system on any occasion.  [Tarlow

19  Dec., Exhibit N, Tellez Depo: 78:11-14.]

20       35.   Bass, who worked with Alorica for 13 months, testified that he was

21  only logged off by management "once or twice" and indicated that his managers

22  were unaware that he had been asked to handle an off-the-phone task.  Further, he

23  recalled that he had been away from his station for "quite a while" in those

24  instances.  Additionally, Bass himself was a "team leader" / "floor walker", but was

25  never asked to log anyone off their systems despite the fact that he always noticed

26  CSRs who were logged in but away from the desk on break.  Otherwise, he only

27  witnessed CSRs being logged out of their phones on three occasions over his 13

28  months, but did not know how long those CSRs had been gone before being logged

ERVIN COHEN & JESSUP LLP

1    off.   [Tarlow Dec., Exhibit B, Bass Depo. 70:15 – 71:1, 72:9 – 73:7, 77:16 – 79:14.]

2        36.    Alorica has issued Employee Handbooks to CSRs which state:

3

4        Employees shall be paid for all hours worked in accordance with all
         legal requirements…(Page 10 of Handbook showing Copyright 1999-
5        2010 on the footer; Page 9 of Handbook showing Copyright 1999-2011
         on the footer. Page 11 of Handbook showing "Revised 07.09.2012" in
         the footer).

6        Non-exempt employees shall record all time worked, including time
7        worked outside of their scheduled hours, at the time it actually occurs.
         Employees are responsible for accurately recording their time…In the
8        event of an error in recording your time, please report the error or
         concern to your supervisor immediately.  Supervisors, Human
9        Resources or Payroll may correct inaccurate hours or unrecorded time.
         Hours registered through the employee timekeeping system will be
10       used to calculate pay.  Therefore, it is critical that all employees
         log/clock in and out to assure timely and accurate payment for work
11       completed.  (Page 9 of Handbook showing Copyright 1999-2011" in
         the footer; Page 11 of Handbook showing "Revised 07.09.2012" in the
12       footer;  Nearly identical provision found on Page 10 of Handbook
         showing "Copyright 1999-2010" in the footer.)

13   [Tarlow Dec., Exhibit I,  Moore Depo. 96:10-11; Ex. 2 thereto at ALOR3001157.

14   Tarlow Dec., Exhibit H, Luper Depo. 54:1-7, Exhibit 5, page 28 thereto.  Tarlow

15   Dec., Exhibit J, Pizana Depo. 47:9-48:5.  Tarlow Dec., Exhibit L, Shaw Depo.

16   128:8-129:25, Exhibit 23 thereto. Tarlow Dec., Exhibit C, Beckerley, 64:18-67:8

17   Exhibits 2 and 3.  Tarlow Dec., Exhibit D, Campos, 93:19-95:2 Exhibit 2 thereto.

18   Tarlow Dec., Exhibit N, Tellez, 45:22-46:9 Exhibit 2 thereto.  Tarlow Dec., Exhibit

19   B, Bass Depo. 40:25-41:19, Exhibit 2.]

20       37.    All CSRs who were deposed testified that they understood that Alorica

21   has a process for CSRs to report any uncompensated work time.  This process has

22   various stages, beginning with the requirement that CSRs review their timesheets

23   regularly to verify that their recorded login-logout times are correct.  [Tarlow Dec.,

24   Exhibit G, Lillehagen Depo. 103:2 –109:19; Tarlow Dec., Exhibit O, Whitmore

25   Depo. 138:23 – 139:15, 156:9-19, 157:15 – 158:1; Tarlow Dec., Exhibit E,  Carlile

26   Depo. 40:8-19, 60:3-7; Tarlow Dec., Exhibit H,  Luper Depo. 33:7-9, 44:21-25,

27   50:4-19, 59:25 – 60:4, 82:25 – 83:23; Tarlow Dec., Exhibit J, Pizana Depo. 50:1-20;

28

1   Tarlow Dec., Exhibit D, Campos Depo. 88:21 – 89:22, 91:7-24; Tarlow Dec.,

2   Exhibit K, Reynolds Depo. 65:12-20, 66:20-25; Tarlow Dec., Exhibit A, Amend

3   Depo. 133:25 – 136:23; Tarlow Dec., Exhibit C, Beckerley Depo. 76:15 – 77:7;

4   Tarlow Dec., Exhibit I, Moore Depo. 93:15 – 94:4, 94:19 – 95:15, 95:24 – 96:7);

5   Tarlow Dec., Exhibit B, Bass Depo. 44:13-19, 45:3-6, 48:6-17, 49:18 – 50:16.]

6       38.     Lillehagen acknowledged that during a period of her time as a CSR

7   there was a form titled "Daily Conformance and Time Logs" that she submitted to

8   her to supervisor to make sure she was paid for her work time.  She further

9   acknowledged that this reporting process was consistent with what she told new

10   CSRs when she was a trainer to "check your time carefully to make sure you get

11   paid."  [Tarlow Dec., Exhibit G, Lillehagen Depo. 103:2-109:19.]

