Allen R. Vaught
(admitted *pro hac vice*)
avaught@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

Robert P. Kondras, Jr.
(admitted *pro hac vice*)
kondras@huntlawfirm.net
HUNT, HASSLER & LORENZ LLP
100 Cherry Street
Terre Haute, IN 47807
Telephone:  (812) 232-9691
Facsimile:   (812) 234-2881

Jahan C. Sagafi
(Cal. Bar No. 224887)
jsagafi@outtengolden.com
Katrina L. Eiland
(Cal. Bar No. 275701)
keiland@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center
38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

*Counsel for Plaintiffs and the Conditionally Certified FLSA Collective*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| MELISSA LILLEHAGEN *et al.*, on behalf of themselves and all those similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ALORICA, INC.,<br><br>        Defendant. | **Case No. 13-cv-00092-DOC (JPRx)**<br><br>**PLAINTIFFS' OPPOSITION TO ALORICA, INC.'S MOTION TO COMPEL ARBITRATION**<br><br>Judge: Hon. David O. Carter<br><br>Date: October 27, 2014<br>Time: 8:30 a.m.<br>Courtroom: 9D |

# TABLE OF AUTHORITIES

I.    INTRODUCTION.................................................................................1

II.   FACTUAL BACKGROUND .............................................................2

III.  LEGAL STANDARD ........................................................................3

IV.   ARGUMENT .....................................................................................3

    A.    Alorica's Failure to Meet and Confer Properly Under Local Rule
        7-3 Requires Denial of Its Arbitration Motion ......................................3

    B.    Alorica Waived Its Right to Compel Arbitration.................................4

    C.    The Arbitration Agreements Are Unenforceable Because Such
        Communications with Potential Opt-Ins During the Pendency of
        Litigation Are Prohibited ......................................................................7

    D.    The Arbitration Agreements Signed After the Date an Individual
        Opted in Are Unenforceable Because They Result from Improper *Ex
        parte* Communications in Violation of the California Rules of
        Professional Conduct ..........................................................................12

V.    CONCLUSION ................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*Air Commc'n & Satellite Inc. v. EchoStar Satellite Corp.*,
  38 P.3d 1246 (Colo. 2002) (en banc) .................................................................. 10

*Balasanyan v. Nordstrom, Inc.*, Nos.11 Civ. 2609, 10 Civ. 2671,
  2012 U.S. Dist. LEXIS 30809 (S.D. Cal. Mar. 8, 2012) ................................. 9, 11

*Bilbrey v. Cingular Wireless, LLC*, 164 P.3d 131 (Okla. 2007) ............................. 10

*Billingsley v. Citi Trends, Inc.*,
  No. 12 Civ.0627-KOB, 2013 U.S. Dist. LEXIS 8910 (N.D. Ala.
  Jan. 23, 2013), *aff'd*, 560 Fed Appx. 914 (11th Cir. 2014) ................................. 9

*Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528 (N.Y. Sup. Ct. 1999) ................. 10

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) ................................................................. 10

*Demsey & Assoc., Inc. v. S.S. Sea Star*, 461 F.2d 1009 (2d Cir. 1972) ................... 5

*Dickens v. Am. Int'l Group Inc.*, No. 13 Civ. 0218,
  2014 U.S. Dist. LEXIS 22216 (C.D. Cal. Feb. 20, 2014) .................................... 4

*Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*,
  289 F.3d 434 (6th Cir. 2002) ................................................................................ 6

*Gortat v. Capala Bros.*, No. 7 Civ. 3629,
  2009 U.S. Dist. LEXIS 101837 (E.D.N.Y. Oct. 16, 2009) ................................... 8

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) .......................................................... 8

*Gutierrez v. Wells Fargo Bank*, 704 F.3d 712 (9th Cir. 2012) ................................ 5

*Hamilton v. Ohio Sav. Bank*, 82 Ohio St. 3d 67 (1998) ......................................... 8

*Johnson Associates Corp. v. HL Operating Corp.*,
  680 F.3d 713 (6th Cir. 2012) ....................................................................... 5, 6, 7

*Kleiner v. First Nat'l Bank*, 751 F.2d 1193 (11th Cir. 1985) .................................. 8

*Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831 (N.D. Cal. 2012) ......................... 3

