Allen Vaught (admitted *pro hac vice*)
avaught@baronbudd.com
BARON & BUDD P.C.
3201 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Telephone: (214) 521-3605
Facsimile: (214) 520-1181

Robert P. Kondras, Jr.
(admitted *pro hac vice*)
kondras@huntlawfirm.net
HUNT, HASSLER & LORENZ LLP
100 Cherry Street
Terre Haute, Indiana 47807
Telephone: (812) 232-9691
Facsimile: (812) 234-2881

Jahan C. Sagafi (Cal. Bar No. 227887)
jsagafi@outtengolden.com
Katrina L. Eiland (Cal. Bar No. 275701)
keiland@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone: (415) 638-8800
Facsimile (415) 638-8810

*Counsel for Plaintiffs, the FLSA Collective, and Proposed Class Members*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

MELISSA LILLEHAGEN *et al*., on behalf of themselves and all those similarly situated, Plaintiffs

v.

ALORICA, INC., Defendant.

Case No. 8:13-cv-00092-DOC(JPRx)

**CONSOLIDATED SECOND AMENDED COMPLAINT FOR VIOLATIONS OF FLSA AND STATE LAWS**

**COLLECTIVE ACTION AND CLASS ACTION**

**DEMAND FOR JURY TRIAL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

## **Introduction and Background**

ORDER FOR CONSOLIDATION ............................................................6

PROCEDURAL BACKGROUND ...........................................................6

JURISDICTION AND VENUE .............................................................10

SUMMARY OF CLAIMS ....................................................................11

RELATED CASE (HAWKINS) & OUTLINE OF CLAIMS .....................11

SUMMARY OF COLLECTIVE AND CLASS ACTION
ALLEGATIONS.................................................................................12

THE PARTIES ..................................................................................17

FACTUAL BACKGROUND.................................................................23

1.    Alorica's Business Model Focuses On Tightly Controlling
Costs..............................................................................................23

2.    Alorica Has Violated CSRs' Rights To Full And Fair Pay. .........24

3.    Alorica's Policies and Practices Systematically Underpay CSRs. ...............27

4.    Alorica Has Misled and Attempted to Intimidate CSRs in an
Effort to Prevent Them from Asserting Their Rights...............................30

CONSOLIDATED FLSA COLLECTIVE ACTION ALLEGATIONS.................32

CALIFORNIA CLASS ACTION ALLEGATIONS ................................33

FLORIDA CLASS ACTION ALLEGATIONS ......................................35

GEORGIA CLASS ACTION ALLEGATIONS.....................................37

OKLAHOMA CLASS ACTION ALLEGATIONS .................................40

PENNSYLVANIA CLASS ACTION ALLEGATIONS ...........................42

TEXAS CLASS ACTION ALLEGATIONS ..........................................44

VIRGINIA CLASS ACTION ALLEGATIONS.......................................46

IOWA CLASS ACTION ALLEGATIONS ............................................48

NORTH CAROLINA CLASS ACTION ALLEGATIONS ....................................50

KANSAS CLASS ACTION ALLEGATIONS..........................................................52

COLORADO CLASS ACTION ALLEGATIONS ...................................................54

FIRST CLAIM FOR RELIEF (FLSA Mid-Shift Off-the-Clock Claim, 29 U.S.C. § 201, *et seq.*, Brought by the FLSA Mid-Shift Collective Representatives, on Behalf of Themselves and the Certified FLSA Mid-Shift Collective)....................................................................................................57

SECOND CLAIM FOR RELIEF (FLSA Off-the-Clock Claim, 29 U.S.C. § 201, *et seq.*, Brought by the FLSA Pre-/Post-Shift Collective Representatives, on Behalf of Themselves and the FLSA Pre-/Post-Shift Collective)........................................................................................................59

THIRD CLAIM FOR RELIEF (FLSA Overtime Miscalculation Claim, 29 U.S.C. § 201, *et seq.*, Brought by the FLSA Overtime Miscalculation Collective Representatives, on Behalf of Themselves and the FLSA Overtime Miscalculation Collective)..................................................61

FOURTH CLAIM FOR RELIEF  (California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*, Brought by the California Class Representatives  on Behalf of Themselves and the California Class) .................................................................................................62

FIFTH CLAIM FOR RELIEF (Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 510 & 1194, Brought by the California Class Representatives, on Behalf of Themselves and the California Class)....................64

SIXTH CLAIM FOR RELIEF (California Wage Payment Provisions, Cal. Labor Code §§ 201, 202, & 203, Brought by the California Class Representatives, on Behalf of Themselves and the California Class)....................65

SEVENTH CLAIM FOR RELIEF (California Record-Keeping Provisions, Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 226, 1174, & 1174.5, Brought by the California Class Representatives, on Behalf of Themselves and the California Class) ........................................66

EIGHTH CLAIM FOR RELIEF (California Meal Period Provisions, Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 218.5, 226.7, & 512, Brought by the California Class Representatives, on Behalf of Themselves and the California Class) ........................................................67

NINTH CLAIM FOR RELIEF (California PAGA Claims, Cal. Labor

1
2

Code §§ 2698-2699.5,  Brought by the California Class Representatives,  on Behalf of Themselves and the California Class).....................68

3
4
5

TENTH CLAIM FOR RELIEF (Article X, Section 24 of the Florida Constitution and the Florida Minimum Wage Act, Brought by the Florida Class Representative,  on Behalf of Herself and the Florida Class)71

6
7

ELEVENTH CLAIM FOR RELIEF (Florida Breach of Contract, Brought by the Florida Class Representative,  on Behalf of Herself and the Florida Class)..............................................................................72

8
9
10

TWELFTH CLAIM FOR RELIEF (Florida Quantum Meruit/Unjust Enrichment,  Brought by the Florida Class Representative,  on Behalf of Herself and the Florida Class)..................................................74

11
12

THIRTEENTH CLAIM FOR RELIEF (Georgia Breach of Contract, Brought by the Georgia Class Representative,  on Behalf of Himself and the Georgia Class)...........................................................................75

13
14
15

FOURTEENTH CLAIM FOR RELIEF (Georgia Quantum Meruit/Unjust Enrichment,  Brought by the Georgia Class Representative,  on Behalf of Himself and the Georgia Class)...............................76

16
17
18

FIFTEENTH CLAIM FOR RELIEF (Oklahoma Protection of Labor Act [General Oklahoma Wage Law), Ok. Stat. 40, § 165.1 *et seq.*, Brought by the Oklahoma Class Representatives,  on Behalf of Themselves and the Oklahoma Class)......................................................78

19
20

SIXTEENTH CLAIM FOR RELIEF (Oklahoma Breach of Contract, Brought by the Oklahoma Class Representatives,  on Behalf of Themselves and the Oklahoma Class)......................................................79

21
22
23

SEVENTEENTH CLAIM FOR RELIEF (Oklahoma Quantum Meruit/Unjust Enrichment,  Brought by the Oklahoma Class Representatives,  on Behalf of Themselves and the Oklahoma Class) ...................81

24
25

EIGHTEENTH CLAIM FOR RELIEF (Pennsylvania Minimum Wage Act, 34 Pa. Code § 231, Brought by the Pennsylvania Class Representative,  on Behalf of Herself and the Pennsylvania Class) .......................82

26
27
28

NINETEENTH CLAIM FOR RELIEF (Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq., Brought by the Pennsylvania Class Representative,  on Behalf of Herself and the

Pennsylvania Class) ...................................................................................... 83

TWENTIETH CLAIM FOR RELIEF (Pennsylvania Breach of Contract, Brought by the Pennsylvania Class Representative, on Behalf of Herself and the Pennsylvania Class) ......................................... 84

TWENTY-FIRST CLAIM FOR RELIEF (Pennsylvania Quantum Meruit/Unjust Enrichment, Brought by the Pennsylvania Class Representative, on Behalf of Herself and the Pennsylvania Class) ...................... 85

TWENTY-SECOND CLAIM FOR RELIEF (Texas Breach of Contract, Brought by the Texas Class Representative, on Behalf of Herself and the Texas Class) .................................................... 86

TWENTY-THIRD CLAIM FOR RELIEF (Texas Quantum Meruit, Brought by the Texas Class Representative, on Behalf of Herself and the Texas Class).................................................................... 88

TWENTY-FOURTH CLAIM FOR RELIEF (Virginia Breach of Contract, Brought by the Virginia Class Representative, on Behalf of Herself and the Virginia Class) ................................................ 89

TWENTY-FIFTH CLAIM FOR RELIEF (Virginia Quantum Meruit/Unjust Enrichment, Brought by the Virginia Class Representative, on Behalf of Herself and the Virginia Class) ............................... 90

TWENTY-SIXTH CLAIM FOR RELIEF (Iowa Wage Payment Collection Law, Iowa Code § 91A.1 *et seq.*,  Brought by the Iowa Class Representative, on Behalf of Herself and the Iowa Class) ........................... 92

TWENTY-SEVENTH CLAIM FOR RELIEF (Iowa Breach of Contract, Brought by the Iowa Class Representative, on Behalf of Herself and the Iowa Class).................................................................... 93

TWENTY-EIGHTH CLAIM FOR RELIEF (Iowa Quantum Meruit, Brought by the Iowa Class Representative, on Behalf of Herself and the Iowa Class) ...................................................................... 95

TWENTY-NINTH CLAIM FOR RELIEF (Iowa Unjust Enrichment, Brought by the Iowa Class Representative, on Behalf of Herself and the Iowa Class) ...................................................................... 96

THIRTIETH CLAIM FOR RELIEF  (North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*, Brought by the North Carolina Class Representative, on Behalf of Herself and the North Carolina

Class) ........................................................................................................................97

THIRTY-FIRST CLAIM FOR RELIEF (North Carolina Breach of Contract,  Brought by the North Carolina Class Representative,  on Behalf of Herself and the North Carolina Class)........................................................98

THIRTY-SECOND CLAIM FOR RELIEF (North Carolina Quantum Meruit/Unjust Enrichment,  Brought by the North Carolina Class Representative,  on Behalf of Herself and the North Carolina Class)....................100

THIRTY-THIRD CLAIM FOR RELIEF (Kansas Wage Payment Act, Kan. Stat. § 44-313 *et seq.*,  Brought by the Kansas Class Representative,  on Behalf of Herself and the Kansas Class) ...............................101

THIRTY-FOURTH CLAIM FOR RELIEF (Kansas Breach of Contract,  Brought by the Kansas Class Representative,  on Behalf of Herself and the Kansas Class) .................................................................102

THIRTY-FIFTH CLAIM FOR RELIEF (Kansas Quantum Meruit/Unjust Enrichment,  Brought by the Kansas Class Representative,  on Behalf of Herself and the Kansas Class) ...............................104

THIRTY-SIXTH CLAIM FOR RELIEF (Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq*.,  Brought by the Colorado Class Representative,  on Behalf of Himself and the Colorado Class)............................105

THIRTY-SEVENTH CLAIM FOR RELIEF (Colorado Breach of Contract, Brought by the Colorado Class Representative,  on Behalf of Himself and the Colorado Class)...........................................................107

THIRTY-EIGHTH CLAIM FOR RELIEF (Colorado Quantum Meruit/Unjust Enrichment Brought by the Colorado Class Representative,  on Behalf of Himself and the Colorado Class)............................108

PRAYER FOR RELIEF .............................................................................................109

DEMAND FOR JURY TRIAL .................................................................................113

Plaintiffs Melissa Lillehagen, Sharon Shaw, Janna Carlile, Shanai Whitmore, Ignacio Pizana, Brenda Luper, Barbara Beckerley, Michael Irvin, Dianne Maddox, Raymorn Edden, Cassandra Allen, Dawn Fulmore, Vanessa Gomez, Ancelle Parker, Janelle Ayers, Cynthia Fuerte, Chelsea Ramirez, and Timothy King (collectively, "Plaintiffs") allege, on behalf of themselves and all those similarly situated, as follows:

## ORDER FOR CONSOLIDATION

1.    <u>Consolidation order.</u>  On January 12, 2015, this Court ordered the consolidation of *Lillehagen v. Alorica, Inc.*, No. 13-0092 DOC (JPRx) (C.D. Cal.) and *Beckerley v. Alorica*, Inc., 8:13-cv-00092-DOC (JPRx) (C.D. Cal.) ("*Beckerley*").  *Lillehagen* Dkt. 221.  The Court ordered Plaintiffs to file an amended consolidated complaint listing the claims in both cases under the *Lillehagen* case number.  *Id.*

## PROCEDURAL BACKGROUND

2.    <u>Filing of *Lillehagen*.</u>  On January 18, 2013, Plaintiffs Melissa Lillehagen, Sharon Shaw, Janna Carlile, Shanai Whitmore, Ignacio Pizana, Brenda Luper[1] (collectively, "the original *Lillehagen* Plaintiffs") filed *Lillehagen*, against Alorica, Inc. ("Defendant" or "Alorica") as a collective action for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).  Specifically, *Lillehagen* alleges a single claim under the FLSA: Alorica failed to properly compensate Plaintiffs for unpaid breaks and short logout episodes ("<u>Mid-Shift claims</u>")[2] that

---

[1] The parties stipulated to substitute Brenda Luper and Ignacio Pizana as named plaintiffs in place of Akesha Grizzard and Joshua Dickson on June 9, 2014.  *See* Order to dismiss Akesha Grizzard and Joshua Dickson and Substitute Opt-in Plaintiffs Brenda Luper and Ignacio Pizana as Named Plaintiffs, June 9, 2014.  Dkt. 123.

[2] Breaks of less than twenty minutes are compensable under the FLSA.  29 C.F.R. § 785.18.  All references to Mid-Shift claims or Off-the-Clock claims specifically

occurred during the middle of the workday, or during the "continuous workday" as defined by the FLSA.

3.    Key developments.  On October 24, 2013, the Court granted Plaintiffs' motion for collective action conditional certification of their Mid-Shift claims (unpaid breaks and short logout episodes breaks in time of twenty minutes or less) that occurred during the middle of the workday ("Mid-Shift claims").  *See* Order Granting Pls. Mot. For Conditional Class Certification, Oct. 25, 2013 ("*Lillehagen* Cert. Order") (*Lillehagen* Dkt. 67).  The Court approved a 90-day period for CSRs to opt into *Lillehagen*, which expired on April 17, 2014.  *Id.* at 7.  Approximately 83,361 potential class members were notified; over 8,700 individuals opted in.  *See e.g.*, *Lillehagen* Dkt*s.* 53, 68, 74, 77, 80, 88, 90-103, 105, 108-114.  On September 22, 2014, Defendant moved to decertify the *Lillehagen* Collective.  *Lillehagen* Dkt. No. 138.  The Court denied Defendant's decertification motion on December 10, 2014.  *Lillehagen* Dkt. 217.

4.    Filing of *Beckerley.*  On May 30, 2014, Plaintiffs Barbara Beckerley, Dianne Maddox, Raymorn Edden, Cassandra Allen, Dawn Fulmore, Quoashia Lewis-Murray, Vanessa Gomez, and Ancelle Parker[3] (collectively, "the *Beckerley* Plaintiffs") filed *Beckerley* against Alorica for violations of the FLSA and state law.  Plaintiffs subsequently filed their First Amended Complaint ("*Beckerley* FAC") on July 29, 2014. *Beckerley* Dkt. 26.  Specifically, *Beckerley* alleges three claims that are not alleged in *Lillehagen*: (1) under state law, Alorica failed to properly compensate Plaintiffs for unpaid breaks and short logout episodes ("Mid-Shift claims") that occurred during the middle of the workday, (2) under the

_____

incorporate all provisions of the FLSA's implementing regulations, including 29 C.F.R. § 785.18.
[3] The *Beckerley* FAC added Plaintiff Michael Irvin as a California state law class representative.  This Second Consolidated Amended Complaint adds state Class Representatives Janelle Ayers (Iowa), Cynthia Fuerte (North Carolina), Chelsea Ramirez (Kansas), and Timothy King (Colorado) to the case, and named plaintiff Sharon Shaw brings additional state law claims on behalf of the Oklahoma Class.

FLSA, Alorica failed to properly compensate Plaintiffs for Pre-/Post-Shift work (Pre-/Post-Shift Claims) and (3) under the FLSA, Alorica failed to properly calculate overtime for certain plaintiffs (Overtime Miscalculation Claims).