12       39.     Whitmore testified that at least as of 2009, her manager "was a real

13   stickler about making sure you reviewed your time sheet."  Whitmore also named

14   two other managers that she recalled correcting her timesheets and testified that her

15   managers would correct her time when the timekeeping system crashed.  [Tarlow

16   Dec., Exhibit O, Whitmore Depo. 138:23 – 139:15, 156:9-19, 157:15 – 158:1.]

17       40.     Carlile testified that she knew she was responsible for accurately

18   recording her own time "or letting the management know it had been inaccurately

19   reported."  She also testified that it was generally her habit to check her timesheets

20   and to report any errors.  [Tarlow Dec., Exhibit E, Carlile Depo. 40:8-19, 60:3-7.]

21       41.     Luper testified that she understood that she was responsible for

22   recording her own time and for clocking in and clocking out.  She also

23   acknowledged that per Alorica's policy she was required to review and approve her

24   timesheets before they were sent to payroll, that if she found an error she brought it

25   to her supervisor's attention, and that her supervisor would fix the error.  [Tarlow

26   Dec., Exhibit H, Luper Depo. 33:7-9, 44:21-25, 50:4-19, 59:25 – 60:4, 82:25 –

27   83:23.]

28       42.     Pizana testified that he knew he was responsible for his own

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1  timekeeping by logging in and out correctly and by reviewing his timesheets for

2  accuracy.  [Tarlow Dec., Exhibit J, Pizana Depo. 50:1-20.]

3      43.  Campos testified that he checked his timesheets every day on his own

4  computer and that it was always the policy when he was at Alorica that he could

5  request that his manager correct his time if there was an error.  [Tarlow Dec.,

6  Exhibit D,  Campos Depo. 88:21 – 89:22, 91:7-24.]

7      44.  Amend acknowledged that he had read the employee handbook and

8  that, as described therein, he understood that he was to record all of his time,

9  including time worked outside of scheduled hours, and that if there was an error in

10  recording his time that he should immediately bring it to his supervisor's attention,

11  because supervisors, HR or payroll could correct missing or inaccurate time.

12  [Tarlow Dec., Exhibit A, Amend Depo. 133:25 – 136:23.]

13      45.  Alorica's timekeeping systems make each employee's data available on

14  the CSR's computer within 4 to 24 hours, except in the case of the rare system

15  outage.  [Lacewala Dec. ¶ 5.]

16      46.  Management can make corrections as needed to an employee's

17  timesheet to make sure that its CSRs are paid for all hours worked.  This includes

18  instances where an employee is logged out due to error.  [Tarlow Dec., Exhibit M,

19  Smith Depo. 12:6-13, 26:5-19 and 54:12-55:2.]

20      47.  Opt-In Plaintiff Bass and Named Plaintiff Luper both signed

21  documents called Agent New Hire Terms of Employment which stated:

22        I, the undersigned, have been informed that at the end of every week I
      am to review and sign my timesheet and return it to my Supervisor.  If

23        for any reason my paycheck is short of hours due to my own
      negligence, I will be issued a separate check for the shortage…If the

24        company made an error in calculating my pay, then I must contact my
      Supervisor who will research the problem…

25  [Tarlow Dec., Exhibit H, Luper Depo., 82:22-83:23, Exhibit 8 thereto.  Tarlow Dec.,

26  Exhibit B, Bass Depo. 39:23- 40:9,   Exhibit 1 thereto.]

27

28      48.  If the CSR fails to catch an error in his or her timesheet and raise it

immediately with her supervisor, he or she has the opportunity to obtain a correction in his or her pay by submitting a "Payroll Discrepancy Form."  [Romagnino Dec. ¶ 6-7.  Tarlow Dec., Exhibit G, Lillehagen Depo. 103:2 –109:19.  Tarlow Dec., Exhibit O, Whitmore Depo. 138:23 – 139:15, 156:9-19, 157:15 – 158:1; Tarlow Dec., Exhibit E, Carlile Depo. 40:8-19, 60:3-7;  Tarlow Dec., Exhibit H, Luper Depo. 33:7-9, 44:21-25, 50:4-19, 59:25 – 60:4, 82:25 – 83:23; Tarlow Dec., Exhibit I, Pizana Depo. 50:1-20, Tarlow Dec., Exhibit C, Beckerley Depo. 76:15 – 77:7; Tarlow Dec., Exhibit D, Campos Depo. 88:21 – 89:22, 91:7-24; Tarlow Dec., Exhibit N, Tellez Depo. 58:4-22; Tarlow Dec., Exhibit I, Moore Depo. 93:15 – 94:4, 94:19 – 95:15, 95:24 – 96:7; Tarlow Dec., Exhibit B, Bass Depo. 44:13-19, 45:3-6, 48:6-17, 49:18 – 50:16.]