*Lewallen v. Green Tree Serv'g, L.L.C.*, 487 F.3d 1085 (8th Cir. 2007) ................... 5

*Manasher v. NECC Telecom*, 310 F. App'x 804 (6th Cir. 2009).............................. 6

*Melczer v. Unum Life Ins. Co. of America*, 259 F.R.D. 433 (D. Ariz. 2009)............. 4

*Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*,
    72 F.3d 218 (1st Cir. 1995) ....................................................... 6

*O'Connor v. Uber Techs., Inc.*, No. 13 Civ. 3826,
    2014 U.S. Dist. LEXIS 61066 (N.D. Cal. May 1, 2014) ................................. 8, 9

*Sanford v. Memberworks, Inc.*, 483 F.3d 956 (9th Cir. 2007) .................................. 3

*In re Sch. Asbestos Litig.*, 842 F.2d 671 (3d Cir. 1988) ............................................ 8

*Stone v. E.F. Hutton & Co.*, 898 F.2d 1542 (11th Cir. 1990) .................................. 6

*Superior Energy Servs. LLC v. Cabinda Gulf Oil Co.*, No. 13 Civ.
    2056, 2013 U.S. Dist. LEXIS 172878 (N.D. Cal. Dec. 6, 2013) ......................... 3

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
    925 F.2d 1136 (9th Cir. 1991).............................................................. 3

*Williams v. Securitas Sec. Serv. USA, Inc.*, No. 10 Civ. 7181,
    2011 U.S. Dist. LEXIS 75502 (E.D. Pa. July 13, 2011) ......................... 9, 10, 11

*Zamboni v. Pepe West 48th St. LLC*, No. 12 Civ. 3157,
    2013 U.S. Dist. LEXIS 34201 (S.D.N.Y. Mar. 12, 2013) ................................. 9

## Other Authorities

Cal. R. Prof. Conduct 2-100(A)................................................................. 12

Fed. R. Civ. P. 37(c)(1)............................................................................. 4

## I.     INTRODUCTION

Several months into this collective action, Defendant Alorica, Inc. ("Alorica") underwent a campaign to secure arbitration agreements from its Customer Service Representatives ("CSRs") to limit its litigation exposure.  Now, approximately 20 months into the litigation, these improper communications with class members during the pendency of the action have culminated in Alorica's Motion to Compel Arbitration ("Arbitration Motion" or "Arb. Mot.") of the claims of 155 of the 8,811 Opt-In Plaintiffs ("Opt-Ins") in this lawsuit.

Alorica's Arbitration Motion should be denied for four reasons.

First, Alorica failed to comply with the meet and confer requirement of Local Rule 7-3.  Although it is required to engage in a "thorough" discussion of the subject matter of the proposed motion, Alorica failed to supply any arbitration agreements or names of Opt-Ins subject to those agreements until *after* the meet and confer, just days before filing its motion (and, in some cases, the day of the motion filing).  This dilatory and piecemeal provision of information hamstrung Plaintiffs in their effort to gather information and meaningfully attempt to reach a resolution.  That is precisely what the Court's meet and confer requirement is designed to avoid.  Relatedly, Alorica withheld this information until after the Discovery Cut-Off, and should not be allowed to profit from that maneuvering.

Second, by litigating the action for months after it knew of its right to compel arbitration, including through the Discovery Cut-Off, and providing detailed time and payroll data for Opt-Ins it now seeks to dismiss, Alorica has waived its opportunity to invoke the arbitration agreements.

Third, the arbitration agreements at issue were all secured during the pendency of the litigation without proper disclosures and are, therefore, unenforceable as inappropriate communications with potential class members and/or unconscionable agreements.

<u>Fourth</u>, some of the 155 arbitration agreements also do not preclude inclusion of the Opt-Ins' claims in this lawsuit because the Opt-Ins signed the arbitration agreement after they were already represented by Plaintiffs' counsel (i.e., they had opted in). These agreements are unenforceable because the California Rules of Professional Conduct prohibit *ex parte* communications with represented parties.

For all of these reasons, Alorica's Arbitration Motion should be denied.