5.     *Beckerley* motion to dismiss.  On July 18, 2014, Alorica filed a Motion to Dismiss the *Beckerley* FAC, arguing that *Beckerley* was precluded by the claim-splitting doctrine.  *Beckerley* Dkt. No. 22.  On September 17, 2014, the Court denied Alorica's Motion to Dismiss.  *Beckerley* Dkt. No. 39.

6.     Stay and consolidation.  On September 29, 2014, the Court stayed *Beckerley* pending resolution of the summary judgment, decertification, and arbitration motions in *Lillehagen*.  *Beckerley* Dkt. 40.  On January 12, 2015, the Court ordered consolidation of all remaining claims in *Lillehagen* and *Beckerley*.  *Lillehagen Dkt*. 221.  On February 6, 2015, Plaintiffs filed their First Consolidated Amended Complaint.  *Lillehagen Dkt*. 223.

7.     Coverage of the two actions.

a.     *Lillehagen* covers the claims of CSRs who worked for Alorica at any time since August 9, 2010, who filed consents to join ("Opt-Ins") during the *Lillehagen* opt-in period (spanning from October 31, 2013 to April 17, 2014).  These CSRs are collectively referred to as the "Certified *Lillehagen* FLSA Collective."

b.     *Lillehagen* as originally pled covered only Mid-Shift claims for members of the Certified *Lillehagen* FLSA Collective.

c.     *Lillehagen* alleges violations of the FLSA on behalf of an opt-in collective already certified by this Court.  *See* Cert. Order, Dkt. 67.  *Lillehagen* alleges that Alorica has violated the FLSA by not compensating CSRs while clocked out for 20 minutes or less during a shift ("Short Breaks") ("FLSA Mid-Shift Claims").

d.      *Beckerley* alleged that Alorica maintains an unlawful policy and practice of not properly compensating its CSRs nationwide for work performed before the start of their scheduled shifts and after the end of their scheduled shifts (FLSA and state law Pre-Shift and Post-Shift claims) and during their shifts (state law Mid-Shift claims). *Beckerley* further alleges that Alorica underpays overtime pay by failing to include all required compensation in their hourly overtime rate.

e.      The *Beckerley* Plaintiffs alleged Rule 23 state law claims and FLSA claims. Those claims are repled herein. The Rule 23 state law classes encompass the states pled herein. The FLSA collective encompasses the United States except the Terre Haute, Indiana call center.

f.      Alorica has violated the *Beckerley* Plaintiffs' and Class Members' rights under the FLSA and state law by (1) failing to pay them properly for work performed while "off the clock" due to Alorica's unlawful policies and practices (collectively, the "Off-the-Clock Claims"), and (2) underpaying overtime by failing to take into account nondiscretionary bonuses, such as earned commissions, when calculating their hourly overtime rates (the "Overtime Miscalculation Claims"). The Off-the-Clock Claims can be subdivided into two types of claims: "FLSA and state law Pre-/Post-Shift Claims" and "State Law Mid-Shift Claims." Specifically, Alorica maintains a policy and practice of requiring, suffering, or permitting CSRs to work (a) before clocking in at the beginning of a shift and/or after clocking out at the end of a shift ("FLSA and state law Pre-/Post-Shift Claims"), and (b) in the middle of the shift while not on a meal break while clocked out (e.g., while the timekeeping system is malfunctioning or while the CSR is on a break of 20 minutes or less) ("State Law Mid-Shift Claims").

g.     Alorica has failed to provide the California Class Members with statutorily mandated meal breaks, and it has harmed the *Beckerley* Plaintiffs and proposed Class Members by violating other rights as set forth herein.

## JURISDICTION AND VENUE

8.     This Court has federal question jurisdiction over all claims pursuant to 28 U.S.C. § 1331 and section 16(b) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b).

9.     This Court also has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because it is a class action in which: (1) there are 100 or more members in at least one proposed class; (2) at least some members of the proposed class have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

10.     Under 28 U.S.C. § 1367, this Court additionally has supplemental jurisdiction over the Plaintiffs' state law claims because those claims derive from a common nucleus of operative fact.

11.     This Court is empowered to issue to a declaratory judgment with respect to all claims pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     The United States District Court for Central District of California has personal jurisdiction over Defendant because Alorica maintains offices in this District, does business in California and in this District, and because many of the acts complained of and giving rise to the claims alleged occurred in California and in this District.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to all claims occurred in this District.

## SUMMARY OF CLAIMS

14.    Plaintiffs are current and former Customer Service Representatives ("CSRs") for Alorica.

15.    In this consolidated complaint, Plaintiffs assert the following claims:

a.    FLSA claims for Mid-Shift Break violations on behalf of the Certified *Lillehagen* FLSA Collective.

b.    FLSA claims for Pre-/Post-Shift off-the-clock violations on behalf of a proposed nationwide FLSA collective (except for the Terre Haute location).

c.    FLSA claims for Overtime Miscalculation violations on behalf of a proposed nationwide FLSA collective (except for the Terre Haute location).

d.    State law claims for Mid-Shift and Pre-/Post-Shift off-the-clock violations on behalf of various proposed state law Rule 23 classes.

16.    Through their classwide claims, Plaintiffs seek compensation for all uncompensated work; all penalties, liquidated damages, and other damages permitted by law; restitution and/or disgorgement of all benefits obtained by Alorica from its unlawful business practices; injunctive and declaratory relief; all other forms of equitable relief permitted by law; reasonable attorneys' fees and costs; and service payments for all Class Representatives.

## RELATED CASE (HAWKINS) & OUTLINE OF CLAIMS

17.    Alorica defended similar litigation involving different claims in *Hawkins v. Alorica, Inc.*, No. 11-00283-JMS-WGH (S.D. Ind.) ("*Hawkins*"). *Hawkins*, like these actions, was a representative action on behalf of CSRs challenging Alorica's violations of wage and hour laws.  Specifically, *Hawkins* alleged that Alorica failed to pay CSRs for work performed while off the clock

during their shifts.  However, *Hawkins* is distinct from *Lillehagen* and *Beckerley* because it only covered unpaid break claims for CSRs who worked at Alorica's Terre Haute, Indiana call center.

       18.      There was no overlap in legal claims between *Hawkins* and *Lillehagen/Beckerley*.  Below is a chart summarizing the difference in scope of the three cases as originally pled:

| Legal Basis and Scope: | Off-the-Clock Claims | | Overtime Miscal-culation Claims |
|---|---|---|---|
| | **Mid-Shift Claims** | **Pre-/Post-Shift Claims** | |
| **FLSA**<br>  - Terre Haute, IN<br>  - rest of U.S. | *Hawkins*<br>***Lillehagen*** | None<br>***Beckerley*** | None<br>***Beckerley*** |
| **State Law**<br>  **-** Terre Haute, IN<br>  - rest of U.S. | *Hawkins*<br>***Beckerley*** | None<br>***Beckerley*** | None<br>***Beckerley*** |

## SUMMARY OF COLLECTIVE AND CLASS ACTION ALLEGATIONS

       19.      <u>The Certified FLSA Mid-Shift Collective</u>.  Plaintiffs Melissa Lillehagen, Sharon Shaw, Janna Carlile, Shanai Whitmore, Ignacio Pizana, Brenda Luper, Barbara Beckerley, Dianne Maddox, Dawn Fulmore, Ancelle Parker, Raymorn Edden, Janelle Ayers, Cynthia Fuerte, Chelsea Ramirez, and Timothy King (the "FLSA Mid-Shift Collective Representatives") represent a certified FLSA collective of persons employed by Alorica nationwide as CSRs since August 9, 2010 asserting Mid-Shift claims under the FLSA.  On October 24, 2013, the Court granted Plaintiffs' motion for collective action conditional certification.  Dkt. 67.  On September 22, 2014, Alorica moved to decertify the collective (Dkt. 138), and on December 10, 2014 the Court denied the motion (Dkt. 217).

       20.      <u>The FLSA Pre-/Post-Shift Collective</u>.  Plaintiffs Barbara Beckerley, Dianne Maddox, Dawn Fulmore, Vanessa Gomez, and Ancelle Parker (the "FLSA Pre-/Post-Shift Collective Representatives") bring this action on behalf of themselves and all persons who were, are, or will be employed by Alorica

nationwide (except in Terre Haute) as CSRs at any time within the three years prior to the filing of the initial Complaint through the date of the final disposition of this action (the "FLSA Pre-/Post-Shift Period").  These FLSA claims cover (a) off-the-clock work performed before the CSR clocked in at the beginning of her shift and (b) off-the-clock work performed after the CSR clocked out at the end of her shift. These claims do not include work performed during the shift, as measured by the first clock-in to the last clock-out of the shift.  This group is hereinafter referred to as the "FLSA Pre-/Post-Shift Collective."

21.  The FLSA Overtime Miscalculation Collective.  Plaintiffs Dianne Maddox and Vanessa Gomez (the "FLSA Overtime Miscalculation Collective Representatives") bring this action on behalf of themselves and all persons who were, are, or will be employed by Alorica nationwide (except in Terre Haute) as CSRs at any time within the three years prior to the filing of the initial Complaint through the date of the final disposition of this action (the "FLSA Overtime Miscalculation Period").  These FLSA claims include claims for miscalculation of CSRs' overtime pay due to failure to properly calculate each CSR's regular hourly rate, for example due to the improper exclusion of commissions paid.  This group is hereinafter referred to as the "FLSA Overtime Miscalculation Collective."

22.  The California Class.  Plaintiffs Barbara Beckerley and Michael Irvin (the "California Class Representatives") also bring this action on behalf of all persons who were, are, or will be employed by Alorica in California as CSRs (the "California Class"), at any time within the four years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "California Class Period").  The California Class Representatives assert Mid-Shift and Pre-/Post-Shift claims on behalf of the California Class.

23.     The Florida Class.  Plaintiff Dianne Maddox (the "Florida Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Florida as CSRs (the "Florida Class"), at any time within the five years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Florida Class Period").  The Florida Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Florida Class.

24.     The Georgia Class.  Plaintiff Raymorn Edden (the "Georgia Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Georgia as CSRs (the "Georgia Class"), at any time within the six years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Georgia Class Period"). The Georgia Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Georgia Class.

25.     The Oklahoma Class.  Plaintiff s Cassandra Allen and Sharon Shaw (the "Oklahoma Class Representatives") also bring this action on behalf of all persons who were, are, or will be employed by Alorica in Oklahoma as CSRs (the "Oklahoma Class"), at any time within the five years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Oklahoma Class Period").  The Oklahoma Class Representatives assert Mid-Shift and Pre-/Post-Shift claims on behalf of the Oklahoma Class.

26.     The Pennsylvania Class.  Plaintiff Dawn Fulmore (the "Pennsylvania Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Pennsylvania as CSRs (the "Pennsylvania Class"), at any time within the four years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action

Consolidated Second Amended Complaint

(the "Pennsylvania Class Period"). The Pennsylvania Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Pennsylvania Class.

27.    The Texas Class. Plaintiff Vanessa Gomez (the "Texas Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Texas as CSRs (the "Texas Class"), at any time within the four years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Texas Class Period"). The Texas Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Texas Class.

28.    The Virginia Class. Plaintiff Ancelle Parker (the "Virginia Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Virginia as CSRs (the "Virginia Class"), at any time within the five years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Virginia Class Period"). The Virginia Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Virginia Class.

29.    The Iowa Class. Plaintiff Janelle Ayers (the "Iowa Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Iowa as CSRs (the "Iowa Class"), at any time within the five years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Iowa Class Period"). The Iowa Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Iowa Class.

30.    The North Carolina Class. Plaintiff Cynthia Fuerte (the "North Carolina Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in North Carolina as CSRs (the "North Carolina Class"), at any time within the three years prior to the date of the filing of

the initial Complaint through the date of the final disposition of this action (the "North Carolina Class Period").  The North Carolina Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the North Carolina Class.

31.    The Kansas Class.  Plaintiff Chelsea Ramirez (the "Kansas Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Kansas as CSRs (the "Kansas Class"), at any time within the five years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Kansas Class Period"). The Kansas Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Kansas Class.

32.    The Colorado Class.  Plaintiff Timothy King (the "Colorado Class Representative") also brings this action on behalf of all persons who were, are, or will be employed by Alorica in Colorado as CSRs (the "Colorado Class"), at any time within the three years prior to the date of the filing of the initial Complaint through the date of the final disposition of this action (the "Colorado Class Period").  The Colorado Class Representative asserts Mid-Shift and Pre-/Post-Shift claims on behalf of the Colorado Class.

33.    Alorica has unlawfully failed to pay Plaintiffs, the Certified FLSA Mid-Shift Collective, the FLSA Pre-/Post-Shift Collective, the FLSA Overtime Miscalculation Collective, and the State Law Class Members in accordance with applicable law by (1) failing to pay them properly for work performed while "off the clock" due to Alorica's unlawful policies and practices (the "Off-the-Clock Claims"), and (2) underpaying overtime by failing to take into account nondiscretionary bonuses, such as earned commissions, when calculating their hourly overtime rates (the "Overtime Miscalculation Claims").  The Off-the-Clock Claims challenge Alorica's policy and practice of requiring, suffering, or permitting CSRs to work (a) before clocking in at the beginning of a shift and/or

after clocking out at the end of a shift, and (b) in the middle of the shift while not on a meal break while clocked out (e.g., while the timekeeping system is malfunctioning or while the CSR is on a break of 20 minutes or less).  In addition, Alorica has failed to provide the California Class Members with statutorily mandated meal breaks, and it has harmed the Plaintiffs and Class Members by violating other rights as set forth herein.

34.     Alorica has willfully refused to pay Plaintiffs and Class Members the required compensation, and has failed to keep time records as required by federal and state law.

35.     Alorica's practices violate the FLSA and state laws pled herein. Plaintiffs seek declaratory relief, compensation for all work required, suffered, or permitted by Alorica, liquidated and/or other damages and penalties as permitted by applicable law, interest, attorneys' fees and costs, and Class representative service payments.

## THE PARTIES

36.     Plaintiff <u>Melissa Lillehagen</u> is a resident of Lafayette, Indiana. Ms. Lillehagen was employed by Alorica as a CSR in Lafayette, Indiana from approximately July 2010 to July 2011.   During this time, Alorica set her pay rate at approximately $9.50 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Lillehagen has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

37.     Plaintiff <u>Sharon Shaw</u> is a resident of Tulsa, Oklahoma.  Ms. Shaw was employed by Alorica as a CSR in Tulsa, Oklahoma from approximately January 2006 to January 2012.   During this time, Alorica set her pay rate at approximately $9.75 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are

available by reference to Alorica's records.  Plaintiff Shaw has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

38.    Plaintiff <u>Janna Carlile</u> is a resident of Tulsa, Oklahoma.  Ms. Carlile was employed by Alorica as a CSR in Tulsa, Oklahoma from approximately April 2010 to November 2012.   During this time, Alorica set her pay rate at approximately $10.50 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Carlile has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

39.    Plaintiff <u>Ignacio Pizana</u> is a resident of Socorro, Texas.  Mr. Pizana was employed by Alorica as a CSR in El Paso, Texas from approximately February 2012 to March 2014.   During this time, Alorica set his pay rate at approximately $9.00 per hour.  Within the applicable limitations period, he worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Pizana has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

40.    Plaintiff <u>Brenda Luper</u> is a resident of McKeesport, Pennsylvania.  Ms. Luper was employed by Alorica as a CSR in West Mifflin, Pennsylvania from approximately October 2012 to January 2013.   During this time, Alorica set her pay rate at approximately $10.00 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records. Plaintiff Luper has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

41.    Plaintiff <u>Shanai Whitmore</u> is a resident of Tulsa, Oklahoma. Ms. Whitmore was employed by Alorica as a CSR in Oklahoma from approximately November 2006 until November 2012.  During this time, Alorica set

her pay rate at approximately $12.00 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Whitmore has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

42.     Plaintiff Barbara Beckerley is a resident of Fresno, California.  Ms. Beckerley was employed by Alorica as a CSR in Fresno, California from approximately December 2012 to July 2013.   During this time, Alorica set her pay rate at approximately $8.00 to $8.50 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Beckerley has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

43.     Plaintiff Michael Irvin is a resident of Oakland, California.  Mr. Irvin was employed by Alorica as a CSR in Clovis, California from approximately November 2009 to June 2011.  During this time, Alorica set his pay rate at approximately $8.41 to 10.00 per hour.  Within the applicable limitations period, he worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Irvin received the *Lillehagen* mailed FLSA certification notice after the opt-in deadline because it was mailed to a prior address in approximately March 2014.  He received the notice in approximately June 2014, which was after the *Lillehagen* opt-in deadline.  Upon receiving the notice, Plaintiff Irvin promptly researched *Lillehagen* and learned that the opt-in deadline had already passed.