49.     Luper testified as follows:

Q. Did you ever look at your paycheck and think that you hadn't been paid the hours that you had worked?
A. Yes.
Q. Did you do anything to try to correct that?
A. Yes.
Q. What did you do?
A. Go to human resources.
Q. And was there a procedure where they could correct your time for you?
A. They just did it.
Q. They would correct your pay --
A. Yeah.
Q. -- just right there?
A. Yeah.

[Tarlow Dec., Exhibit H, Luper Depo. 68:16-69:5.]

50.     At least 155 of the Opt-In Plaintiffs signed binding arbitration agreements with Alorica as new hires and a condition of their employment.  They are not appropriate class members in this case.  [Smith Dec. ¶ 11-165, Exhibits 1 to 155.]

51.     511 of the Opt-In Plaintiffs did not work at Alorica at any time from and after January 18, 2010, and are not eligible to be class members in this case. [Romagnino Dec. ¶ 10.]

ERVIN COHEN & JESSUP LLP

52.     1005 of the Opt-in Plaintiffs were class members in another class action case against Alorica, and have signed settlement agreements and mutual releases of claims with Alorica, and are not appropriate class members in this case.  [Taylor Dec. ¶ 12.]

53.     169 of the Opt-in Plaintiffs were employed at the Terre Haute, Indiana Alorica facility, and are not eligible to be class members in this case.  [Romagnino Dec. ¶ 10.]

54.     197 of the Opt-in Plaintiffs did not pass background check, training or nesting and never became CSRs.  [Romagnino Dec. ¶ 10.]

55.     No evidence exists that any of the Named Plaintiffs or Opt-in Plaintiffs in this matter had any personal knowledge of what they were doing at any time when their login/logout data indicated that they had been logged off the system, nor the reason that they were logged off.   [Tarlow Dec., Exhibit D, Campos Depo. 106:19-107:2; Tarlow Dec., Exhibit I, Pizana Depo. 99:16-100:20; Tarlow Dec., Exhibit I, Moore Depo. 99:11-103:6; Tarlow Dec., Exhibit B, Bass Depo. 93:13-94:2, and Exhibit 5 thereto.  Tarlow Dec., Exhibit C, Beckerley Depo. 107:21-109:9; Tarlow Dec., Exhibit H, Luper Depo. 78:18-79:3; Tarlow Dec., Exhibit O, Whitmore Depo., 216:14-221:9; Tarlow Dec., Ex. G, Lillehagen Depo. 146:15-25. Tarlow Dec., Ex. A, Amend Depo. 161:19-162:14.  Tarlow Dec., Ex. K, Reynolds Depo. 56:5-12; Tarlow Dec., Exhibit N, Tellez Depo. 17:11-23.  Tarlow Dec., Ex. E, Carlile Dec. 60:20-61:6; Tarlow Dec., Ex. K, Shaw Depo. 118:3-119:6.]

56.     Alorica maintained these timekeeping records in the ordinary and regular course of its business.  [Romagnino Dec. ¶ 11.]

57.     Alorica paid its CSRs their hourly wages and overtime pursuant to Alorica's timekeeping records.  [Romagnino Dec. ¶ 13.]

## **UNCONTROVERTED CONCLUSIONS OF LAW**

58.     "Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

ERVIN COHEN & JESSUP LLP

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'... '[T]h[e] standard [for granting summary judgment] mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a)....'"   (Citations omitted).   *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) .  "The party seeking summary judgment bears the initial responsibility of showing there is no genuine issue for trial, before the nonmoving party must introduce evidence.  But the moving party is not initially required to introduce evidence negating an element on which the non-moving party will bear the burden of proof at trial (although the moving party may, and often does, do so).  Rather, the moving party need only point out to the Court that, on at least one such element, no evidence supports the non-moving party's case." *El v. Crain*, 560 F. Supp. 932 (C.D. Cal. 2008) . *See Celotex*, 477 U.S. 317, 322-323, 106 S. Ct. 2548, 91 L.Ed.2d 265(1986). *See Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994).  The moving party merely has the burden of production to demonstrate the absence of any genuine issue of material fact. *Playboy Enterprises, Inc. v. Netscape Communications, Corp.*, 354 F.3d 1020, 1023 (9th Cir. 2004).  "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, (1986) 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202.  A principal purpose of summary judgment is to "isolate any dispute of factually unsupported claims." *See Celotex*, 477 U.S. at 323-324(1986).

59.     Pursuant to 29 U.S.C. § 206, employers shall pay each of its employees engaged in commerce or in the production of goods for commerce the minimum wages established under this provision.