## II.    FACTUAL BACKGROUND

Plaintiffs filed this action on January 18, 2013. Dkt. No. 1. Over a year later, on March 20, 2014, Alorica amended its Answer to add arbitration as an affirmative defense. Dkt. No. 107, ¶ 134. The opt-in period ended on April 17, 2014, at which time there were 8,811 Plaintiffs and Opt-Ins. Declaration of Sangeeta S. Kuruppillai ("Kuruppillai Decl.") ¶ 4. Alorica now puts forth evidence that it engaged in a campaign of securing CSRs' signatures on arbitration agreements beginning in June 2013. Def.'s Arb. Mot. at 6-7. Specifically, Alorica argues that 155 of the Opt-Ins "are bound by their employment agreements with Alorica[,] . . . which they signed as new hires to arbitrate any employment-related claims." Arb. Mot. at 6. Alorica further states that "[a]s of approximately June 2013, Alorica began requiring all 'new hires' of CSRs to enter into Agreements to Arbitrate as a condition of their *new employment* with Alorica." *Id.* at 7 (emphasis added).

August 22, 2014 was the Discovery Cut-Off. Kuruppillai Decl. ¶ 7. By that date, Alorica had produced no arbitration agreements signed by Opt-Ins in this matter. *Id.*

On September 11, 2014, the parties held their meet and confer conversation regarding the filling of this and three other motions. During that conversation, Plaintiffs requested that Alorica produce the subject arbitration agreements. Kuruppillai Decl. ¶ 6. Alorica produced 97 arbitration agreements on September

16, and another 37 on September 18.  Kuruppillai Decl. ¶ 8.  Alorica submitted the final 21 agreements as part of its motion filing.  *Id.*

## III.   LEGAL STANDARD

As the party seeking to enforce arbitration agreements, Alorica bears the burden of showing that a valid agreement exists as to each, and that its terms bind the CSR.  *Sanford v. Memberworks, Inc.*, 483 F.3d 956, 962 (9th Cir. 2007); *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1139-41 (9th Cir. 1991).  The first question is whether there is an agreement between the parties to arbitrate.  *Superior Energy Servs. LLC v. Cabinda Gulf Oil Co.*, No. 13 Civ. 2056, 2013 U.S. Dist. LEXIS 172878, at *10 (N.D. Cal. Dec. 6, 2013) (citing *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004)).  "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts."  *Lara v. Onsite Health, Inc.*, 896 F. Supp. 2d 831, 838 (N.D. Cal. 2012) (citing *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003)).

## IV.   ARGUMENT

### A.   Alorica's Failure to Meet and Confer Properly Under Local Rule 7-3 Requires Denial of Its Arbitration Motion.

Alorica's failure to provide any specific information regarding the Opt-Ins who it claimed signed arbitration agreements or copies of the arbitration agreements themselves until a few business days before filing its motion (and in some cases only with the filing itself) constitutes a violation of the meet and confer requirement of Local Rule 7-3.  Alorica provided no specific information regarding the Opt-Ins it sought to compel to arbitration either before or during the meet and confer conversation on September 11, 2014.  Local Rule 7-3 requires that "counsel contemplating the filing of any motion shall first contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."  C.D. Cal. L.R. 7-3.  The failure to comply with that

requirement may result in the outright denial of the subject motion.  *See, e.g.*, *Dickens v. Am. Int'l Group Inc.*, No. 13 Civ. 0218, 2014 U.S. Dist. LEXIS 22216, at *3-4 (C.D. Cal. Feb. 20, 2014) (denying plaintiff's motion to remand for failure to comply with L.R. 7-3).[1]

Alorica's dilatory and piecemeal provision of information regarding its anticipated motion does not constitute a good faith meet and confer effort, because it precluded a "thorough[] . . . discuss[ion]" of "the substance" of the motion.  It also prevented the parties from attempting to reach an agreement as to some or all of the Opt-Ins at issue because Plaintiffs were unable to assess the enforceability, scope, or legitimacy of any particular arbitration agreement.

Alorica's failure to fully comply with the meet and confer requirements of Local Rule 7-3 warrants denial of this Motion.

### B. Alorica Waived Its Right to Compel Arbitration.

Alorica's delay in bringing this motion constitutes waiver of its right to compel arbitration.  Over the past 20 months of litigation, Alorica has actively litigated this case as to the Opt-Ins it seeks to dismiss, waiving its right to assert arbitration as an individual affirmative defense.