44.     Plaintiff Dianne Maddox is a resident of Miami, Florida.  Ms. Maddox has been employed by Alorica as a CSR in Cutler Bay, Florida from 2009 to the present.  During this time, Alorica set her pay rate at approximately $9.00 to $9.65 per hour.  Within the applicable limitations period, she worked off-the-clock

without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  She also worked overtime hours for which Alorica miscalculated her hourly overtime rate by failing to include all nondiscretionary compensation as required by law.  Plaintiff Maddox has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

45.    Plaintiff Raymorn Edden is a resident of Americus, Georgia.  Mr. Edden was employed by Alorica as a CSR in Kennesaw, Georgia from approximately December 2008 to March 2011.  During this time, Alorica set his pay rate at approximately $10.00 to $11.00 per hour.  Within the applicable limitations period, he worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.

46.    Plaintiff Cassandra Allen is a resident of Tulsa, Oklahoma.  Ms. Allen was employed by Alorica as a CSR in East Tulsa, Oklahoma from approximately November or December 2009 to June or July 2010.   During this time, Alorica set her pay rate at approximately $9.00 to $9.50 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.

47.    Plaintiff Dawn Fulmore is a resident of Pittsburgh, Pennsylvania.  Ms. Fulmore was employed by Alorica as a CSR in West Mifflin, Pennsylvania from approximately February 2011 to December 2011.  During this time, Alorica set her pay rate at approximately $10.50 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records. Plaintiff Fulmore has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

48.    Plaintiff Vanessa Gomez is a resident of El Paso, Texas.  Ms. Gomez was employed by Alorica as a CSR in El Paso, Texas from approximately

December 2012 to July 2013.   During this time, Alorica set her pay rate at approximately $9.00 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  She also worked overtime hours for which Alorica miscalculated her hourly overtime rate by failing to include all nondiscretionary compensation as required by law.  Plaintiff Gomez has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).  Plaintiff Gomez did not receive notice of, nor did she join, *Lillehagen*.  Although she has not changed residences since she commenced her employment with Alorica in approximately December 2012, Plaintiff Gomez did not receive the *Lillehagen* mailed FLSA certification notice.  In approximately May 2014, Plaintiff Gomez learned about *Lillehagen* from a family member who was also employed by Alorica.  Plaintiff Gomez promptly researched *Lillehagen* and learned that the opt-in deadline had already passed and that she would be unable to opt into the case.  Plaintiff Gomez is aware of multiple other CSRs who worked for Alorica in El Paso, Texas, during the *Lillehagen* class period but did not receive the court-approved FLSA certification notice.

49.   Plaintiff <u>Ancelle Parker</u> is a resident of Norfolk, Virginia.  Ms. Parker was employed by Alorica as a CSR in Norfolk, Virginia from approximately January 2011 to March 2012, came back in August 2012 and is now currently employed by Alorica.  During this time, Alorica set her pay rate at approximately $10.00 per hour.  Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica.  The precise hours are available by reference to Alorica's records.  Plaintiff Parker has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

50.   Plaintiff <u>Janelle Ayers</u> is a resident of Cedar Rapids, Iowa.  Ms. Ayers was employed by Alorica as a CSR in Cedar Rapids, Iowa from

approximately February 2009 to February 2013. During this time, Alorica set her pay rate at approximately $12.00 to $13.50 per hour. Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica. The precise hours are available by reference to Alorica's records. Plaintiff Ayers has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

51. Plaintiff <u>Cynthia Fuerte</u> is a resident of Myrtle Beach, South Carolina. Ms. Fuerte was employed by Alorica as a CSR in Jacksonville, North Carolina from approximately August 2013 to November 2013. During this time, Alorica set her pay rate at approximately $10.00 or $11.00 per hour. Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica. The precise hours are available by reference to Alorica's records. Plaintiff Fuerte has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

52. Plaintiff <u>Chelsea Ramirez</u> is a resident of Topeka, Kansas. Ms. Ramirez was employed by Alorica as a CSR in Topeka, Kansas, from approximately June 2009 to June 2014. During this time, Alorica set her pay rate at approximately $10.00 per hour. Within the applicable limitations period, she worked off-the-clock without being compensated by Alorica. The precise hours are available by reference to Alorica's records. Plaintiff Ramirez has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

53. Plaintiff <u>Timothy King</u> is a resident of Colorado Springs, Colorado. Mr. King was employed by Alorica as a CSR in Colorado Springs, Colorado from approximately December 2010 to October 2011. During this time, Alorica set his pay rate at approximately $11.50 per hour. Within the applicable limitations period, he worked off-the-clock without being compensated by Alorica. The precise hours are available by reference to Alorica's records. Plaintiff King has consented to sue for violations of the FLSA, pursuant to 29 U.S.C. § 216(b).

54.     Defendant Alorica is a corporation with its corporate headquarters in Irvine, California.  The practices described herein were designed at and emanated from the Irvine, California headquarters and were implemented in the call centers in which Plaintiffs worked for Alorica.

## FACTUAL BACKGROUND

### 1.     Alorica's Business Model Focuses On Tightly Controlling Costs.

55.     Alorica is a major international call center company.  Alorica provides "business process outsourcing (BPO) solutions" to various corporate clients in "both the business-to-consumer (B2C) and business-to-business (B2B) sectors and all corners of industry," according to its website.[4]  One of the main business BPO solutions offered by Alorica is "Customer Experience Management Solutions," through which Alorica promises to "help you [its clients] boost customer acquisition and retention, grow brand favorability, and create customers for life."

56.     CSRs serve Alorica's clients by making and receiving telephone calls on behalf of those clients ("outbound" and "inbound" calls, respectively).  Alorica CSRs provide customer support (e.g., handling complaints, fielding billing questions, providing product support, making welcome calls to clients' customers, etc.) and revenue generation (e.g., lead generation, "up-selling," "cross-selling," "win-back initiatives," etc.).  Alorica employs many thousands of CSRs nationwide to provide these services to its clients.

57.     Alorica caters to clients in the automotive, consumer products, energy and utilities, financial services, health care, media and entertainment, retail, technology, telecommunications, and travel sectors.  Its website boasts of many instances of delivering value to its clients.  For example, Alorica decreased an

---

[4] All unattributed quotations herein are to Alorica's website.

airline client's call center costs by "over 40% . . . while exceeding customer satisfaction scores," and it helped a health care client enroll tens of thousands of new benefit members.

58.     In providing these services, Alorica boasts of the low cost to the client, noting that its "cost-effective outsourcing options . . . help you [the client] manage your customer relationships more profitably and efficiently," "reduc[ing] costs," "cut[ting] costs," "help[ing] you lower costs," and "help[ing] you minimize overhead costs." Alorica's model is aimed at "keeping [the client's] operating costs under control," because "the cost and resources required of a comprehensive marketing effort can easily burden [the client's] budget and compromise [the client's] profitability."

59.     Plaintiffs earn roughly $8-11 per hour at Alorica. *See* ¶¶ 36-53. These wages place CSRs well below the poverty line for a family of four.[5]

60.     In short, a core component of Alorica's business model is to provide services as cheaply as possible to its clients, to facilitate those clients' efforts to cut costs and maximize profit. This model creates pressure within Alorica to trim costs as closely as possible.

## 2.     Alorica Has Violated CSRs' Rights To Full And Fair Pay.

61.     Unfortunately, this pressure has led to widespread wage and hour violations, making this lawsuit necessary to compensate all Plaintiffs and Class Members for the work they have performed to help make Alorica a successful, profitable venture for its owners and other stakeholders.

62.     These wage and hour violations take three major forms: (1) requiring, suffering, or permitting CSRs to perform off-the-clock work

---

[5] *See* Annual Update of the HHS Poverty Guidelines for 2014, 79 Fed. Reg. 3593 (poverty level for family of four is $23,850, which translates to $11.93 per hour for someone paid for 50 weeks of 40 hours of work per week).

(comprising the Pre-/Post-Shift Claims and Mid-Shift Claims referred to above), (2) failing to calculate overtime premiums properly (by neglecting to include non-discretionary bonuses such as commissions in the hourly overtime rate), and (3) violating other statutory rights such as the rights in California to take an uninterrupted meal break or receive compliant wage statements and full payment of wages due.

63.    <u>Off-the-clock work (Pre-Shift Claims)</u>:  Alorica maintains a policy and practice of requiring, suffering, or permitting CSRs, including Plaintiffs and all Class Members, to report to work and perform pre-shift work before logging onto the timekeeping system.

a.    Alorica managers and supervisors enforce the policy by instructing CSRs to arrive at work in advance of their scheduled shifts, so that they can find their workstations, start them up, configure them, receive any necessary instructions, and be ready to make or accept phone calls the moment their scheduled shift starts.  CSRs are allowed to log into the timekeeping system (and begin getting paid) only after they are ready to make or accept phone calls.

b.    Alorica managers and supervisors further enforce the policy by reprimanding and/or disciplining CSRs for failing to arrive sufficiently early to be able to make or accept phone calls the moment their scheduled shift starts.  Alorica suffers and/or permits its CSRs to work during these pre-shift periods, which are an integral part of the CSRs' job, because the startup work is logistically necessary to performing their duties.

c.    This pre-shift work is performed off the clock and is consequently not compensated, even though Alorica is required to pay CSRs for such time at the hourly rate it contracted to pay them.  The time spent by Plaintiffs and Class Members performing this work is not listed on their pay statements.

d.      This pre-shift work is measurable by reference to computerized data maintained by (and in the exclusive control of) Alorica, such as building badge swipe data and computer login data.

64.    Off-the-clock work (Post-Shift Claims):  Alorica also maintains a policy and practice of failing to compensate CSRs when they perform post-shift work after logging out of the timekeeping system.

a.      CSRs' primary role is to speak with clients' customers and others by phone in repetitive calls.  However, CSRs also perform clerical work such as record-keeping and reporting, which is impractical to perform while on the phone.  Because Alorica requires CSRs to be available for phone calls during their entire shifts, CSRs are required to wait until the end of their shifts – after clocking out of the timekeeping system – to perform this clerical work.

b.      This post-shift work is performed off the clock and is consequently not compensated, even though Alorica is required to pay CSRs for such time at the hourly rate it contracted to pay them.  The time spent by Plaintiffs and Class Members performing this work is not listed on their pay statements.

c.      This post-shift work is measurable by reference to computerized data maintained by (and in the exclusive control of) Alorica, such as building badge swipe data and computer login data.

65.    Mid-Shift Off-the-Clock Claims:  Alorica also maintains a policy and practice of failing to compensate CSRs for all breaks of 20 or fewer minutes during a shift.  Specifically, Alorica sometimes requires or allows CSRs to log out of the timekeeping system during such breaks, even though Alorica is required to pay them for such time at the hourly rate it contracted to pay them.  These breaks are occasioned by Alorica CSRs needing to go to the bathroom, by Alorica's computer systems resetting (causing CSRs to be automatically logged out of the timekeeping system), and by other events.

66.    <u>Overtime Miscalculation Claims</u>:  In addition, when paying overtime, Alorica has miscalculated CSRs' overtime premiums, by failing to include all compensable remuneration in their regular rate calculation.

67.    <u>Violation of other statutory rights</u>:  As a consequence of its policies and practices, Alorica also violates other rights under state laws designed to protect CSRs.  These violations are set forth in the causes of action below.

## 3.    **Alorica's Policies and Practices Systematically Underpay CSRs.**

68.    Alorica implements various policies and practices to effectuate the violation of CSRs' rights, allowing Alorica to cut costs and save money for itself and its clients at the expense of its workforce.

69.    <u>Promise to Pay for All Hours Worked</u>.  Although it routinely fails to do so, Alorica consistently promises CSRs that it will pay them for all hours worked at their designated hourly rates, consistent with all applicable laws.  These promises are oral and written, they are made at hire and during CSRs' work tenure, and they are made by corporate representatives and call center managers.  For example, when CSRs are hired, they are given a copy of the Alorica handbook, which states Alorica's agreement that "Non-exempt employees shall be paid for all hours worked in accordance with all legal requirements."

70.    <u>Timekeeping system</u>.  One central problem is that Alorica's timekeeping system is connected to the system by which CSRs make and accept phone calls.  However, as set forth above, CSRs must and do regularly perform work besides speaking on the phone, and that work is integral to the work they perform on the phone (such as configuring their workstations, preparing for phone calls, and reporting information about their phone calls).  The way Alorica measures time worked (through this phone-centered timekeeping system) systematically undercounts actual hours worked.

71.    <u>"Schedule Adherence."</u>  CSRs are subject to a rigorous policy of "schedule adherence" that encourages off-the-clock work.  "Schedule adherence" means that CSRs must be ready to begin taking or making phone calls the moment their scheduled shift begins, must not clock in before their scheduled shift begins (even if they are performing work before the beginning of the scheduled shift), are pressured to clock out for certain breaks, must continue working while clocked out if a phone call is in progress, and must clock out at the end of their scheduled shift (even if they continue to perform work after the end of the scheduled shift).

72.    <u>Consequences for schedule adherence violations.</u>  If CSRs violate the rigorous "schedule adherence" policy, they are given warnings, formally written up, and/or terminated.

73.    Alorica also enforces its strict schedule policies by explaining to CSRs that it will punish certain policy violations by lowering their hourly rate for the entire week in which the violation occurred (typically, to minimum wage). Such policy violations that Alorica warns CSRs are punishable in this manner include (1) violations of the schedule adherence policy (e.g., the CSR is not ready to begin taking or making phone calls the moment their scheduled shifts begin), (2) CSRs leaving work before the end of their scheduled shifts, and (3) CSRs missing any portion of their rigorously scheduled shift during that workweek.

74.    <u>Pre-shift work.</u>  Managers, supervisors, and other Alorica employees regularly instruct, encourage, and implicitly remind CSRs not to clock in before their workstations are fully configured and running.  These instructions are given at new-hire training presentations, in written handbooks, and by Alorica employees during the course of CSRs' work.  If a CSR is found to be clocked in while performing this preparatory work, she is subject to discipline.  Plaintiffs are aware of instances of CSRs being disciplined for being clocked in while performing such work for Alorica.

75. <u>Configuring workstations</u>.  Configuring workstations can take substantial time.  <u>First</u>, after reporting for work at the call center, a CSR needs time to receive her assignment and travel to the workstation.  Alorica call centers are physically massive, housing hundreds of workstations each.  They can be roughly the size of a football field.  <u>Second</u>, upon arriving at a workstation, the CSR must ensure that it is properly configured.  This entails waiting for the CSR sitting at the workstation (if any) to complete her work and leave, and/or turning on and booting up the computer, then configuring it.

76. <u>Computer crashes</u>.  Alorica's computer systems periodically crash, automatically clocking CSRs out of the timekeeping system.  Sometimes, the systems crash multiple times per week.  When the computer crash clocks CSRs out, they are not paid for the work time they spend waiting for the computers to reboot and become operational again.

77. <u>Logging out for breaks</u>.  Alorica often requires or allows CSRs to log out for breaks during the workday, even though those breaks must be paid under applicable state laws and the FLSA.  Alorica has a policy of not always compensating CSRs for that break time, in violation of applicable state laws and the FLSA.

78. <u>Breaks and short logout episodes are measurable from timekeeping records</u>.  On information and belief, the compensable time spent by CSRs on breaks and short logouts is readily determinable by reference to Alorica's time records.  For example, if a CSR is assigned a shift from 9:00 a.m. to 5:30 p.m., and she clocks out for lunch from 12:01 to 12:31 p.m., and then again from 3:01 to 3:12 p.m., but is otherwise clocked in, she is clocked in (and paid) for a total of 7 hours and 49 minutes (i.e., 8:30 – 0:30 – 0:11).  However, under applicable law and the FLSA, she must be paid for 8 hours and 00 minutes.  In this illustration, Alorica

failed to pay her for 11 minutes of work, and is liable based on that violation, regardless of what activities she performed during those 11 minutes.