60.     Pursuant to 29 U.S.C. § 207, employers shall pay each of its employees overtime compensation at one and a half times the employees regular rate of pay, for all hours during the workweek which exceed forty hours.

61.    "It is axiomatic, under the FLSA, that employers must pay employees for all 'hours worked.'" *Alvarez v. IBP, Inc.*, 339 F.3d 894 (2003) .

62.    The FLSA does not require an employer to provide employees with rest periods or breaks." *Tall v. MV Transportation*, 2014 WL 2964279 (D. Md.). Nevertheless, pursuant to 29 CFR § 785.18:

> Rest periods of short duration, running from five minutes to about twenty minutes, are common in industry.  They promote the efficiency of the employee and are customarily paid as working time.  They must be counted as hours worked.  Compensable time of rest periods may not be offset against other working time such as compensable waiting time or on-call time."

63.    Unauthorized extensions of authorized employer breaks are not counted as hours worked for an employee when the employer has expressly and unambiguously communicated to the employee that: (1) the authorized breaks may last only for a specific length of time; (2) any extension of those breaks is against the employer's rules; and (3) any extension of those breaks will be punished.  *Dep't of Labor, Field Operations Handbook* 31a01 (2000); *See Also Wage and Hour Opinion Letter* (May 19, 2001) 2001 WL 1869965 (DOL WAGE-HOUR).

64.    An employee who brings suit under the FLSA for unpaid minimum wages or unpaid overtime  "has the burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.,* (1946) 328 U.S. 680, 687, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515, superseded by statute on other grounds.

65.    "[E]mployers have the right to require employees to keep track of their work time and where an employee elects to under-report his or her work time, the employer is not liable for the failure to pay unreported overtime." *Schremp v. Langlade County*, 2012 WL 3113177 (E.D. Wisconsin).

66.    Employers subject to the FLSA, "shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such

ERVIN COHEN & JESSUP LLP

ERVIN COHEN & JESSUP LLP

1    records for such periods of time…as necessary or appropriate for the enforcement of

2    the provisions of this chapter…" 29 U.S.C. § 211(c); *see also* 29 C.F.R. §

3    516.2(a)(5) (requiring employers to maintain and preserve payroll records).

4    Department of Labor has stated that employers can use "any timekeeping method

5    they choose," as long as the method is "complete and accurate." *See* Record

6    Keeping Requirements under the Fair Labor Standards Act, Wage and Hour

7    Division Fact Sheet 21 (rev. July 2008).

8    67.    Where time records are inaccurate or inadequate, an employee will

9    meet his burden of proof if "he proves that he has in fact performed *work* for which

10    he was improperly compensated *and* if he produces sufficient evidence to show the

11    amount and extent of that work *as a matter of just and reasonable inference*."

12    *Brock v. Seto,* 790 F.2d 1446, 1448 (9th Cir. 1986).  (Emphasis added).

13    68.    "Under the FLSA, if an employer establishes a reasonable process for

14    an employee to report uncompensated work time the employer is not is not liable for

15    non-payment if the employee fails to follow the established process." *White v.*

16    *Baptist Memorial Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012).  *See also*

17    *Forrester v. Roth's I. G. A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981)

18    (where an employer has no knowledge that an employee is engaging in overtime

19    work and that employee fails to notify the employer or deliberately prevents the

20    employer from acquiring knowledge of the overtime work, the employer's failure to

21    pay for the overtime hours is not a violation of [the FLSA]).

22    69.    As a matter of law employees are "estopped from claiming that (they)

23    worked more hours than (they) claimed on (their) timesheets." *Brumbelow v.*

24    *Quality Mills, Inc.*, 462 F.2d 1324, 1327(5th Cir. 1972).

25    70.    An employer's failure to pay overtime hours is not a violation of FLSA

26    where the employee fails to notify the employer that it worked overtime hours.

27    *Newton v. City of Henderson* 47 F.3d 746 (5th Cir. 1995).

28    71.    Pursuant to 29 U.S.C. § 260:

In any action commenced …to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938…, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title.

72.     The "evidence of a policy reflects an effort to comply with" the applicable employment law. *Purnell v. Sunrise Senior Living Management, Inc.*, 2012 WL 195(C.D. Cal.).

73.     Alorica has a policy to pay its employee for all time worked.

74.     Alorica has not violated the FLSA.

75.     Plaintiffs cannot meet their burden of proving that the performed work for which they were not properly compensated.

DATED: September 22, 2014         ERVIN COHEN & JESSUP LLP
                                  Robert M. Waxman
                                  David N. Tarlow
                                  John W. Shenk


                        By:     /s/ Robert M. Waxman
                                Robert M. Waxman
                                Attorneys for ALORICA INC.