Even if an arbitration agreement is otherwise enforceable under the Federal

---

[1] In addition, Alorica's failure to produce the relevant information and agreements before the Discovery Cut-Off precludes their use "to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  Alorica's failure was neither justified nor harmless, because it had the information for many months before providing it, and it has precluded Plaintiffs from testing the veracity of the information and has caused Plaintiffs the burden of having to digest it while responding to many other arguments in Alorica's three simultaneous motions.  *See, e.g., Melczer v. Unum Life Ins. Co. of America*, 259 F.R.D. 433 (D. Ariz. 2009).   In addition to Alorica's belated disclosure the information and documents, Alorica has not met its burden to demonstrate that the individuals who signed the arbitration agreements are, in fact, the same individuals who opted into this case.  *See* Pls.' Opp. to Def.'s MSJ at 20-21 (discussing the limited data provided by Alorica in support of its motions).

Arbitration Act ("FAA"), a party can waive its right to compel arbitration pursuant to that agreement based on its participation in litigation. *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012); *see also Demsey & Assoc., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972) (the right to enforce an arbitration agreement may be waived despite the strong federal policy favoring arbitration). The Ninth Circuit has set forth criteria for the determination of the waiver of arbitration rights: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 720-721 (9th Cir. 2012) (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Courts have found that, to safeguard a party's right under an arbitration agreement, "a party must do all it could reasonably have been expected to do to make the earliest feasible determination of whether" to enforce the agreement. *Lewallen v. Green Tree Serv'g, L.L.C.*, 487 F.3d 1085, 1091 (8th Cir. 2007) (citation and internal quotation marks omitted).

First, it cannot be disputed that Alorica has known for months of its right to compel arbitration based on the agreements it seeks to enforce here. Alorica possessed knowledge of its right to compel arbitration either as soon as (1) a CSR who had signed an arbitration agreement opted in or (2) an Opt-In signed an arbitration agreement.

Second, Alorica engaged in activities that were completely inconsistent with its reliance on the right to compel the Opt-Ins to arbitrate, which have caused prejudice to Plaintiffs and Opt-Ins. For example, Alorica produced login/ logout and payroll data for the majority of the Opt-Ins it seeks to dismiss. Plaintiffs, in turn, provided this data to their expert who analyzed it in connection with his declaration in this case. Kuruppillai Decl. ¶ 10.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Alorica has waived its right to compel these 155 Opt-Ins to arbitration where, as here, it has litigated actively for over 20 months through the end of discovery, and has waited more than five months after the close of the opt-in period to move to compel arbitration.  *See Johnson*, 680 F.3d at 717-720; *Gen. Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434, 438 (6th Cir. 2002) (finding waiver where defendant did not assert arbitration agreement for 17 months while the plaintiff incurred the costs associated with the court action); *Manasher v. NECC Telecom*, 310 F. App'x 804, 806 (6th Cir. 2009) (defendant "waived whatever right to arbitrate it may have had by failing to plead arbitration as an affirmative defense and by actively participating in litigation for almost a year"); *Stone v. E.F. Hutton & Co.,* 898 F.2d 1542, 1543 (11th Cir. 1990) (per curiam) (holding that the defendant waived its arbitral right where it delayed its assertion of that right for 20 months); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 222 (1st Cir. 1995) (the defendant waived right to arbitrate where it "chose not to invoke arbitration from July 1992 until October 1993 and [the plaintiff] bore the costs of proceeding to try to obtain the sums it thought owed"); *Barkwell v. Sprint Commc'ns Co.*, L.P., No. 4:09-CV-56 CDL, 2012 WL 112545, at *6 (M.D. Ga. Jan. 12, 2012) (defendant waived right to compel individual arbitration where it did not raise the agreement as a defense and engaged in extensive discovery and other pretrial proceedings for two years before moving to compel).

*Johnson* is particularly instructive.  The Sixth Circuit found that the defendant had waived its right to arbitrate by waiting eight months to move to compel arbitration and, in the meantime, engaging the litigation process, including actively requesting discovery and scheduling depositions. *Id.* at 718-19.  The *Johnson* court explained that sufficient prejudice can be found when a party too long postpones his invocation of his contractual right to arbitration, and thereby causes his adversary to incur unnecessary delay or expense. *Id.* at 719.  The district

court in *Johnson* found prejudice on the basis that "[a] considerable amount of time and resources ha[d] been spent in pursuing this matter" and that transferring the claims to a new proceeding could delay resolution of the claims even further. *Id.* at 720.