79.     Discouraging breaks.  Alorica sets an assigned time in the morning and an assigned time in the afternoon for approved breaks.  Alorica discourages CSRs from taking breaks – even to use the bathroom – outside of those allotted break times.  CSRs have been disciplined for taking bathroom breaks at unapproved times.  Some CSRs have reported wearing diapers to work because they are prevented from taking necessary bathroom breaks.

80.     Obstruction of information.  Alorica structures its discipline regime in such a way as to obstruct CSRs' efforts to confirm whether they are getting paid properly.  For example, CSRs are not allowed to have pens or other writing utensils in the call center building.  CSRs can be issued a final warning and be terminated for violating this rule by being caught with a pen at their desk.  This rule makes it virtually impossible for a CSR to keep the records that Alorica fails to keep regarding her work hours.

**4.      Alorica Has Misled and Attempted to Intimidate CSRs in an Effort to Prevent Them from Asserting Their Rights.**

81.     On information and belief, during the FLSA Mid-Shift opt-in period, managers and a human resources representative in several call centers – in North Carolina, Pennsylvania, Kansas, South Carolina, and perhaps other states – told groups of CSRs to ignore the Court's FLSA certification notice.

a.      For example, one manager in Pennsylvania instructed CSRs that they should "throw away" the notice because the action did not cover their particular call center.  The manager threatened that any employee who signed the consent to join form would "be held accountable."  When asked what this meant, the manager refused to elaborate.

b.      In Jacksonville, North Carolina, a human resources manager and the operations manager informed CSRs that the action did not apply to them, so they should "disregard" any letters about the lawsuit.

c.      In Kansas, CSRs received an electronic message on Alorica's Employee Information System (an internal electronic messaging system), instructing them that they should disregard any letter from the Baron & Budd law firm (one of the law firms representing the plaintiffs) in the matter.

d.      In South Carolina, a manager at one call center instructed CSRs to disregard the FLSA certification notice because it only applied to CSRs at the Tulsa, Oklahoma call center.

82.     In 2014, Alorica attempted to obstruct CSRs' efforts to vindicate their rights by presenting all CSRs nationwide with an arbitration agreement.

a.      The arbitration agreement is expressly limited to cases filed after June 1, 2014, stating:  "Nothing herein is intended to affect your right to join any pending litigation that existed prior to or as of June 1, 2014."

b.      The arbitration agreement purports to waive their right to bring claims against the company on a class or collective basis, stating that "class action, collective action, and representative action procedures shall not be asserted, nor shall they apply, in any arbitration between you and the Company; that neither you nor the Company shall assert a class, collective, or representative claim against the other, in arbitration or otherwise; and that each of you and the Company shall submit only its own, individual claims to arbitration and will not seek to represent in arbitration the interests of any other person."

c.      The arbitration agreement purports to bind CSRs if they continue to work for the company after June 1, 2014, stating that unless the employee is already subject to a different arbitration agreement, "your continuing to

work for the Company after June 1, 2014 constitutes your agreement to be bound by this policy."

## CONSOLIDATED FLSA COLLECTIVE ACTION ALLEGATIONS

83.     The FLSA Mid-Shift Collective Representatives bring the First Claim for Relief for violation of the FLSA as a certified collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the Certified FLSA Mid-Shift Collective, defined above.

84.     The FLSA Pre-/Post-Shift Collective Representatives bring the Second Claim for Relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the proposed FLSA Pre-/Post-Shift Collective, defined above.

85.     The FLSA Overtime Miscalculation Collective Representatives bring the Third Claim for Relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of the proposed FLSA Overtime Miscalculation Collective, defined above.

86.     The names and addresses of the Collective members are available from Alorica's records.  Notice should be provided to the Collective members via first class mail, email, and posting in the offices where they have worked as soon as practicable, such that they may be afforded the opportunity to opt-in by submitting an opt-in form online or by submitting a consent to join form by other means.

87.     Following best practices regarding dissemination of notice is particularly important in this case.  Providing notice through multiple methods (such as first class mail, email, and posting in the offices where CSRs have worked, in addition to reminder postcards) is appropriate here to effectively advise the Collective members of their right to join this lawsuit in light of Alorica managers'

efforts to actively discourage CSRs from participating in *Lillehagen* and misinform CSRs about their legal rights, as described above.

## CALIFORNIA CLASS ACTION ALLEGATIONS

88.     The California Class Representatives bring the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Claims for Relief for violation of California's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all California Class members, defined above.

89.     Numerosity (Fed. R. Civ. P. 23(a)(1)) – The California Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the California Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the California Class.

90.     Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the California Class, including, but not limited to, the following:

a.     Whether Alorica unlawfully failed to pay all wages owed in violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., and the California Labor Code and related regulations, Cal. Wage Order No. 4; Cal. Labor Code §§ 510, 1194, Cal. Labor Code §§ 201, 202, & 203; Cal. Labor Code §§ 226, 1174, & 1174.5;

b.     Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the California Class members to work off the clock without proper compensation under California law;

c.     Whether Alorica unlawfully failed to keep and furnish employees with records of hours worked, in violation of Labor Code §§ 226 and 1174;

d.      Whether Alorica unlawfully failed to provide California Class members with meal and rest breaks, in violation of Labor Code §§ 226.7 and 512;

e.      Whether Alorica's policy and practice of failing to pay its employees all wages due immediately upon discharge violates the California Wage Payment Provisions elaborated in the Sixth Claim for Relief;

f.      Whether Alorica's policy and practice of failing to pay its employees all wages due within the time required by law after their employment ended violates California law; and

g.      The proper measure of damages sustained by members of the California Class.

91.     <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of California Class members' claims.  Plaintiffs, like other California Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of California law.  Plaintiffs' job duties and claims were and are typical of those of the California Class members.

92.     <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the California Class members.

93.     <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

94.     Class certification of the, Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

because Alorica has acted or refused to act on grounds generally applicable to the California Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the California Class as a whole. Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

95.     Predominance and superiority (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Fourth, Fifth, Sixth, Seventh, Eighth and Ninth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the California Class predominate over any questions affecting only individual members of the California Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Alorica's common and uniform policies and practices unlawfully fail to compensate the California Class members for all hours worked. The damages suffered by individual California Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

96.     Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the California Class to the extent required by Rule 23. For the reasons described above, robust notice is particularly appropriate here.

## FLORIDA CLASS ACTION ALLEGATIONS

97.     The Florida Class Representative brings the Tenth, Eleventh and Twelfth Claims for Relief for violation of Florida's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Florida Class members, defined above.

98.     Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Florida Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and

believe, and on that basis allege, that during the Florida Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Florida Class.

99.     Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Florida Class, including, but not limited to, the following:

a.     Whether Alorica unlawfully failed to pay all wages owed in violation of Florida law;

b.     Whether Alorica unlawfully failed to pay all minimum wages owed in violation of Florida law;

c.     Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Florida Class members to work off the clock without proper compensation under Florida law; and

d.     The proper measure of damages sustained by members of the Florida Class.

100.     Typicality (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Florida Class members' claims.  Plaintiffs, like other Florida Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Florida law.  Plaintiffs' job duties and claims were and are typical of those of the Florida Class members.

101.     Adequacy (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Florida Class members.

102.     Adequacy of counsel (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the

necessary resources to prosecute this action vigorously for the benefit of all Class members.

103.    Class certification of the Tenth, Eleventh and Twelfth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Florida Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Florida Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

104.    <u>Predominance</u> and <u>superiority</u> (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Tenth, Eleventh and Twelfth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Florida Class predominate over any questions affecting only individual members of the Florida Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Alorica's common and uniform policies and practices unlawfully fail to compensate the Florida Class members for all hours worked.  The damages suffered by individual Florida Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

105.    <u>Notice</u> (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Florida Class to the extent required by Rule 23.   For the reasons described above, robust notice is particularly appropriate here.

## **GEORGIA CLASS ACTION ALLEGATIONS**

106.    The Georgia Class Representative brings the Thirteenth and Fourteenth Claims for Relief for violation of Georgia's wage and hour laws as a

class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Georgia Class members, defined above.

107.   Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Georgia Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Georgia Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Georgia Class.

108.   Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Georgia Class, including, but not limited to, the following:

a.   Whether Alorica unlawfully failed to pay all wages owed in violation of Georgia law;

b.   Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Georgia Class members to work off the clock without proper compensation under Georgia law; and

c.   The proper measure of damages sustained by members of the Georgia Class.

109.   Typicality (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Georgia Class members' claims.  Plaintiffs, like other Georgia Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Georgia law.  Plaintiffs' job duties and claims were and are typical of those of the Georgia Class members.

110.   Adequacy (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Georgia Class members.

111.   Adequacy of counsel (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated

numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

112.    Class certification of the Class certification of the Thirteenth and Fourteenth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Georgia Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Georgia Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

113.    Predominance and superiority (Fed. R. Civ. P. 23(b)(3)) –Class certification of the Thirteenth and Fourteenth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Georgia Class predominate over any questions affecting only individual members of the Georgia Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Alorica's common and uniform policies and practices unlawfully fail to compensate the Georgia Class members for all hours worked.  The damages suffered by individual Georgia Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

114.    Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Georgia Class to the extent required by Rule 23.   For the reasons described above, robust notice is particularly appropriate here.

## OKLAHOMA CLASS ACTION ALLEGATIONS

115.    The Oklahoma Class Representatives bring the Fifteenth, Sixteenth and Seventeenth Claims for Relief for violation of Oklahoma's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Oklahoma Class members, defined above.

116.    Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Oklahoma Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Oklahoma Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Oklahoma Class.

117.    Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Oklahoma Class, including, but not limited to, the following:

a.    Whether Alorica unlawfully failed to pay all wages owed in violation of Oklahoma law;

b.    Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Oklahoma Class members to work off the clock without proper compensation under Oklahoma law; and

c.    The proper measure of damages sustained by members of the Oklahoma Class.

118.    Typicality (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Oklahoma Class members' claims.  Plaintiffs, like other Oklahoma Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Oklahoma law.  Plaintiffs' job duties and claims were and are typical of those of the Oklahoma Class members.

119.    Adequacy (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Oklahoma Class members.

120.   <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

121.   Class certification of the Fifteenth, Sixteenth and Seventeenth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Oklahoma Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Oklahoma Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

122.   <u>Predominance</u> and <u>superiority</u> (Fed. R. Civ. P. 23(b)(3)) –Class certification of the Fifteenth, Sixteenth and Seventeenth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Oklahoma Class predominate over any questions affecting only individual members of the Oklahoma Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Alorica's common and uniform policies and practices unlawfully fail to compensate the Oklahoma Class members for all hours worked.  The damages suffered by individual Oklahoma Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

123.   Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Oklahoma Class to the extent required by Rule 23. For the reasons described above, robust notice is particularly appropriate here.

## PENNSYLVANIA CLASS ACTION ALLEGATIONS

124.   The Pennsylvania Class Representative brings the Eighteenth, Nineteenth, Twentieth, and Twenty-First Claims for Relief for violation of Pennsylvania's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Pennsylvania Class members, defined above.

125.   Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Pennsylvania Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Pennsylvania Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Pennsylvania Class.

126.   Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Pennsylvania Class, including, but not limited to, the following:

a.      Whether Alorica unlawfully failed to pay all wages owed in violation of Pennsylvania law;

b.      Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Pennsylvania Class members to work off the clock without proper compensation under Pennsylvania law; and

c.      The proper measure of damages sustained by members of the Pennsylvania Class.

127.   Typicality (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Pennsylvania Class members' claims.  Plaintiffs, like other Pennsylvania Class members, were subjected to Alorica's policy and practice of refusing to pay

all wages owed in violation of Pennsylvania law.  Plaintiffs' job duties and claims were and are typical of those of the Pennsylvania Class members.

128.   Adequacy (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Pennsylvania Class members.

129.   Adequacy of counsel (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

130.   Class certification of the Eighteenth, Nineteenth, Twentieth, and Twenty-First Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Pennsylvania Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Pennsylvania Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

131.   Predominance and superiority (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Eighteenth, Nineteenth, Twentieth, and Twenty-First Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Pennsylvania Class predominate over any questions affecting only individual members of the Pennsylvania Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Alorica's common and uniform policies and practices unlawfully fail to compensate the Pennsylvania Class members for all hours worked.  The damages suffered by individual Pennsylvania Class members are small compared to

the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

132.    Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Pennsylvania Class to the extent required by Rule 23. For the reasons described above, robust notice is particularly appropriate here.

## TEXAS CLASS ACTION ALLEGATIONS

133.    The Texas Class Representative brings the Twenty-Second and Twenty-Third Claims for Relief for violation of Texas's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Texas Class members, defined above.

134.    Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Texas Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Texas Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Texas Class.

135.    Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Texas Class, including, but not limited to, the following:

a.    Whether Alorica unlawfully failed to pay all wages owed in violation of Texas law;

b.    Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Texas Class members to work off the clock without proper compensation under Texas law; and

c.    The proper measure of damages sustained by members of the Texas Class.

136.  <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Texas Class members' claims.  Plaintiffs, like other Texas Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Texas law.  Plaintiffs' job duties and claims were and are typical of those of the Texas Class members.

137.  <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Texas Class members.

138.  <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

139.  Class certification of the Twenty-Second and Twenty-Third Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Texas Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Texas Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

140.  <u>Predominance</u> and <u>superiority</u> (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Twenty-Second and Twenty-Third Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Texas Class predominate over any questions affecting only individual members of the Texas Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

Alorica's common and uniform policies and practices unlawfully fail to compensate the Texas Class members for all hours worked. The damages suffered by individual Texas Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

141.    <u>Notice</u> (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Texas Class to the extent required by Rule 23. For the reasons described above, robust notice is particularly appropriate here.

## **VIRGINIA CLASS ACTION ALLEGATIONS**

142.    The Virginia Class Representative brings the Twenty-Fourth and Twenty-Fifth Claims for Relief for violation of Virginia's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Virginia Class members, defined above.

143.    <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)) – The Virginia Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that during the Virginia Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Virginia Class.

144.    <u>Commonality</u> (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Virginia Class, including, but not limited to, the following:

a.    Whether Alorica unlawfully failed to pay all wages owed in violation of Virginia law;

b.    Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Virginia Class members to work off the clock without proper compensation under Virginia law; and

Consolidated Second Amended Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        c.       The proper measure of damages sustained by members of the Virginia Class.

145.    <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Virginia Class members' claims. Plaintiffs, like other Virginia Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Virginia law. Plaintiffs' job duties and claims were and are typical of those of the Virginia Class members.

146.    <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Virginia Class members.

147.    <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation. Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law. Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

148.    Class certification of the Twenty-Fourth and Twenty-Fifth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Virginia Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Virginia Class as a whole. Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

149.    <u>Predominance</u> and <u>superiority</u> (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Twenty-Fourth and Twenty-Fifth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Virginia Class predominate over any questions affecting only

individual members of the Virginia Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Alorica's common and uniform policies and practices unlawfully fail to compensate the Virginia Class members for all hours worked.  The damages suffered by individual Virginia Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

150.    Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Virginia Class to the extent required by Rule 23.   For the reasons described above, robust notice is particularly appropriate here.

## IOWA CLASS ACTION ALLEGATIONS

151.    The Iowa Class Representative brings the Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, and Twenty-Ninth Claims for Relief for violation of Iowa's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Iowa Class members, defined above.

152.    Numerosity (Fed. R. Civ. P. 23(a)(1)) – The Iowa Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Iowa Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Iowa Class.

153.    Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Iowa Class, including, but not limited to, the following:

a.    Whether Alorica unlawfully failed to pay all wages owed in violation of Iowa law;

b.      Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Iowa Class members to work off the clock without proper compensation under Iowa law; and

c.      The proper measure of damages sustained by members of the Iowa Class.

154.    <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Iowa Class members' claims.  Plaintiffs, like other Iowa Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Iowa law.  Plaintiffs' job duties and claims were and are typical of those of the Iowa Class members.

155.    <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Iowa Class members.

156.    <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

157.    Class certification of the Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, and Twenty-Ninth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Iowa Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Iowa Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

158.    <u>Predominance</u> and <u>superiority</u> (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Twenty-Sixth, Twenty-Seventh, Twenty-Eighth, and Twenty-Ninth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Iowa Class predominate over any questions affecting only individual members of the Iowa Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Alorica's common and uniform policies and practices unlawfully fail to compensate the Iowa Class members for all hours worked.  The damages suffered by individual Iowa Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

159.    <u>Notice</u> (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Iowa Class to the extent required by Rule 23.  For the reasons described above, robust notice is particularly appropriate here.