If Alorica had not acted inconsistently with its right to enforce the Agreements and had successfully moved to compel the 155 Opt-Ins to arbitrate in a timely manner, Plaintiffs would not have had to expend unnecessary time and resources reviewing an analyzing their records.  Furthermore, in the months that Alorica has delayed, any Opt-In who is subject to an enforceable arbitration agreement likely could have completed an arbitration by now to recover the unpaid overtime and/or minimum wages that Alorica owes her.  Alorica's tactical delay has thus prejudiced Opt-Ins by substantially impairing the their ability to take advantage of the benefits and efficiencies of arbitration and allowing for evidence relevant to individual claims to erode or be lost.  Alorica has provided no explanation for its prejudical delay in moving to compel arbitration.  Alorica has waived its opportunity to enforce these arbitration agreements.

### C.   The Arbitration Agreements Are Unenforceable Because Such Communications with Potential Opt-Ins During the Pendency of Litigation Are Prohibited.

Because of the special procedural realities of representative litigation, courts commonly invalidate arbitration agreements, opt-out agreements, settlements, and similar agreements secured by a defendant during the pendency of class or collective litigation.  Such efforts to limit liability by picking off class members undermine courts' ability to manage the action generally and to oversee class member communications in particular.  Here, Alorica states that it began a campaign of securing such agreements in June 2013 and has continued to the present – all during the pendency of this action, which was filed in January 2013.[2]

---

[2] Alorica incorrectly claims that it only required "new hires," rather than existing or

In representative actions such as Rule 23 and FLSA collective actions, defendants' communications with potential class members – from the moment the complaint is filed – are subject to scrutiny and control.  *See Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981); *In re Sch. Asbestos Litig.*, 842 F.2d 671, 680 (3d Cir. 1988).  These constraints exist to protect class members from defendants' efforts to limit liability by extracting agreements from class members who may not appreciate that there is litigation pending to enforce their rights, and likely are not as sophisticated as the defendant in such negotiations.  *O'Connor v. Uber Techs., Inc.*, No. 13 Civ. 3826, 2014 U.S. Dist. LEXIS 61066, at *21-22 (N.D. Cal. May 1, 2014) ("Courts have also found procuring waiver, settlement, or arbitration agreements  without providing adequate information about the pending class action are misleading communications which the court may limit."); *Kleiner v. First Nat'l Bank*, 751 F.2d 1193, 1203 (11th Cir. 1985) ("Unsupervised, unilateral communications with the plaintiff class sabotage the goal of informed consent by urging exclusion on the basis of a one-sided presentation of the fact, without opportunity for rebuttal. The damage from misstatements could well be irreparable."); *Hamilton v. Ohio Sav. Bank*, 82 Ohio St. 3d 67, 76 (1998) ("[A]fter the commencement of a class action, the defendant is not permitted to engage in unilateral and unsupervised communications with potential members of the class concerning the substance of the class action.").  This is especially true in employment actions where class members are particularly vulnerable to their employers given their ongoing dependent relationship.  *Gortat v. Capala Bros.*, No. 7 Civ. 3629, 2009 U.S. Dist. LEXIS 101837, at *36 (E.D.N.Y. Oct. 16, 2009) ("Where, as here, putative class members are involved in an ongoing business

---

former employees, to sign agreements during the pendency of the litigation.  (Dkt. No. 137 at 3).  As shown by Alorica's records, however, 24 of the Opt-Ins previously worked for Alorica, some multiple times, and were re-hired by Alorica at the time they signed the Agreements.  Kuruppillai Decl. ¶ 15.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

relationship with defendants, and those members are dependent on defendants for employment, the potential for coercion [is present].”); *Zamboni v. Pepe West 48th St. LLC*, No. 12 Civ. 3157, 2013 U.S. Dist. LEXIS 34201, at * 9 (S.D.N.Y. Mar. 12, 2013) (“[W]here there is an ongoing and unequal business or employment relationship between the parties, communications may be deemed inherently coercive.”).