## NORTH CAROLINA CLASS ACTION ALLEGATIONS

160.    The North Carolina Class Representative brings the Thirtieth, Thirty-First, and Thirty-Second Claims for Relief for violation of North Carolina's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all North Carolina Class members, defined above.

161.    <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)) – The North Carolina Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the North Carolina Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the North Carolina Class.

162.    Commonality (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the North Carolina Class, including, but not limited to, the following:

a.    Whether Alorica unlawfully failed to pay all wages owed in violation of North Carolina law;

b.    Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the North Carolina Class members to work off the clock without proper compensation under North Carolina law; and

c.    The proper measure of damages sustained by members of the North Carolina Class.

163.    Typicality (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of North Carolina Class members' claims.  Plaintiffs, like other North Carolina Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of North Carolina law.  Plaintiffs' job duties and claims were and are typical of those of the North Carolina Class members.

164.    Adequacy (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the North Carolina Class members.

165.    Adequacy of counsel (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

166.    Class certification of the Thirtieth, Thirty-First, and Thirty-Second Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2)

because Alorica has acted or refused to act on grounds generally applicable to the North Carolina Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the North Carolina Class as a whole. Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

167.    <u>Predominance</u> and <u>superiority</u> (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Thirtieth, Thirty-First, and Thirty-Second Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the North Carolina Class predominate over any questions affecting only individual members of the North Carolina Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Alorica's common and uniform policies and practices unlawfully fail to compensate the North Carolina Class members for all hours worked. The damages suffered by individual North Carolina Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

168.    <u>Notice</u> (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the North Carolina Class to the extent required by Rule 23. For the reasons described above, robust notice is particularly appropriate here.

## KANSAS CLASS ACTION ALLEGATIONS

169.    The Kansas Class Representative brings the Thirty-Third, Thirty-Fourth, and Thirty-Fifth Claims for Relief for violation of Kansas's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Kansas Class members, defined above.

170.    <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)) – The Kansas Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and

believe, and on that basis allege, that during the Kansas Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Kansas Class.

171. <u>Commonality</u> (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Kansas Class, including, but not limited to, the following:

a. Whether Alorica unlawfully failed to pay all wages owed in violation of Kansas law;

b. Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Kansas Class members to work off the clock without proper compensation under Kansas law; and

c. The proper measure of damages sustained by members of the Kansas Class.

172. <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Kansas Class members' claims. Plaintiffs, like other Kansas Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Kansas law. Plaintiffs' job duties and claims were and are typical of those of the Kansas Class members.

173. <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Kansas Class members.

174. <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation. Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law. Plaintiffs' counsel intends to commit the necessary resources to prosecute this action vigorously for the benefit of all Class members.

175.     Class certification of the Thirty-Third, Thirty-Fourth, and Thirty-Fifth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Kansas Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Kansas Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

176.     Predominance and superiority (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Thirty-Third, Thirty-Fourth, and Thirty-Fifth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Kansas Class predominate over any questions affecting only individual members of the Kansas Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. Alorica's common and uniform policies and practices unlawfully fail to compensate the Kansas Class members for all hours worked.  The damages suffered by individual Kansas Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

177.     Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Kansas Class to the extent required by Rule 23.  For the reasons described above, robust notice is particularly appropriate here.

## COLORADO CLASS ACTION ALLEGATIONS

178.     The Colorado Class Representative brings the Thirty-Sixth, Thirty-Seventh, and Thirty-Eighth Claims for Relief for violation of Colorado's wage and hour laws as a class action, pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), on behalf of all Colorado Class members, defined above.

179.   <u>Numerosity</u> (Fed. R. Civ. P. 23(a)(1)) – The Colorado Class is so numerous that joinder of all members is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that during the Colorado Class Period defendant Alorica has employed at least one hundred persons who satisfy the definition of the Colorado Class.

180.   <u>Commonality</u> (Fed. R. Civ. P. 23(a)(2)) – Common questions of law and fact exist as to members of the Colorado Class, including, but not limited to, the following:

a.   Whether Alorica unlawfully failed to pay all wages owed in violation of Colorado law;

b.   Whether Alorica maintained a policy or practice of requiring, suffering, or permitting the Colorado Class members to work off the clock without proper compensation under Colorado law; and

c.   The proper measure of damages sustained by members of the Colorado Class.

181.   <u>Typicality</u> (Fed. R. Civ. P. 23(a)(3)) – Plaintiffs' claims are typical of Colorado Class members' claims.  Plaintiffs, like other Colorado Class members, were subjected to Alorica's policy and practice of refusing to pay all wages owed in violation of Colorado law.  Plaintiffs' job duties and claims were and are typical of those of the Colorado Class members.

182.   <u>Adequacy</u> (Fed. R. Civ. P. 23(a)(4)) – Plaintiffs will fairly and adequately represent and protect the interests of the Colorado Class members.

183.   <u>Adequacy of counsel</u> (Fed. R. Civ. P. 23(g)) – Plaintiffs have retained counsel competent and experienced in complex class actions, the FLSA, and state labor and employment litigation.  Plaintiffs' counsel has litigated numerous class actions on behalf of nonexempt employees asserting off-the-clock claims under the FLSA and state law.  Plaintiffs' counsel intends to commit the

necessary resources to prosecute this action vigorously for the benefit of all Class members.

184.   Class certification of the Thirty-Sixth, Thirty-Seventh, and Thirty-Eighth Claims for Relief is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Alorica has acted or refused to act on grounds generally applicable to the Colorado Class, making appropriate declaratory and injunctive relief with respect to the Plaintiffs and the Colorado Class as a whole.  Plaintiffs are entitled to injunctive relief to end Alorica's common and uniform practice of failing to compensate its employees for all work performed for the benefit of Alorica.

185.   Predominance and superiority (Fed. R. Civ. P. 23(b)(3)) – Class certification of the Thirty-Sixth, Thirty-Seventh, and Thirty-Eighth Claims for Relief is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Colorado Class predominate over any questions affecting only individual members of the Colorado Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Alorica's common and uniform policies and practices unlawfully fail to compensate the Colorado Class members for all hours worked.  The damages suffered by individual Colorado Class members are small compared to the expense and burden of individual prosecution of this litigation.  In addition, class certification is superior because it will obviate the need for unduly duplicative litigation which might result in inconsistent judgments about Alorica's practices.

186.   Notice (Fed. R. Civ. P 23(c)(2)(B)) – Plaintiffs intend to send notice to all members of the Colorado Class to the extent required by Rule 23.  For the reasons described above, robust notice is particularly appropriate here.

**FIRST CLAIM FOR RELIEF**
**(FLSA Mid-Shift Off-the-Clock Claim, 29 U.S.C. § 201, *et seq.*,**
**Brought by the FLSA Mid-Shift Collective Representatives,**
**on Behalf of Themselves and the Certified FLSA Mid-Shift Collective)**

187.    The FLSA Mid-Shift Collective Representatives, on behalf of themselves and the Certified FLSA Mid-Shift Collective members, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

188.    At all relevant times, Alorica has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Alorica has employed, and continues to employ, "employee[s]," including each member of the Certified FLSA Mid-Shift Collective.  At all relevant times, Alorica has had gross operating revenues in excess of $500,000.

189.    The FLSA requires each covered employer, including Alorica, to compensate all nonexempt employees at the applicable minimum wage for all hours worked and at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

190.    Each member of the Certified FLSA Mid-Shift Collective is entitled to be paid at least the applicable minimum wage for all hours worked and to be paid overtime compensation for all overtime hours worked.

191.    At all relevant times, Alorica, pursuant to its policies and practices, failed and refused to pay at least the applicable minimum wage for all hours worked to the Certified FLSA Mid-Shift Collective members, and failed and refused to pay overtime premiums to the members of the Certified FLSA Mid-Shift Collective, for their hours worked in excess of forty hours per week.  Specifically, Alorica failed to pay all members of the Certified FLSA Mid-Shift Collective for

breaks (of less than twenty minutes) occurring during the middle of the workday, which are compensable under the FLSA. *See* 29 C.F.R. § 785.18.

192.     By failing to compensate the members of the Certified FLSA Mid-Shift Collective at a rate equal to or above the applicable minimum wage for all hours worked and not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Alorica has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 206, 207(a)(1), and 215(a).

193.     By failing to record, report, and/or preserve records of hours worked by the members of the certified FLSA Mid-Shift Collective, Alorica has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. § 211(c) and § 215(a).

194.     Alorica was aware or should have been aware that the practices described in this complaint were unlawful. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

195.     The FLSA Mid-Shift Collective Representatives, on behalf of themselves and the certified Collective members, seek recovery of attorneys' fees and costs of action to be paid by Alorica, as provided by the FLSA, 29 U.S.C. § 216(b).

196.     The FLSA Mid-Shift Collective Representatives, on behalf of themselves and the certified FLSA Mid-Shift Collective members, seek damages in the amount of unpaid  compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (FLSA Off-the-Clock Claim, 29 U.S.C. § 201, *et seq.*,
### Brought by the FLSA Pre-/Post-Shift Collective Representatives,
### on Behalf of Themselves and the FLSA Pre-/Post-Shift Collective)

197.    The FLSA Pre-/Post-Shift Collective Representatives, on behalf of themselves and the FLSA Pre-/Post-Shift Collective members, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

198.    At all relevant times, Alorica has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, Alorica has employed, and continues to employ, "employee[s]," including the FLSA Pre-/Post-Shift Collective Representatives, and each FLSA Pre-/Post-Shift Collective member.  At all relevant times, Alorica has had gross operating revenues in excess of $500,000.

199.    It is likely that other individuals besides the FLSA Pre-/Post-Shift Collective Representatives will sign consent forms and join as Plaintiffs in the future, pursuant to § 16(b) of the FLSA, 29 U.S.C. § 216(b).

200.    The FLSA requires each covered employer, including Alorica, to compensate all nonexempt employees at the applicable minimum wage for all hours worked and at a rate of not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek.

201.    The FLSA Pre-/Post-Shift Collective Representatives and the FLSA Pre-/Post-Shift Collective members are entitled to be paid at least the applicable minimum wage for all hours worked and to be paid overtime compensation for all overtime hours worked.

202.    At all relevant times, Alorica, pursuant to its policies and practices, failed and refused to pay at least the applicable minimum wage for all

hours worked to the FLSA Pre-/Post-Shift Collective Representatives and the FLSA Pre-/Post-Shift Collective members, and failed and refused to pay overtime premiums to the FLSA Pre-/Post-Shift Collective Representatives and the FLSA Pre-/Post-Shift Collective members for their hours worked in excess of forty hours per week.

203.    By failing to compensate the FLSA Pre-/Post-Shift Collective Representatives and the FLSA Pre-/Post-Shift Collective members at a rate equal to or above the applicable minimum wage for all hours worked and not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, Alorica has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 206, 207(a)(1), and 215(a).

204.    By failing to record, report, and/or preserve records of hours worked by the FLSA Pre-/Post-Shift Collective Representatives and the FLSA Pre-/Post-Shift Collective members, Alorica has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. § 211(c) and § 215(a).

205.    Alorica was aware or should have been aware that the practices described in this Consolidated Amended Class and Collective Action Complaint were unlawful.  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

206.    The FLSA Pre-/Post-Shift Collective Representatives, on behalf of themselves and the FLSA Pre-/Post-Shift Collective members, seek recovery of attorneys' fees and costs of action to be paid by Alorica, as provided by the FLSA, 29 U.S.C. § 216(b).

207.    The FLSA Pre-/Post-Shift Collective Representatives, on behalf of themselves and the FLSA Pre-/Post-Shift Collective members, seek damages in

the amount of unpaid  compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

**THIRD CLAIM FOR RELIEF**
**(FLSA Overtime Miscalculation Claim, 29 U.S.C. § 201, *et seq.*,**
**Brought by the FLSA Overtime Miscalculation Collective Representatives,**
**on Behalf of Themselves and the FLSA Overtime Miscalculation Collective)**

208.   The FLSA Overtime Miscalculation Collective Representatives, on behalf of themselves and the FLSA Overtime Miscalculation Collective members, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

209.   The FLSA requires all remuneration given to an employee (with a few limited exceptions) to be included in the calculation of the employee's regular rate when calculating overtime premiums.  29 U.S.C. § 207(e); 29 C.F.R. § 778.108.

210.   Commissions are wages and count as compensable remuneration for purposes of calculating an employee's regular rate.  29 C.F.R. § 778.117.

211.   The FLSA Overtime Miscalculation Collective Representatives were paid in part by commission (in addition to their hourly rate) during weeks when they worked overtime during the liability period.  However, on information and belief, Alorica failed to include these commissions when calculating their regular rate and consequently their overtime pay.

212.   By failing to compensate the FLSA Overtime Miscalculation Collective Representatives and the FLSA Overtime Miscalculation Collective members at a rate not less than one and one-half times the regular rate of pay (inclusive of all remuneration, including commissions) for work performed in excess of forty hours in a workweek, Alorica has violated, and continues to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. § 207(a)(1), and § 215(a).

213.     By failing to record, report, and/or preserve records of hours worked by the FLSA Overtime Miscalculation Collective Representatives and the FLSA Overtime Miscalculation Collective members, Alorica has failed to make, keep, and preserve records with respect to each of its employees sufficient to determine their wages, hours, and other conditions and practice of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. § 211(c) and § 215(a).

214.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

215.     The FLSA Overtime Miscalculation Collective Representatives, on behalf of themselves and the FLSA Overtime Miscalculation Collective members, seek recovery of attorneys' fees and costs of action to be paid by Alorica, as provided by the FLSA, 29 U.S.C. § 216(b).

216.     The FLSA Overtime Miscalculation Collective Representatives, on behalf of themselves and the FLSA Overtime Miscalculation Collective members, seek damages in the amount of unpaid overtime compensation, liquidated damages as provided by the FLSA, 29 U.S.C. § 216(b), interest, and such other legal and equitable relief as the Court deems just and proper.

**FOURTH CLAIM FOR RELIEF**
**(California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*,**
**Brought by the California Class Representatives**
**on Behalf of Themselves and the California Class)**

217.     The California Class Representatives, on behalf of themselves and all members of the California Class, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

218.     The foregoing conduct, as alleged, violates the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*  The UCL

prohibits unfair competition by prohibiting, *inter alia*, any unlawful or unfair business acts or practices.

219.    Beginning at a date unknown to Plaintiffs, but at least as long ago as four years ago, Alorica committed, and continues to commit, acts of unfair competition, as defined by the UCL, by, among other things, engaging in the acts and practices described herein.  Alorica's conduct as herein alleged has injured the California Class Representatives and the California Class members by wrongfully denying them earned wages, and therefore was substantially injurious to the California Class Representatives and to California Class members.

220.    Alorica engaged in unfair competition in violation of the UCL by violating, *inter alia*, each of the following laws.  Each of these violations constitutes an independent and separate violation of the UCL:

a.    The Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*.;

b.    California Labor Code § 1194

c.    California Labor Code §§ 201, 202, 203, 204, 226, 226.7, and 512;

d.    California Labor Code § 1174; and

e.    California Labor Code § 510, which provides in relevant part:

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.  In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

221.    Alorica's course of conduct, acts, and practices in violation of the California laws mentioned in the above paragraph constitute a separate and independent violation of the UCL.  Alorica's conduct described herein violates the policy or spirit of such laws or otherwise significantly threatens or harms competition.

222.    The unlawful and unfair business practices and acts of Alorica, described above, have injured California Class members in that they were wrongfully denied the payment of earned overtime wages.

223.    The California Class Representatives, on behalf of themselves and the California Class, seek restitution in the amount of the respective unpaid wages earned and due at a rate not less than one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, or eight hours in a day, and double the regular rate of pay for work performed in excess of twelve hours per day.

224.    The California Class Representatives, on behalf of themselves and the California Class, seek recovery of attorneys' fees and costs of this action to be paid by Alorica, as provided by the UCL and California Labor Code §§ 218, 218.5 and 1194.

**FIFTH CLAIM FOR RELIEF**
**(Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 510 & 1194;**
**Brought by the California Class Representatives,**
**on Behalf of Themselves and the California Class)**

225.    The California Class Representatives, on behalf of themselves and the California Class members, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

226.    California law requires an employer, such as Alorica, to pay employees for all hours worked.  California's wage order governing Alorica CSRs defines "hours worked" as "the time during which an employee is subject to the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code Regs. tit. 8, § 11040 at subd. 2(K).