In light of these principles, courts consistently refuse to enforce arbitration clauses imposed on potential class members that give no notice of, or misleading information about, pending litigation on the basis that they are improper communications with putative class members and/or because they are unconscionable. *O’Connor*, 2013 U.S. Dist. LEXIS 172477, at *21 (“In sum, the promulgation of the Licensing Agreement and its arbitration provision, runs a substantial risk of interfering with the rights of [class members] under Rule 23.”); *Billingsley v. Citi Trends, Inc.*, No. 12 Civ.0627-KOB, 2013 U.S. Dist. LEXIS 8910, at *7-9 (N.D. Ala. Jan. 23, 2013) (refusing to enforce collective action waiver against opt-ins imposed on employees in private meetings after FLSA collective action was filed and allowing employees who signed that agreement to opt-into the lawsuit), *aff’d*, 560 Fed Appx. 914 (11th Cir. 2014) (focusing on the district court’s authority under § 216(b)); *Balasanyan v. Nordstrom, Inc.*, Nos.11 Civ. 2609, 10 Civ. 2671, 2012 U.S. Dist. LEXIS 30809, at *6-13 (S.D. Cal. Mar. 8, 2012) (employer’s failure to mention the pending lawsuit when soliciting revised arbitration agreements from potential opt-in class members was improper and rendered the new agreement invalid as to those class members); *Williams v. Securitas Sec. Serv. USA, Inc*., No. 10 Civ. 7181, 2011 U.S. Dist. LEXIS 75502, at *1, 11 (E.D. Pa. July 13, 2011) (employer’s distribution of arbitration agreements to FLSA putative class members during pendency of case was an improper communication); *Bilbrey v. Cingular Wireless, LLC*, 164 P.3d 131, 134 (Okla.

2007) (arbitration clause unconscionable where it was imposed on class members after class action complaint had been filed); *In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 249 (S.D.N.Y. 2005) (arbitration clauses imposed by defendant after commencement of class action were unenforceable as unconscionable); *Air Commc'n & Satellite Inc. v. EchoStar Satellite Corp.*, 38 P.3d 1246, 1254-55 (Colo. 2002) (en banc) (affirming trial court's decision holding that pre-certification communication by defendant that contained an arbitration agreement and class waiver was improper); *Carnegie v. H&R Block, Inc.*, 687 N.Y.S.2d 528, 532 (N.Y. Sup. Ct. 1999) (arbitration agreements with class waivers are not permissible where putative class members do not receive notice of the action's pendency and the effect of the waiver, as well as the opportunity to choose whether they wish to arbitrate their claims individually or proceed on a class-wide basis).

In *Williams*, after a FLSA collective action had already been filed, the defendant imposed an arbitration agreement on all of its employees that included a class and collective action waiver. The agreement applied to any dispute arising out of employment, including pending class actions in which the employee was "not a plaintiff or part of a certified class." *Williams*, 2011 U.S. Dist. LEXIS 75502, at *1-4. The agreement listed five existing representative actions in which the defendant was named that would be covered by the agreement, but did not disclose the nature of the actions or that, by failing to opt out of the agreement, the employee's ability to participate in the pending cases could be affected. *Id.* The plaintiffs from one of the pending collective actions filed an emergency motion for a protective order and corrective mailing to address the defendant's "improper communications with absent class members." *Id.* The court refused to enforce the agreement as to employees covered by the *Williams* case because it represented a confusing and unfair communication with potential Opt-Ins. *Id.* In so holding, the

court emphasized that the court has broad authority to enter appropriate orders governing the conduct of counsel and the parties as it pertains to notices mailed to potential plaintiffs.  *Id.* at *6.  The court emphasized that, although the agreement mentioned the pending lawsuit, it did not explain its nature.  *Id.* at *4.  It concluded that the "Agreement stands the concept of fair dealing on its head and is designed to thwart employees of Securitas from participating in this lawsuit."  *Id.* at *7.