227.    California law further requires an employer, such as Alorica, to pay overtime compensation to all nonexempt employees for all hours worked over forty per week, or over eight per day.  The California Class Representatives and California Class members are nonexempt employees entitled to be paid overtime compensation for all overtime hours worked.

228.    Throughout the California Class Period, and continuing through the present, the California Class Representatives and California Class members worked in excess of eight hours in a workday and/or forty hours in a workweek. The California Class Representatives and certain California Class members also worked in excess of twelve hours in a workday.

229.    As a direct and proximate result of Alorica's unlawful conduct, as set forth herein, the California Class Representatives and California Class members have sustained damages, including loss of earnings for hours of overtime worked on behalf of Alorica in an amount to be established at trial, prejudgment interest, and costs and attorneys' fees, pursuant to statute and other applicable law.

**SIXTH CLAIM FOR RELIEF**
**(California Wage Payment Provisions, Cal. Labor Code §§ 201, 202, & 203,**
**Brought by the California Class Representatives,**
**on Behalf of Themselves and the California Class)**

230.    The California Class Representatives, on behalf of themselves and all members of the California Class, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

231.    California Labor Code §§ 201 and 202 require Alorica to pay its employees all wages due within the time specified by law.  California Labor Code § 203 provides that if an employer willfully fails to timely pay such wages, the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

employee must, as a penalty, continue to pay the subject employees' wages until the back wages are paid in full or an action is commenced, up to a maximum of thirty days of wages.

232.    The California Class Representatives and all California Class members who ceased employment with Alorica are entitled to unpaid compensation, but to date have not received such compensation.

233.    More than thirty days have passed since the California Class Representatives and certain California Class members left Alorica's employ.

234.    As a consequence of Alorica's willful conduct in not paying compensation for all hours worked, the California Class Representatives and California Class members whose employment ended during the class period are entitled to thirty days' wages under Labor Code § 203, together with interest thereon and attorneys' fees and costs.

### SEVENTH CLAIM FOR RELIEF
### (California Record-Keeping Provisions, Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 226, 1174, & 1174.5, Brought by the California Class Representatives, on Behalf of Themselves and the California Class)

235.    The California Class Representatives, on behalf of themselves and all members of the California Class, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

236.    Alorica knowingly and intentionally failed to provide timely, accurate, itemized wage statements including, *inter alia*, hours worked, to the California Class Representatives and California Class members in accordance with Labor Code § 226(a) and the IWC Wage Orders.  Such failure caused injury to the California Class Representatives and the California Class members, by among other things, impeding them from knowing the amount of wages to they were and are entitled.  At all times relevant herein, Alorica has failed to maintain records of

hours worked by the California Class Representatives and California Class members as required under Labor Code § 1174(d).

237.    The California Class Representatives and California Class members are entitled to and seek injunctive relief requiring Alorica to comply with Labor Code §§ 226(a) and 1174(d), and further seek the amount provided under Labor Code §§ 226(e) and 1174.5, including the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period.

**EIGHTH CLAIM FOR RELIEF**
**(California Meal Period Provisions,**
**Cal. Wage Order No. 4-2001; Cal. Labor Code §§ 218.5, 226.7, & 512,**
**Brought by the California Class Representatives,**
**on Behalf of Themselves and the California Class)**

238.    The California Class Representatives, on behalf of themselves and all members of the California Class, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

239.    The California Class Representatives and the California Class members regularly work and have worked in excess of five-hour shifts without being afforded at least a half-hour meal break in which they were relieved of all duty, and more than ten-hour shifts without being afforded a second half-hour meal break in which they were relieved of all duty, as required by Labor Code §§ 226.7 and 512 and Wage Order No. 4-2000, § 11(a).

240.    In addition, the California Class Representatives and California Class members regularly work and have worked without being afforded at least one ten-minute rest break, in which they were relieved of all duty, per four hours of work performed or major fraction thereof, as required by Labor Code §§ 226.7 and Wage Order No. 4-2000, § 12.

Consolidated Second Amended Complaint

241.   As a result of Alorica's failure to afford proper meal periods, it is liable to the California Class Representatives and California Class members for one hour of additional pay at the regular rate of compensation for each workday that the proper meal periods were not provided, pursuant to Labor Code § 226.7 and Wage Order No. 4-2001, § 11(b).

242.   As a result of Alorica's failure to afford proper rest periods, it is liable to the California Class Representatives and California Class members for one hour of additional pay at the regular rate of compensation for each workday that the proper rest periods were not provided, pursuant to Labor Code § 226.7 and Wage Order No. 4-2001, § 12(b).

### NINTH CLAIM FOR RELIEF
### (California PAGA Claims, Cal. Labor Code §§ 2698-2699.5, Brought by the California Class Representatives, on Behalf of Themselves and the California Class)

243.   The California Class Representatives, on behalf of themselves and all members of the California Class, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

244.   Under the California Private Attorneys General Act ("PAGA") of 2006, Cal. Labor Code §§ 2698-2699.5, an aggrieved employee, on behalf of himself or herself and other current or former employees as well as the general public, may bring a representative action as a private attorney general to recover penalties for an employer's violations of the California Labor Code and IWC Wage Orders.  These civil penalties are in addition to any other relief available under the Cal. Labor Code, and must be allocated 75% to California's Labor and Workforce Development Agency and 25% to the aggrieved employee, pursuant to Cal. Labor Code § 2699.

245.   Pursuant to Cal. Labor Code § 1198, Alorica's failure to pay proper compensation to the California Class Representatives and California Class

members, failure to keep and furnish them with records of hours worked, failure to provide them with meal and rest breaks, and failure to pay them all wages due immediately upon discharge and within the time required by law after their employment ended is unlawful and constitutes violations of the Cal. Labor Code, each actionable under PAGA.

246.    The California Class Representatives allege, on behalf of themselves and the California Class, as well as the general public, that Alorica has violated the following provisions of the Cal. Labor Code and the following provisions of Cal. Wage Orders that are actionable through the Cal. Labor Code and PAGA, as previously alleged herein: in Cal. Wage Order No. 4; Cal. Labor Code §§ 510, 1194, Cal. Labor Code §§ 201, 202, & 203, and Cal. Labor Code §§ 226, 1174, & 1174.5.  Each of these violations entitles the California Class Representatives, as private attorneys general, to recover the applicable statutory civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

247.    Cal. Labor Code § 2699(a), which is part of PAGA, provides in pertinent part:

> Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in § 2699.3.

248.    Cal. Labor Code § 2699(f), which is part of PAGA, provides in pertinent part:

> For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: … (2) If, at the time

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation.

249.    The California Class Representatives are entitled to civil penalties, to be paid by Alorica and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(a) for Alorica's violations of the Cal. Labor Code and IWC Wage Orders for which violations a civil penalty is already specifically provided by law.  Further, the California Class Representatives are entitled to civil penalties, to be paid by Alorica and allocated as PAGA requires, pursuant to Cal. Labor Code § 2699(f) for Alorica's violations of the Cal. Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

250.    On May 30, 2014, California Class Representative Beckerley provided written notice by certified mail to the California Labor & Workforce Development Agency ("LWDA") and to Alorica of the legal claims and theories of this case contemporaneous with the filing of the Complaint in this action.  In a letter dated June 27, 2014, sent by certified mail, the LWDA notified California Class Representative Beckerley that it did not intend to investigate the allegations described in her May 30, 2014, notice.  Accordingly, the California Class Representatives may assert this claim pursuant to Labor Code § 2699.3(a)(2).

251.    Under PAGA, the California Class Representatives and the State of California are entitled to recover the maximum civil penalties permitted by law for the violations of the Cal. Labor Code and Wage Order No. 4 that are alleged in this Complaint.

**TENTH CLAIM FOR RELIEF**
**(Article X, Section 24 of the Florida Constitution and the Florida Minimum**
**Wage Act, Brought by the Florida Class Representative,**
**on Behalf of Herself and the Florida Class)**

252.    The Florida Class Representative, on behalf of herself and all members of the Florida Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

253.    Pursuant to Article X, Section 24 of the Florida Constitution and Florida Statutes § 448.01 et seq., Alorica is and was required to pay the Florida Class Representative and the Florida Class Members the minimum wage set by Florida state law. The state's minimum wage requirements apply to Alorica and protect the Florida Class Representative and the Florida Class Members.

254.    Alorica has constructed, implemented, and engaged in a policy and/or practice of failing to pay the Florida Class Representative and all of the Florida Class Members the applicable minimum wage for all hours Alorica suffered or permitted them to work, and it continues to engage in such policies and practices.

255.    On July 3, 2014, prior to filing this claim, in accordance with Fla. Stat. § 448.110(6)(a), the Florida Class Representative provided Alorica with a written notice of her intent to bring claims for unpaid minimum wages, which (1) identified the minimum wage to which she and Florida Class Members are entitled, (2) stated that she is included within a class of current and former Alorica CSRs, (3) provided the actual or estimated work dates and hours for which payment is sought, and (4) provided the total estimated amount of alleged unpaid wages owed to her and the Florida Class Members through the date of the notice. This notice is attached hereto as Exhibit A. Alorica did not pay the total amount requested or otherwise resolve the claim to the satisfaction of the Florida Class Representative within fifteen (15) days of receiving it.

256.    The Florida Class Representative has complied fully with all statutory prerequisites to filing her claim for unpaid minimum wages under Florida law.

257.    To the extent that the notice requirement impairs an individual's ability to seek full relief for violations of the law on behalf of herself and all others similarly situated, it violates the Florida Constitution, the United States Constitution, other Florida law, and federal law.

258.    As a result of these minimum wage violations, the Florida Class Representative and the Florida Class have suffered and continue to suffer damages in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to Article X, Section 24 of the Florida Constitution and Section 448.110 of the Florida Statutes.

259.    Through its pattern of unlawful conduct, Alorica has acted and continues to act willfully and intentionally, or at least with reckless disregard. Alorica was aware or should have been aware that the practices described in this Consolidated Amended Complaint are unlawful.  Alorica has not made a good-faith effort to comply with Florida's minimum wage requirements with respect to the compensation of the Florida Class Representative and the Florida Class, and instead knowingly and/or recklessly disregarded state law.

## ELEVENTH CLAIM FOR RELIEF
### (Florida Breach of Contract, Brought by the Florida Class Representative, on Behalf of Herself and the Florida Class)

260.    The Florida Class Representative, on behalf of herself and all members of the Florida Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

261.    The foregoing conduct, as alleged, constitutes breach of contract under Florida law.

262.    The Florida Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Florida Class Representative, and latter accepted.  Both parties received consideration:  the Florida Class Representative received money, and Alorica received the value of the Florida Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the Florida Class Representative for her time.  The Florida Class members likewise entered into contracts with Alorica in this manner.

263.    Alorica breached that contract by failing to pay the Florida Class Representative and the Florida Class members for all hours they worked for Alorica.

264.    The Florida Class Representative and the Florida Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

265.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Florida Class Representative and the Florida Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

266.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Florida Class Representative and the Florida Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Florida Class Representative and the Florida Class members.

267.     The Florida Class Representative, on behalf of herself and the Florida Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### TWELFTH CLAIM FOR RELIEF
### (Florida Quantum Meruit/Unjust Enrichment,
### Brought by the Florida Class Representative,
### on Behalf of Herself and the Florida Class)

268.     The Florida Class Representative, on behalf of herself and the Florida Class members, realleges and incorporates by reference all preceding paragraphs.

269.     At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

270.     Alorica requested and/or knowingly accepted valuable services and labor from the Florida Class Representative and the Florida Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  The Florida Class Representative and the Florida Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

271.     Alorica, however, has failed to properly compensate the Florida Class Representative and the Florida Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

272.    Alorica has been unjustly enriched at the expense of the Florida Class Representative and the Florida Class members.

273.    It would be unjust for Alorica to retain the benefit of the Florida Class Representative's and the Florida Class members' efforts without compensation therefore.

274.    Alorica is liable to the Florida Class Representative and the Florida Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

## THIRTEENTH CLAIM FOR RELIEF
### (Georgia Breach of Contract,
### Brought by the Georgia Class Representative,
### on Behalf of Himself and the Georgia Class)

275.    The Georgia Class Representative, on behalf of himself and all members of the Georgia Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

276.    The foregoing conduct, as alleged, constitutes breach of contract under Georgia law.

277.    The Georgia Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Georgia Class Representative, and latter accepted.  Both parties received consideration:  the Georgia Class Representative received money, and Alorica received the value of the Georgia Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the Georgia Class Representative for his time.  The Georgia Class members likewise entered into contracts with Alorica in this manner.

278.    Alorica breached that contract by failing to pay the Georgia Class Representative and the Georgia Class members for all hours they worked for Alorica.

Consolidated Second Amended Complaint

279.    The Georgia Class Representative and the Georgia Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

280.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Georgia Class Representative and the Georgia Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

281.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Georgia Class Representative and the Georgia Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Georgia Class Representative and the Georgia Class members.

282.    The Georgia Class Representative, on behalf of himself and the Georgia Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### FOURTEENTH CLAIM FOR RELIEF
### (Georgia Quantum Meruit/Unjust Enrichment, Brought by the Georgia Class Representative, on Behalf of Himself and the Georgia Class)

283.    The Georgia Class Representative, on behalf of himself and the Georgia Class members, realleges and incorporates by reference all preceding paragraphs.

284. At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

285. Alorica requested and/or knowingly accepted valuable services and labor from the Georgia Class Representative and the Georgia Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay. The Georgia Class Representative and the Georgia Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

286. Alorica, however, has failed to properly compensate the Georgia Class Representative and the Georgia Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

287. Alorica has been unjustly enriched at the expense of the Georgia Class Representative and the Georgia Class members.

288. It would be unjust for Alorica to retain the benefit of the Georgia Class Representative's and the Georgia Class members' efforts without compensation therefore.

289. Alorica is liable to the Georgia Class Representative and the Georgia Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

**FIFTEENTH CLAIM FOR RELIEF**
**(Oklahoma Protection of Labor Act [General Oklahoma Wage Law], Ok. Stat.**
**40, § 165.1 *et seq.*, Brought by Plaintiff Shaw,**
**on Behalf of Herself and the Oklahoma Class)**

290.    Plaintiff Shaw, on behalf of herself and all members of the Oklahoma Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

291.    The foregoing conduct, as alleged, violates the Oklahoma Protection of Labor Act (General Oklahoma Wage Law), Ok. Stat. 40, § 165.1 *et seq.* ("OPLA").

292.    At all relevant times, Alorica has been, and continues to be, an "employer" within the meaning of the OPLA.  At all relevant times, Alorica has employed, and/or continues to employ, "employees," including Plaintiff Shaw, and each of the Oklahoma Class members, as that term is defined and interpreted pursuant to the OPLA.  Ok. Stat. 40, § 165.1 *et seq*.

293.    The OPLA requires that an employer, such as Alorica, pay employees "all wages due [to] their employees . . . . at least twice each calendar month" in accordance with other statutory requirements.   Ok. Stat. 40, § 165.2.

294.    The OPLA defines "wages" as "compensation owed by an employer to an employee for labor or services rendered, including salaries, commissions, holiday and vacation pay, overtime pay, severance or dismissal pay, bonuses and other similar advantages agreed upon between the employer and the employee, which are earned and due, or provided by the employer to his employees in an established policy, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Ok. Stat. 40, § 165.1.

295.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay Plaintiff Shaw and the Oklahoma Class members all of their

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

wages for each and all hours worked, by requiring, suffering, or permitting them to work off the clock.

296.    As a result of Alorica's unlawful acts, Plaintiff Shaw and the Oklahoma Class members have been deprived of compensation in amounts to be determined at trial, and are entitled to seek recovery of costs and attorneys' fees; and such other legal and equitable relief as the Court deems just and proper.  Ok. Stat. 40, §§ 165.2, 165.9.

**SIXTEENTH CLAIM FOR RELIEF**
**(Oklahoma Breach of Contract,**
**Brought by the Oklahoma Class Representatives,**
**on Behalf of Themselves and the Oklahoma Class)**

297.    The Oklahoma Class Representatives, on behalf of themselves and all members of the Oklahoma Class, reallege and incorporate by reference the preceding paragraphs as if they were set forth again herein.