Similarly, in *Balasanyan*, the court denied an employer's motion to compel individual arbitration based on a new arbitration agreement that included a class action waiver provision two months after the proposed class action complaint was filed.  In refusing to enforce the class action waiver, the court noted that it possessed the authority to control communications in a class action and explained that its supervision serves the important purpose of "prevent[ing] improper contacts that could jeopardize the rights of the class members" and that this supervision "cannot be abdicated."  *Balasanyan*, 2012 U.S. Dist. LEXIS 30809, at *10.  Indeed, "[t]o allow defendants to induce putative class members into forfeiting their rights by making them an offer and failing to disclose the existence of litigation would create an incentive to engage in misleading behavior."  *Id.*  The court explained:

> The imposition of the agreement combined with Nordstrom's failure to disclose the existence of the litigation is sufficient for the court to find an improper communication.  However, the court also notes that the existing confusion was likely buttressed by the circumstances surrounding imposition of the new agreement.  Many, and perhaps most of the putative class members were likely unaware of the pending litigation, and therefore may well have not fully appreciated the rights they were purportedly forfeiting by "accepting" the agreement . . . .

*Id.* at *12 n.3.

In short, Alorica's imposition of an arbitration agreement on CSRs without disclosing to them the pendency of this action or that signing the agreement would

impact their ability to participate was improper and the agreements are unenforceable as a result.

**D.      The Arbitration Agreements Signed After the Date an Individual Opted in Are Unenforceable Because They Result from Improper *Ex parte* Communications in Violation of the California Rules of Professional Conduct.**

Several of the arbitration agreements were signed by Opt-Ins *after* the individual had opted in and become represented by Plaintiffs' counsel in this lawsuit.  In addition to the fact that Alorica improperly failed to disclose to Opt-Ins that signing the agreement could compromise their right to participate in the lawsuit (*see* § C, above), Alorica's communication with those Opt-Ins violates California ethical rules, which prohibit *ex parte* communications.  Cal. R. Prof. Conduct 2-100(A) (directing that counsel "shall not communicate directly or indirectly about the subject of the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer," or if the party is "seeking advice or representation from" counsel).  The appropriate sanction for such conduct is invalidation of the arbitration agreements.

These improper *ex parte* communications happened repeatedly.  Plaintiffs have identified at least nine of the individuals on the 155-person list who signed arbitration agreements after having opted in.  Kuruppillai Decl. ¶ 16-18; Dkt. Nos. 91-1, 91-8, 98-1, 99-5, 100-2, 101-4, 102-1, 103-4.[3]  For example, Justa Dodge opted in on February 4, 2014, and then signed an agreement to arbitrate on September 22, 2014.  Kuruppillai Decl. ¶ 17.  Similarly, Lupe Trevino opted in on April 15, 2014, and then signed an agreement to arbitrate on August 4, 2014.  Kuruppillai Decl. ¶ 16.  Under well-settled principles, these agreements are

---

[3] In addition, 31 of the arbitration agreements Alorica submitted are not dated. Kuruppillai Decl. ¶ 14.  This precludes confirmation of whether the agreements were secured through improper *ex parte* communications (i.e., after the individual had opted in and become represented by counsel).

1

unenforceable as having been secured in violation of the basic principles of

2

professional responsibility.

3

## V.    CONCLUSION

4

For the foregoing reasons, this Court should deny Alorica's Motion to

5

Compel Arbitration.

6

Dated:  October 6, 2014          By:  ____*/s/ Allen R. Vaught*_____

7

Allen R. Vaught

8

Allen R. Vaught (admitted *pro hac vice*)

9

avaught@baronbudd.com

10

Baron & Budd, P.C.
3102 Oak Lawn Ave, Suite 1100

11

Dallas, TX 75219
Telephone:  (214) 521-3605

12

Facsimile:  (214) 520-1181

13

14

Robert P. Kondras, Jr.
(admitted *pro hac vice*)

15

kondras@huntlawfirm.net

16

HUNT, HASSLER & LORENZ LLP
100 Cherry Street

17

Terre Haute, IN 47807

18

Telephone:  (812) 232-9691
Facsimile:   (812) 234-2881

19

20

Jahan C. Sagafi (Cal. Bar No. 224887)

21

jsagafi@outtengolden.com
Katrina L. Eiland (Cal. Bar No. 275701)

22

keiland@outtengolden.com

23

OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor

24

San Francisco, CA 94111
Telephone:  (415) 638-8800

25

Facsimile:  (415) 638-8810

26

27

*Counsel for Plaintiffs and the Conditionally Certified FLSA Collective*

28