298.    The foregoing conduct, as alleged, constitutes breach of contract under Oklahoma law.

299.    The Oklahoma Class Representatives and Alorica entered into contracts for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to each of the Oklahoma Class Representatives, and latter accepted.  Both parties received consideration:  the Oklahoma Class Representatives received money, and Alorica received the value of the Oklahoma Class Representatives' time.  Alorica specified the exact hourly rates that it agreed to pay the Oklahoma Class Representatives for their time.  The Oklahoma Class members likewise entered into contracts with Alorica in this manner.

300.    Alorica breached these contracts by failing to pay the Oklahoma Class Representatives and the Oklahoma Class members for all hours they worked for Alorica.

301.    The Oklahoma Class Representatives and the Oklahoma Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

302.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Oklahoma Class Representatives and the Oklahoma Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

303.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Oklahoma Class Representatives and the Oklahoma Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Oklahoma Class Representatives and the Oklahoma Class members.

304.    The Oklahoma Class Representatives, on behalf of themselves and the Oklahoma Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

Consolidated Second Amended Complaint

1
2
3

## SEVENTEENTH CLAIM FOR RELIEF
### (Oklahoma Quantum Meruit/Unjust Enrichment,
### Brought by the Oklahoma Class Representatives,
### on Behalf of Themselves and the Oklahoma Class)

4
5
6

305.    Plaintiff Shaw, on behalf of herself and all members of the Oklahoma Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

7
8
9
10

306.    At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

11
12
13
14
15

307.    Alorica requested and/or knowingly accepted valuable services and labor from Plaintiff Shaw and the Oklahoma Class Members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  Plaintiff Shaw and the Oklahoma Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

16
17
18
19

308.    Alorica, however, has failed to properly compensate Plaintiff Shaw and the Oklahoma Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

20
21

309.    Alorica has been unjustly enriched at the expense of Plaintiff Shaw and the Oklahoma Class members.

22
23

310.    It would be unjust for Alorica to retain the benefit of Plaintiff Shaw's and the Oklahoma Class members' efforts without compensation therefore.

24
25
26

311.    Alorica is liable to Plaintiff Shaw and the Oklahoma Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

27
28

# EIGHTEENTH CLAIM FOR RELIEF
## (Pennsylvania Minimum Wage Act, 34 Pa. Code § 231, Brought by the Pennsylvania Class Representative, on Behalf of Herself and the Pennsylvania Class)

312.    The Pennsylvania Class Representative, on behalf of herself and all members of the Pennsylvania Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

313.    The foregoing conduct, as alleged, violates the Pennsylvania Minimum Wage Act, 34 Pa. Code § 231, 43 P.S. § 333 *et seq.* ("PMWA").

314.    At all relevant times, Alorica has been, and continues to be, an "employer" within the meaning of the PMWA.  At all relevant times, Alorica has employed, and/or continues to employ, "employees," including the Pennsylvania Class Representative, and each of the Pennsylvania Class members, as that term is defined and interpreted pursuant to the PMWA.

315.    The PMWA requires that an employer, such as Alorica, pay minimum wage for each and all hours worked to all nonexempt employees, such as the Pennsylvania Class Representative and the Pennsylvania Class members. Hours worked "includes time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed work place, time spent in traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work."  34 Pa. Code § 231.1(b).

316.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Pennsylvania Class Representative and the Pennsylvania Class members minimum wages for each and all hours worked, by requiring, suffering, or permitting them to work off the clock.

317.    The Pennsylvania Class Representative, on behalf of herself and the Pennsylvania Class members, seeks damages in the amount of the respective

unpaid minimum wages earned for each and every non-overtime hour worked and at a rate of one and one-half times the minimum wage for work performed in excess of forty hours in a workweek, as provided by the PMWA, costs and attorneys' fees; and such other legal and equitable relief as the Court deems just and proper.

## NINETEENTH CLAIM FOR RELIEF
### (<u>Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 et seq.,<br>Brought by the Pennsylvania Class Representative,<br>on Behalf of Herself and the Pennsylvania Class</u>)

318.    The Pennsylvania Class Representative, on behalf of herself and all members of the Pennsylvania Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

319.    By its actions alleged above, Alorica violated the provisions of the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*

320.    The Pennsylvania Wage Payment and Collection Law provides, in relevant part:  "Every employer shall pay all wages . . . due to his employees on regular paydays designated in advance by the employer.  Overtime wages may be considered as wages earned and payable in the next succeeding pay period."  43 P.S. § 260.3.

321.    The Pennsylvania Class Representative and the Pennsylvania Class members received no compensation from Alorica for the many hours that they worked off the clock during their tenures with Alorica.  The Pennsylvania Class Representative and the Pennsylvania Class members were not paid for this time worked on the regular paydays, nor were they compensated for overtime work in the subsequent pay periods.  Alorica's failure to pay all amounts due and owed remains ongoing.

322.    As a result of Alorica's unlawful acts, the Pennsylvania Class Representative and the Pennsylvania Class members have been deprived of

compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, and liquidated damages, together with interest, costs, and attorney's fees pursuant to 43 P.S. §§ 260.9 and 260.10.

### TWENTIETH CLAIM FOR RELIEF
### (Pennsylvania Breach of Contract,
### Brought by the Pennsylvania Class Representative,
### on Behalf of Herself and the Pennsylvania Class)

323.    The Pennsylvania Class Representative, on behalf of herself and all members of the Pennsylvania Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

324.    The foregoing conduct, as alleged, constitutes breach of contract under Pennsylvania law.

325.    The Pennsylvania Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Pennsylvania Class Representative, and latter accepted.  Both parties received consideration:  the Pennsylvania Class Representative received money, and Alorica received the value of Pennsylvania Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the Pennsylvania Class Representative for her time.  The Pennsylvania Class members likewise entered into contracts with Alorica in this manner.

326.    Alorica breached that contract by failing to pay the Pennsylvania Class Representative and the Pennsylvania Class members for all hours they worked for Alorica.

327.    The Pennsylvania Class Representative and the Pennsylvania Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

328.   At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Pennsylvania Class Representative and the Pennsylvania Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

329.   As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Pennsylvania Class Representative and the Pennsylvania Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Pennsylvania Class Representative and the Pennsylvania Class members.

330.   The Pennsylvania Class Representative, on behalf of herself and the Pennsylvania Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### TWENTY-FIRST CLAIM FOR RELIEF
### (Pennsylvania Quantum Meruit/Unjust Enrichment, Brought by the Pennsylvania Class Representative, on Behalf of Herself and the Pennsylvania Class)

331.   The Pennsylvania Class Representative, on behalf of herself and all members of the Pennsylvania Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

332.   At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half

times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

333.    Alorica requested and/or knowingly accepted valuable services and labor from the Pennsylvania Class Representative and the Pennsylvania Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  The Pennsylvania Class Representative and the Pennsylvania Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

334.    Alorica, however, has failed to properly compensate the Pennsylvania Class Representative and the Pennsylvania Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

335.    Alorica has been unjustly enriched at the expense of the Pennsylvania Class Representative and the Pennsylvania Class members.

336.    It would be unjust for Alorica to retain the benefit of the Pennsylvania Class Representative's and the Pennsylvania Class members' efforts without compensation therefore.

337.    Alorica is liable to the Pennsylvania Class Representative and the Pennsylvania Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

## TWENTY-SECOND CLAIM FOR RELIEF
### (Texas Breach of Contract,
### Brought by the Texas Class Representative,
### on Behalf of Herself and the Texas Class)

338.    The Texas Class Representative, on behalf of herself and all members of the Texas Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

339.    The foregoing conduct, as alleged, constitutes breach of contract under Texas law.

340.    The Texas Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Texas Class Representative, and latter accepted. Both parties received consideration:  the Texas Class Representative received money, and Alorica received the value of the Texas Class Representative's time. Alorica specified the exact hourly rates that it agreed to pay the Texas Class Representative for her time.  The Texas Class members likewise entered into contracts with Alorica in this manner.

341.    Alorica breached that contract by failing to pay the Texas Class Representative and the Texas Class members for all hours they worked for Alorica.

342.    The Texas Class Representative and the Texas Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

343.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Texas Class Representative and the Texas Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

344.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Texas Class Representative and the Texas Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Texas Class Representative and the Texas Class members.

345.    The Texas Class Representative, on behalf of herself and the Texas Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**TWENTY-THIRD CLAIM FOR RELIEF**
**(Texas Quantum Meruit,**
**Brought by the Texas Class Representative,**
**on Behalf of Herself and the Texas Class)**

346.    The Texas Class Representative, on behalf of herself and all members of the Texas Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

347.    At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

348.    Alorica requested and/or knowingly accepted valuable services and labor from the Texas Class Representative and the Texas Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay.   The Texas Class Representative and the Texas Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

349.    Alorica, however, has failed to properly compensate the Texas Class Representative and the Texas Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

350.    Alorica has been unjustly enriched at the expense of the Texas Class Representative and the Texas Class members.

351.    It would be unjust for Alorica to retain the benefit of the Texas Class Representative's and the Texas Class members' efforts without compensation therefore.

352.    Alorica is liable to the Texas Class Representative and the Texas Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

**TWENTY-FOURTH CLAIM FOR RELIEF**
**(Virginia Breach of Contract,**
**Brought by the Virginia Class Representative,**
**on Behalf of Herself and the Virginia Class)**

353.    The Virginia Class Representative, on behalf of herself and all members of the Virginia Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

354.    The foregoing conduct, as alleged, constitutes breach of contract under Virginia law.

355.    The Virginia Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Virginia Class Representative, and latter accepted.  Both parties received consideration:  the Virginia Class Representative received money, and Alorica received the value of the Virginia Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the Virginia Class Representative for her time.  The Virginia Class members likewise entered into contracts with Alorica in this manner.

356.    Alorica breached that contract by failing to pay the Virginia Class Representative and the Virginia Class members for all hours they worked for Alorica.

357.    The Virginia Class Representative and the Virginia Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

358.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Virginia Class Representative and the Virginia Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

359.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Virginia Class Representative and the Virginia Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Virginia Class Representative and the Virginia Class members.

360.    The Virginia Class Representative, on behalf of herself and the Virginia Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## TWENTY-FIFTH CLAIM FOR RELIEF
### (Virginia Quantum Meruit/Unjust Enrichment, Brought by the Virginia Class Representative, on Behalf of Herself and the Virginia Class)

361.    The Virginia Class Representative, on behalf of herself and all members of the Virginia Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

362.     At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

363.     Alorica requested and/or knowingly accepted valuable services and labor from the Virginia Class Representative and the Virginia Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  The Virginia Class Representative and the Virginia Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

364.     Alorica, however, has failed to properly compensate the Virginia Class Representative and the Virginia Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

365.     Alorica has been unjustly enriched at the expense of the Virginia Class Representative and the Virginia Class members.

366.     It would be unjust for Alorica to retain the benefit of the Virginia Class Representative's and the Virginia Class members' efforts without compensation therefore.

367.     Alorica is liable to the Virginia Class Representative and the Virginia Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

# TWENTY-SIXTH CLAIM FOR RELIEF
## (Iowa Wage Payment Collection Law, Iowa Code § 91A.1 *et seq.*, Brought by the Iowa Class Representative, on Behalf of Herself and the Iowa Class)

368.    The Iowa Class Representative, on behalf of herself and all members of the Iowa Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

369.    The foregoing conduct, as alleged, constitutes a violation of the Iowa Wage Payment Collection Law under Iowa Code § 91A.1 *et seq.* ("IWPCL").

370.    At all relevant times, Alorica has been, and continues to be, an "employer" within the meaning of the IWPCL. At all relevant times, Alorica has employed, and/or continues to employ, "employees" including the Iowa Class Representative, and each of the Iowa Class members, as that term is defined and interpreted pursuant to the IWPCL at Iowa Code §91.A.2.

371.    The IWPCL requires an employer to pay "all wages due its employees, less any lawful deductions specified in section 91A.5, at least in monthly, semimonthly, or biweekly installments on regular paydays which are at consistent intervals from each other and which are designated in advance by the employer." Iowa Code § 91A.3(1).

372.    The IWPCL allows for employees to collect wages or compensation withheld by the employer, whether the result of a wage dispute or otherwise, to be paid, plus liquidated damages, court costs, and attorneys' fees. Iowa Code § 91A.8.

373.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Iowa Class Representative and the Iowa Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

374.    Due to Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Iowa Class Representative and

the Iowa Class members at their agreed-upon hourly rate, Alorica has intentionally refused to pay all wages due as set forth in the preceding paragraphs of the Complaint to the Iowa Class Representative and the Iowa Class members in violation of the IWPCL.

375.    The Iowa Class Representative, on behalf of herself and the Iowa Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

376.    Because Alorica's conduct has been willful and intentional, the Iowa Class Representative, on behalf of herself and the Iowa Class members, seeks liquidated damages as well as the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### TWENTY-SEVENTH CLAIM FOR RELIEF
### (Iowa Breach of Contract,
### Brought by the Iowa Class Representative,
### on Behalf of Herself and the Iowa Class)

377.    The Iowa Class Representative, on behalf of herself and all members of the Iowa Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

378.    The foregoing conduct, as alleged, constitutes breach of contract under Iowa law.

379.    The Iowa Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage.

Alorica offered employment to the Iowa Class Representative, and latter accepted. Both parties received consideration:  the Iowa Class Representative received money, and Alorica received the value of the Iowa Class Representative's time. Alorica specified the exact hourly rates that it agreed to pay the Iowa Class Representative for her time.  The Iowa Class members likewise entered into contracts with Alorica in this manner.

380.    Alorica breached that contract by failing to pay the Iowa Class Representative and the Iowa Class members for all hours they worked for Alorica.

381.    The Iowa Class Representative and the Iowa Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

382.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Iowa Class Representative and the Iowa Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

383.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Iowa Class Representative and the Iowa Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached its contracts with the Iowa Class Representative and the Iowa Class members.

384.    The Iowa Class Representative, on behalf of herself and the Iowa Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TWENTY-EIGHTH CLAIM FOR RELIEF
## (Iowa Quantum Meruit,
## Brought by the Iowa Class Representative,
## on Behalf of Herself and the Iowa Class)

385.    The Iowa Class Representative, on behalf of herself and all members of the Iowa Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

386.    At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

387.    Alorica requested and/or knowingly accepted valuable services and labor from the Iowa Class Representative and the Iowa Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay. The Iowa Class Representative and the Iowa Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

388.    The services provided by the Iowa Class Representative and the Iowa Class members were not rendered gratuitously, but were rendered with the expectation of compensation from Alorica.

389.    Alorica, however, has failed to properly compensate the Iowa Class Representative and the Iowa Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

390.    Alorica is liable to the Iowa Class Representative and the Iowa Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

## THIRTIETH CLAIM FOR RELIEF
### (North Carolina Wage and Hour Act, N.C. Gen. Stat. § 95-25.1 *et seq.*, Brought by the North Carolina Class Representative, on Behalf of Herself and the North Carolina Class)

397.    The North Carolina Class Representative, on behalf of herself and all members of the North Carolina Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

398.    The foregoing conduct, as alleged, constitutes a violation of the North Carolina Wage and Hour Act under N.C. Gen. Stat. §95-25.1 *et seq.* ("NCWHA").

399.    At all relevant times, Alorica has been, and continues to be, an "employer" within the meaning of the NCWHA.  At all relevant times, Alorica has employed, and/or continues to employ, "employees" including the North Carolina Class Representative, and each of the North Carolina Class members, as that term is defined and interpreted pursuant to the NCWHA.  N.C. Gen. Stat. §95-25.2.

400.    The NCWHA provides that "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday.  Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly.  Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance." N.C. Gen. Stat. §95-25.6.

401.    The NCWHA further provides that any employer who violates the NCWHA is liable to the employee or employees affected in the amount of their unpaid amounts due under N.C. Gen. Stat. 95-25.6-12, plus interest, as well as liquidated damages in an equal amount.  N.C. Gen. Stat. §95-25.22 (a) *et seq.* The NCWHA also provides that a court may order costs and fees of the action as well as reasonable attorneys' fees to be paid by the defendant. N.C. Gen. Stat. §95-25.22 (d).

402.     At all relevant times, Alorica had a policy and practice of failing and refusing to pay the North Carolina Class Representative and the North Carolina Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

403.     Alorica has failed to pay wages earned and due to the North Carolina Class Representative and the North Carolina Class members at their agreed-upon hourly rate as set forth herein in violation of the NCWHA.

404.     The North Carolina Class Representative, on behalf of herself and the North Carolina Class members, seeks the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate, liquidated damages in an equal amount, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### THIRTY-FIRST CLAIM FOR RELIEF
### (North Carolina Breach of Contract, Brought by the North Carolina Class Representative, on Behalf of Herself and the North Carolina Class)

405.     The North Carolina Class Representative, on behalf of herself and all members of the North Carolina Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

406.     The foregoing conduct, as alleged, constitutes breach of contract under North Carolina law.

407.     The North Carolina Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage.  Alorica offered employment to the North Carolina Class Representative, and latter accepted.  Both parties received consideration:  the North Carolina Class Representative received money, and Alorica received the value of the North Carolina Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the North Carolina Class Representative for her time.  The North

Carolina Class members likewise entered into contracts with Alorica in this manner.

408.    Alorica breached that contract by failing to pay the North Carolina Class Representative and the North Carolina Class members for all hours they worked for Alorica.

409.    The North Carolina Class Representative and the North Carolina Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

410.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the North Carolina Class Representative and the North Carolina Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

411.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the North Carolina Class Representative and the North Carolina Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the North Carolina Class Representative and the North Carolina Class members.

412.    The North Carolina Class Representative, on behalf of herself and the North Carolina Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## THIRTY-SECOND CLAIM FOR RELIEF
### (North Carolina Quantum Meruit/Unjust Enrichment, Brought by the North Carolina Class Representative, on Behalf of Herself and the North Carolina Class)

413.    The North Carolina Class Representative, on behalf of herself and all members of the North Carolina Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

414.    At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

415.    Alorica requested and/or knowingly accepted valuable services and labor from the North Carolina Class Representative and the North Carolina Class Members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  The North Carolina Class Representative provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

416.    Alorica, however, has failed to properly compensate the North Carolina Class Representative and the North Carolina Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

417.    Alorica has been unjustly enriched at the expense of the North Carolina Class Representative and the North Carolina Class members.

418.    It would be unjust for Alorica to retain the benefit of the North Carolina Class Representative's and the North Carolina Class members' efforts without compensation therefore.

419.    Alorica is liable to the North Carolina Class Representative and the North Carolina Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

**THIRTY-THIRD CLAIM FOR RELIEF**
**(Kansas Wage Payment Act, Kan. Stat. § 44-313 *et seq.*,**
**Brought by the Kansas Class Representative,**
**on Behalf of Herself and the Kansas Class)**

420.    The Kansas Class Representative, on behalf of herself and all members of the Kansas Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

421.    The foregoing conduct, as alleged, constitutes a violation of the Kansas Wage Payment Act under Kan. Stat. § 44-313 *et seq.* ("KWPA").

422.    At all relevant times, Alorica has been, and continues to be, an "employer within the meaning of the KWPA.  At all relevant times, Alorica has employed, and/or continues to employ, "employees" including the Kansas Class Representative, and each of the Kansas Class members, as that term is defined and interpreted pursuant to the KWPA at Kan. Stat. § 44-313 (b).

423.    The KWPA provides that "[e]very employer shall pay all wages due to the employees of the employer at least once during each calendar month, on regular paydays designated in advance by the employer." Kan. Stat. § 44-314 (a).

424.    The KWPA further provides that an employer who willfully fails to pay an employee wages as required by Kan. Stat. § 44-314 "shall be liable to the employee for the wages due and also shall be liable to the employee for a penalty in the fixed amount of 1% of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to 100% of the unpaid wages, whichever is less."  Kan. Stat. § 44-315 (b).

425.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Kansas Class Representative and the Kansas Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

426.    Due to Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Kansas Class Representative and the Kansas Class members at their agreed-upon hourly rate, Alorica has willfully refused to pay all wages due as set forth in the preceding paragraphs of the Complaint to the Kansas Class Representative and the Kansas Class members in violation of the KWPA.

427.    The Kansas Class Representative, on behalf of herself and the Kansas Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate, a penalty in the fixed amount of 1% of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to 100% of the unpaid wages, whichever is less, and such other legal and equitable relief as the Court deems just and proper.

### THIRTY-FOURTH CLAIM FOR RELIEF
### (Kansas Breach of Contract,
### Brought by the Kansas Class Representative,
### on Behalf of Herself and the Kansas Class)

428.    The Kansas Class Representative, on behalf of herself and all members of the Kansas Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

429.    The foregoing conduct, as alleged, constitutes breach of contract under Kansas law.

430.    The Kansas Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Kansas Class Representative, and latter accepted.  Both parties received consideration:  the Kansas Class Representative received money, and Alorica received the value of the Kansas Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the Kansas Class Representative for her time.  The Kansas Class members likewise entered into contracts with Alorica in this manner.

431.    Alorica breached that contract by failing to pay the Kansas Class Representative and the Kansas Class members for all hours they worked for Alorica.

432.    The Kansas Class Representative and the Kansas Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

433.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Kansas Class Representative and the Kansas Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

434.    As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Kansas Class Representative and the Kansas Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Kansas Class Representative and the Kansas Class members.

435.    The Kansas Class Representative, on behalf of herself and the Kansas Class members, seeks damages in the amount of the respective unpaid

wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

**THIRTY-FIFTH CLAIM FOR RELIEF**
**(Kansas Quantum Meruit/Unjust Enrichment,**
**Brought by the Kansas Class Representative,**
**on Behalf of Herself and the Kansas Class)**

436.    The Kansas Class Representative, on behalf of herself and all members of the Kansas Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

437.    At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

438.    Alorica requested and/or knowingly accepted valuable services and labor from the Kansas Class Representative and the Kansas Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  The Kansas Class Representative and the Kansas Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

439.    Alorica, however, has failed to properly compensate the Kansas Class Representative and the Kansas Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

440.    Alorica has been unjustly enriched at the expense of the Kansas Class Representative and the Kansas Class members.

441.    It would be unjust for Alorica to retain the benefit of the Kansas Class Representative's and the Kansas Class members' efforts without compensation therefore.

442.    Alorica is liable to the Kansas Class Representative and the Kansas Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

### THIRTY-SIXTH CLAIM FOR RELIEF
### (Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.*, Brought by the Colorado Class Representative, on Behalf of Himself and the Colorado Class)

443.    The Colorado Class Representative, on behalf of himself and all members of the Colorado Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

444.    The foregoing conduct, as alleged, constitutes a violation of the Colorado Wage Claim Act ("CWCA").  Colo. Rev. Stat. § 8-4-101.

445.    At all relevant times, Alorica has been, and continues to be, an "employer within the meaning of the CWCA.  At all relevant times, Alorica has employed, and/or continues to employ, "employees" including the Colorado Class Representative, and each of the Colorado Class members, as that term is defined and interpreted pursuant to the CWCA at Colo. Rev. Stat. § 8-4-101 (4).

446.    The CWCA provides that "[a]ll wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments." Colo. Rev. Stat. § 8-4-103 (1)(a).

447.    The CWCA defines "wages" or "compensation" as including the following: "[a]ll amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same or whether the labor or service is performed under contract, subcontract, partnership, subpartnership, station plan, or other agreement for the performance of labor or service if the labor or service to be paid for is performed personally by the person demanding payment. No amount is considered to be wages or compensation until such amount is earned, vested, and determinable, at which time such amount shall be payable to the employee pursuant to this article."  Colo. Rev. Stat. § 8-4-101.

448.    The Colorado Administrative Code has adopted some regulations defining "hours worked" to include off-the-clock work.  See 7 Colo. Code Regs. § 1103-1:2 (Hours worked: the time during which an employee is subject to the control of an employer, including all the time the employee is suffered or permitted to work whether or not required to do so.  Requiring or permitting employees to remain at the place of employment awaiting a decision on job assignment or when to begin work or to perform clean up or other duties "off the clock" shall be considered time worked and said time must be compensated"). The CWCA further provides that "[a]ny person claiming to be aggrieved by violation of any provisions of this article or regulations prescribed pursuant to this article may file suit in any court having jurisdiction over the parties."  Colo. Rev. Stat. § 8-4-110 (2).  A court may order reasonable costs and attorneys' fees to be paid by the defendant.  Colo. Rev. Stat. § 8-4-110 (1).

449.    At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Colorado Class Representative and the Colorado Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

450.    Alorica has failed to pay wages earned and due to the Colorado Class Representative and the Colorado Class members at their agreed-upon hourly rate as set forth in the preceding paragraphs of the Complaint in violation of the CWCA.

451.    The Colorado Class Representative, on behalf of himself and the Colorado Class members, seeks the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### THIRTY-SEVENTH CLAIM FOR RELIEF
### (Colorado Breach of Contract, Brought by the Colorado Class Representative, on Behalf of Himself and the Colorado Class)

452.    The Colorado Class Representative, on behalf of himself and all members of the Colorado Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

453.    The foregoing conduct, as alleged, constitutes breach of contract under Colorado law.

454.    The Colorado Class Representative and Alorica entered into a contract for the former to provide services to the latter at an agreed-upon wage. Alorica offered employment to the Colorado Class Representative, and latter accepted.  Both parties received consideration:  the Colorado Class Representative received money, and Alorica received the value of the Colorado Class Representative's time.  Alorica specified the exact hourly rates that it agreed to pay the Colorado Class Representative for his time.  The Colorado Class members likewise entered into contracts with Alorica in this manner.

455.    Alorica breached that contract by failing to pay the Colorado Class Representative and the Colorado Class members for all hours they worked for Alorica.

456.     The Colorado Class Representative and the Colorado Class members suffered damages resulting from Alorica's breach of contract.  Such damages include lost wages, interest, and such relief as the Court deems just and proper.

457.     At all relevant times, Alorica had a policy and practice of failing and refusing to pay the Colorado Class Representative and the Colorado Class members for all hours worked, by requiring, suffering, or permitting them to work off the clock.

458.     As a result of Alorica's failure to pay wages earned and due, and its decision to withhold wages earned and due, to the Colorado Class Representative and the Colorado Class members at their agreed-upon hourly rate and, for work performed in excess of forty hours in a workweek, at a rate not less than one and one-half times the regular rate of pay, Alorica has breached – and continues to breach – its contracts with the Colorado Class Representative and the Colorado Class members.

459.     The Colorado Class Representative, on behalf of himself and the Colorado Class members, seeks damages in the amount of the respective unpaid wages earned and due at a rate of their agreed-upon hourly rate for non-overtime hours and at a rate of one and one-half times the regular rate of pay for work performed in excess of forty hours in a workweek, interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

### THIRTY-EIGHTH CLAIM FOR RELIEF
#### (Colorado Quantum Meruit/Unjust Enrichment Brought by the Colorado Class Representative, on Behalf of Himself and the Colorado Class)

460.     The Colorado Class Representative, on behalf of himself and all members of the Colorado Class, realleges and incorporates by reference the preceding paragraphs as if they were set forth again herein.

461.    At all relevant times, Alorica agreed to (and was required to) compensate its CSRs for all of the hours they worked, including at one-and-a-half times their regular rates of pay for hours worked in excess of forty (40) hours per workweek.

462.    Alorica requested and/or knowingly accepted valuable services and labor from the Colorado Class Representative and the Colorado Class members, which benefitted Alorica, and for which a reasonable person would have expected to pay.  The Colorado Class Representative and the Colorado Class members provided their services and labor with the reasonable expectation of receiving compensation from Alorica.

463.    Alorica, however, has failed to properly compensate the Colorado Class Representative and the Colorado Class members for all of the valuable services and labor they performed for Alorica's benefit, including for hours worked in excess of forty (40) hours per workweek.

464.    Alorica has been unjustly enriched at the expense of the Colorado Class Representative and the Colorado Class members.

465.    It would be unjust for Alorica to retain the benefit of the Colorado Class Representative's and the Colorado Class members' efforts without compensation therefore.

466.    Alorica is liable to the Colorado Class Representative and the Colorado Class members for damages caused by its failure to compensate them for all hours that they worked for Alorica's benefit.

## **PRAYER FOR RELIEF**

WHEREFORE, the FLSA Mid-Shift Collective Representatives, on behalf of themselves and all members of the FLSA Mid-Shift Collective, pray for relief as follows:

A.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

B.      An injunction against Alorica and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C.      An award of damages, according to proof, including liquidated damages, to be paid by Alorica;

D.      Costs of action incurred herein, including expert fees;

E.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

F.      Post-judgment interest, as provided by law; and

G.      Such other legal equitable relief as this Court deems necessary, just, and proper.

WHEREFORE, the FLSA Pre-/Post-Shift Collective Representatives, on behalf of themselves and all members of the FLSA Pre-/Post-Shift Collective, pray for relief as follows:

A.      Designation of this action as a collective action on behalf of the FLSA Pre-/Post-Shift Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Pre-/Post-Shift Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of the FLSA Pre-/Post-Shift Collective Representatives as Representatives of the FLSA Pre-/Post-Shift Collective;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

      D.      An injunction against Alorica and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

      E.      An award of damages, according to proof, including liquidated damages, to be paid by Alorica;

      F.      Costs of action incurred herein, including expert fees;

      G.      Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

      H.      Post-judgment interest, as provided by law; and

      I.      Such other legal equitable relief as this Court deems necessary, just, and proper.

WHEREFORE, the FLSA Overtime Miscalculation Collective Representatives, on behalf of themselves and all members of the FLSA Overtime Miscalculation Collective, pray for relief as follows:

      A.      Designation of this action as a collective action on behalf of the FLSA Overtime Miscalculation Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA Overtime Miscalculation Collective, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b);

      B.      Designation of the FLSA Overtime Miscalculation Collective Representatives as Representatives of the FLSA Overtime Miscalculation Collective;

      C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA;

      D.      An injunction against Alorica and its officers, agents, successors, employees, representatives, and any and all persons acting in concert

with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

      E.    An award of damages, according to proof, including liquidated damages, to be paid by Alorica;

      F.    Costs of action incurred herein, including expert fees;

      G.    Attorneys' fees, including fees pursuant to 29 U.S.C. § 216;

      H.    Post-judgment interest, as provided by law; and

      I.    Such other legal equitable relief as this Court deems necessary, just, and proper.

      WHEREFORE, the each of the State Law Class Representatives, on behalf of him- or herself and all State Law Class members, prays for relief as follows:

      A.    Certification of each State Law claim as a class claim on behalf of the respective State Law Class;

      B.    Designation of him- or herself as Representative of his or her respective State Law Class;

      C.    Designation of Plaintiffs' counsel of record as Class Counsel for his or her respective State Law Class;

      D.    A declaratory judgment that the practices complained of herein are unlawful under his or her respective State law;

      E.    An injunction against Alorica and its officers, agents, successors, employees, representatives, and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

      F.    Appropriate statutory penalties;

      G.    An award of damages, liquidated damages, and restitution to be paid by Alorica according to proof;

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

H.     Pre-judgment and post-judgment interest, as provided by law;

I.     Such other injunctive and equitable relief as the Court may deem just and proper;

J.     Attorneys' fees and costs of suit, including expert fees and costs; and

K.     An appropriate service payment based on his or her service to his or her respective State Class.

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial on all causes of action and claims with respect to which they have a right to jury trial.

Dated:  July 1, 2015                    Respectfully submitted,

                                        By:  */s/ Jahan C. Sagafi*
                                              Jahan C. Sagafi

                                        **OUTTEN & GOLDEN LLP**
                                        Jahan C. Sagafi (Cal. Bar No. 227887)
                                        jsagafi@outtengolden.com
                                        Katrina L. Eiland (Cal. Bar No. 275701)
                                        keiland@outtengolden.com
                                        One Embarcadero Center, 38th Floor
                                        San Francisco, CA 94111
                                        Telephone: (415) 638-8800
                                        Facsimile (415) 638-8810

                                        **BARON & BUDD P.C.**
                                        Allen Vaught (admitted *pro hac vice*)
                                        avaught@baronbudd.com
                                        3201 Oak Lawn Ave, Suite 1100
                                        Dallas, TX 75219
                                        Telephone: (214) 521-3605
                                        Facsimile: (214) 520-1181

                                        **HUNT, HASSLER & LORENZ LLP**
                                        Robert P. Kondras, Jr. (admitted *pro hac vice*)
                                        kondras@huntlawfirm.net
                                        100 Cherry Street
                                        Terre Haute, Indiana 47807
                                        Telephone: (812) 232-9691
                                        Facsimile: (812) 234-2881

                                        *Counsel for Plaintiffs, the Certified FLSA*
                                        *Collective, and all Proposed Class Members*