Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Katrina L. Eiland (Cal. Bar No. 275701)
keiland@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Allen R. Vaught (admitted *pro hac vice*)
avaught@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Telephone:  (214) 521-3605
Facsimile:  (214) 520-1181

*Additional counsel on signature page*

*Counsel for Plaintiffs and Settlement Class Members*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| MELISSA LILLEHAGEN, *et al.*, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALORICA, INC.,<br><br>Defendant. | Case No. 8:13-cv-00092-DOC(JPRx)<br><br>**NOTICE OF MOTION;**<br><br>**UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT;**<br><br>**MEMORANDUM IN SUPPORT OF MOTION**<br><br>District Judge:      Hon. David O. Carter<br>Magistrate Judge:    Hon. Jean Rosenbluth<br>Hearing Date: October 17, 2016<br>Hearing Time:  8:30 a.m.<br>Courtroom: 9D |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 17, 2016, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of this Court, located at 411 West Fourth Street, Santa Ana, California, Plaintiffs Melissa Lillehagen, Sharon Shaw, Janna Carlile, Shanai Whitmore, Ignacio Pizana, Brenda Luper, Barbara Beckerley, Michael Irvin, Dianne Maddox, Raymorn Edden, Cassandra Allen, Dawn Fulmore, Vanessa Gomez, Ancelle Parker, Janelle Ayers, Cynthia Fuerte, Chelsea Ramirez, and Timothy King ("Plaintiffs"), on behalf of themselves and all those similarly situated ("Class Members"), will, and hereby do, move this Court to grant, pursuant to Federal Rule of Civil Procedure 23, final approval of the Class Action Settlement Agreement (the "Settlement") (Dkt. 246-1), and entry of judgment in accordance with the Settlement; and (2) to grant, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3), and section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), final class certification and collective action designation of the settlement Class certified in the Preliminary Approval Order.

Plaintiffs make this motion on the grounds that the Settlement was reached after arms-length negotiations by counsel for Plaintiffs and the Class and counsel for Defendant (the "Parties"), is fair and reasonable, has drawn a favorable response from the Class, and should be given final approval by the Court for all the reasons set forth in the following memorandum in support of the motion.

The motion is supported by this Notice; Plaintiffs' Memorandum in Support of the Motion; the Notice of Motion and Unopposed Motion for Class Certification and Preliminary Approval of Settlement, and Memorandum in Support (Dkt. 245), and supporting papers; Plaintiffs' Motion for Attorneys'

1   Fees, Costs, and Class Representative Service Awards and supporting papers,
2   filed contemporaneously; the Preliminary Approval Order (Dkt. 262); the
3   Court's record in this action; all matters of which the Court may take notice;
4   and any oral and documentary evidence presented at the hearing on the
5   motion.[1]

6   Dated: August 29, 2016                   Respectfully submitted,
7

8                                               /s/ *Jahan C. Sagafi*
                                             Jahan C. Sagafi
9
                                             **OUTTEN & GOLDEN LLP**
10                                           Jahan C. Sagafi (Cal. Bar No. 224887)
                                             jsagafi@outtengolden.com
11                                           Katrina L. Eiland (Cal. Bar No. 275701)
                                             keiland@outtengolden.com
12                                           One Embarcadero Center, 38th Floor
                                             San Francisco, CA 94111
13                                           Telephone:  (415) 638-8800
                                             Facsimile:  (415) 638-8810
14
15
                                             **BARON & BUDD, P.C.**
16                                           Allen R. Vaught (admitted *pro hac vice*)
                                             avaught@baronbudd.com
17                                           3102 Oak Lawn Ave, Suite 1100
                                             Dallas, TX 75219
18                                           Telephone:  (214) 521-3605
                                             Facsimile:  (214) 520-1181
19
20
                                             **HUNT, HASSLER & LORENZ LLP**
21                                           Robert P. Kondras, Jr. (admitted *pro hac vice*)
                                             kondras@huntlawfirm.net
22                                           100 Cherry Street
                                             Terre Haute, Indiana 47807
23                                           Telephone: (812) 232-9691
                                             Facsimile: (812) 234-2881
24
25                                           *Attorneys for Plaintiffs and Settlement Class*
                                             *Members*
26   _____
27   [1]       Plaintiffs will submit the declaration of a representative of Garden City
     Group, LLC (the "Settlement Administrator") and additional declarations from
28   Class Counsel in connection with their reply brief.

Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Katrina L. Eiland (Cal. Bar No. 275701)
keiland@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Allen R. Vaught (admitted *pro hac vice*)
avaught@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Telephone:  (214) 521-3605
Facsimile:  (214) 520-1181

*Additional counsel on signature page*

*Counsel for Plaintiffs and Settlement Class Members*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

|  |  |
|---|---|
| MELISSA LILLEHAGEN, *et al.*, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>ALORICA, INC.,<br><br>    Defendant. | Case No. 8:13-cv-00092-DOC(JPRx)<br><br>**MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>District Judge:    Hon. David O. Carter<br>Magistrate Judge:  Hon. Jean Rosenbluth<br>Hearing Date:    October 17, 2016<br>Hearing Time:    8:30 a.m.<br>Courtroom:      9D |

# TABLE OF CONTENTS

PAGE

I.      INTRODUCTION ...................................................................................... 1

II.     BACKGROUND ........................................................................................ 2

    A.   The Litigation ...................................................................................... 2

    B.   Preliminary Approval of the Settlement ............................................. 3

    C.   The Settlement Class .......................................................................... 3

    D.   The Settlement .................................................................................... 4

    E.   Notice Process .................................................................................... 5

        1.   The Settlement's Class Notice Requirements Were Satisfied..... 5

III.    ARGUMENT ............................................................................................ 6

    A.   The Best Practicable Notice of Settlement Has Been Provided to the Class. ................................................................................................. 6

    B.   Final Approval Is Appropriate Under Rule 23 If It Is Fair, Adequate, and Reasonable, and Under the FLSA If It Is Fair. .............................. 7

    C.   The Settlement Is Presumptively Fair Because of the Relatively Few Objections to the Settlement by Class Members to Date, the Significant Discovery Conducted, Class Counsel's Experience, and the Arms-Length Negotiations .................................................................. 8

        1.   To Date, the Settlement Administrator and Class Counsel Have Received Only Two Objections from Class Members, Neither of Which Address the Fairness or Adequacy of the Settlement. ..... 9

        2.   The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues. ................................................................... 11

        3.   The Recommendations of Experienced Counsel Favor Approval of the Settlement. .................................................................... 12

        4.   The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator ................................................. 13

    D.   The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation .......................... 14

        1.   The Value of the Settlement Favors Final Approval. ................ 14

# TABLE OF CONTENTS

**(continued)**

PAGE

      2.     Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members....................................................... 15

E.    The Court Should Grant Final Class Certification and Collective Action Designation. ............................................................... 16

IV.      **CONCLUSION**........................................................................ **16**

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Beckerley v. Alorica, Inc.*,
    No. 13-cv-00092-DOC .................................................................. 2

*Boyd v. Bechtel Corp.*,
    485 F. Supp. 610 (N.D. Cal. 1979)........................................... 8, 12

*Chun-Hoon v. McKee Foods Corp.*,
    716 F. Supp. 2d 848 (N.D. Cal. 2010)............................................ 10

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) ........................................................ 14

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ............................................. 2, 7, 8

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156 (1974) ...................................................................... 6

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. 1980) ................................................. 8, 12

*Greko v. Diesel U.S.A., Inc.*,
    2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) ............................... 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ............................................. 7,12, 14

*Hughes v. Microsoft Corp.*,
    No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976 (W.D. Wash. Mar.
    26, 2001) ....................................................................................... 13

*Lillehagen v. Alorica, Inc.*,
    No. 13-0092 DOC (C.D. Cal.) ............................................... 2, 3, 4

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ..................................................... 14

*Lynn's Food Stores, Inc. v. U.S.*,
    679 F.2d 1350 (11th Cir. 1982) ...................................................... 7

1

2

## TABLE OF AUTHORITIES
### (continued)

CASES                                                                         PAGE(S)

3

4

*M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.,*
    671 F. Supp. 819 (D. Mass. 1987)..................................................................8

5

6

*Mandujano v. Basic Vegetable Prods. Inc.,*
    541 F.2d 832 (9th Cir. 1976) .....................................................................10

7

8

*In re Mego Fin. Corp. Sec. Litig.,*
    213 F.3d 454 (8th Cir. 2000) .....................................................................12

9

*Mora v. Harley-Davidson Credit Corp.,*
    2014 WL 29743 (E.D. Cal. Jan. 3, 2014)...............................................15

10

11

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950) .....................................................................................6

12

13

*Nat'l Rural Telecomms. Coop v. DIRECTV, Inc.,*
    221 F.R.D. 523 (C.D. Cal. 2004) ............................................................10

14

15

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F.2d 615 (9th Cir. 1982) ...............................................................7, 14

16

17

*Ortiz v. Fibreboard Corp.,*
    527 U.S. 815 (1999) .....................................................................................8

18

19

*In re Pacific Enters.,*
    *Sec. Litig.,* 47 F.3d 373, 378 (9th Cir. 1995).......................................12

20

*Phillips Petrol. Co. v. Shutts,*
    472 U.S. 797 (1985) .....................................................................................6

21

22

*Rodriguez v. West Publishing Corp.,*
    563 F.3d 948 (9th Cir. 2009) .....................................................................12

23

24

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003) .................................................................2, 7

25

26

*Thieriot v. Celtic Ins. Co.,*
    2011 WL 1522385 (N.D. Cal. April 21, 2011) ....................................15

27

28

*Tijero v. Aaron Bros., Inc.,*
    2013 WL 6700102 (N.D. Cal. Dec. 19, 2013) .....................................13

## TABLE OF AUTHORITIES
### (continued)

CASES                                                                                           PAGE(S)

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................................. 8

**Statutes**

Fair Labor Standards Act ................................................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 23(e)........................................................................ 7

Federal Rules of Civil Procedure Rule 23(a) and (b)(3) ......................................... 16

*Manual for Complex Litigation (Third)* § 30.42 (1995)........................................ 13

*Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004), §
    21.6 ....................................................................................................................... 7

1

2 <u>**MEMORANDUM IN SUPPORT OF MOTION**</u>

3 **I.**     <u>**INTRODUCTION**</u>

4       Plaintiffs request that this Court grant final approval of the Settlement.

5 Defendant Alorica, Inc. ("Alorica" or "Defendant") does not oppose it.  This

6 Settlement resolves litigation over Plaintiffs' and Class Members' claims that

7 Alorica violated the Fair Labor Standards Act ("FLSA") and wage and hour laws of

8 various states by failing to pay Plaintiffs and the Class Members for pre- and post-

9 shift work performed off the clock; failing to pay them during the workday for

10 periods of less than 20 minutes during which they were logged out of the

11 timekeeping system (mid-shift breaks); underpaying overtime by failing to take into

12 account nondiscretionary bonuses, such as earned commissions, when calculating

13 their overtime rates; and failing to provide the California Class Members with

14 statutorily mandated meal and rest breaks. *See* Plaintiffs' Consol. Second Am.

15 Compl. for Violations of FLSA and State Laws (Dkt No. 229).  The Settlement is

16 the product of arms-length negotiations by experienced counsel, after significant

17 investigation, and recognition of the strengths and weaknesses of each side's

18 positions.

19       The Settlement, in the amount of $9,250,000, readily satisfies the Rule 23

20 standard of being "fair, reasonable, and adequate."  The Class has responded

21 overwhelmingly favorably to the settlement.  *See* Declaration of Jahan C. Sagafi in

22 Support of Pls.' Motions for Final Approval and for Attorneys' Fees, Costs, and

23 Class Representative Service Awards ("Sagafi Decl.") ¶ 27.  Only two objections

24 and nine opt-out requests have been received to date out of the approximately

25 156,000 Class Members who received notice of the Settlement.[2]  *Id.*  Furthermore,

26 _____

27 [2]      Plaintiffs will provide final data regarding opt-out requests and objections at the end of the notice period through the declaration of the Settlement Administrator,

28 which will be submitted in connection with Plaintiffs' reply brief.

Class Counsel (who are among the most highly experienced attorneys in the country handling complex wage and hour class and collective actions) have conducted sufficient discovery to enable them to adequately evaluate the claims and defenses in the action. *Id*. ¶ 19; (*see also* Dkt. 245 at 13-14, 23-24).

Lastly, the Settlement is in line with the strength and recoverability of Plaintiffs' claims given the risk, expense, complexity, and likely duration of further litigation. *See Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

In connection with requesting final settlement approval, Plaintiffs also request that the Court confirm as final: (1) the certification of the Class certified in its Preliminary Approval Order; (2) the designation of the case as a collective action under the FLSA as preliminarily designated in that Order; and (3) the appointment of Plaintiffs as the Class Representatives and of Plaintiffs' counsel as Class counsel as initially provided in that Order ("Class Counsel").

## II.   BACKGROUND

### A.   The Litigation

This action is the consolidated result of two lawsuits.  First, on January 18, 2013, Plaintiffs filed *Lillehagen v. Alorica, Inc*., No. 13-0092 DOC (JPRx) (C.D. Cal.), on behalf of a proposed nationwide class of CSRs who asserted FLSA claims for Alorica's failure to pay them during mid-shift breaks.  The Court conditionally certified the case as a collective action on October 24, 2013.  (Dkt. 67).  Second, on May 30, 2014, Plaintiffs filed *Beckerley v. Alorica, Inc*., No. 13-cv-00092-DOC (JPRx), amending the complaint on July 29, 2014, on behalf of a proposed nationwide class of CSRs who asserted (a) state law claims for Alorica's failure to pay them during mid-shift breaks and pre- and post-shift off-the-clock work, provide meal and rest breaks, and properly calculate overtime pay, (b) FLSA claims

for pre- and post-shift off-the-clock work, and (c) FLSA claims for Alorica's failure to properly calculate overtime pay.  On January 21, 2015, the Court directed the parties to consolidate the two cases under the earlier-filed case number and name and to file a consolidated complaint.  (*See* Dkt. 221).

Throughout the litigation, Alorica disputed (and continues to dispute) Plaintiffs' allegations, contending instead that collective action certification was inappropriate and denying any liability for any of the claims that Plaintiffs or the Class Members have raised or could have raised.  (Dkt. 231, Def.'s Answer to Pl.' Consol. Second Am. Compl.).  The litigation was contested throughout; the Parties litigated many pretrial motions, including motions to certify and decertify the FLSA collective action in *Lillehagen*, Alorica's motion for interlocutory appeal of the Court's order granting FLSA conditional certification, Plaintiffs' motion to compel discovery from Alorica, Alorica's motion to compel arbitration, and cross motions for summary judgment.  (*See* Dkt. 245 at 13-14).

### B.    <u>Preliminary Approval of the Settlement</u>

On May 31, 2016, this Court granted preliminary approval of the Settlement, certified the Class, ordered that the Class be sent notice of the Settlement, and set a schedule for final approval.  (*See* Dkt. 262).  The Court determined that the Settlement "falls within the range of possible approval as fair, adequate, and reasonable," is "the result of arms-length negotiations between the parties," "is non-collusive," and was reached only "after Class Counsel had adequately investigated Plaintiffs' claims and become familiar with their strengths and weaknesses.  (*Id.* at 3-4).

### C.    <u>The Settlement Class</u>

As part of the Settlement, Alorica agreed to certification of the following state law settlement classes under Federal Rule of Civil Procedure 23, consisting of all current and former Alorica employees who are or were employed in the Covered

Positions during the applicable Covered Period under the laws of California, Colorado, Florida, Georgia, Iowa, Kansas, North Carolina, Oklahoma, Pennsylvania, Texas, and Virginia.  (*See* Dkt. 246-1 at 5-7).

The term "Covered Position," sometimes used interchangeably herein with "CSR," means the nonexempt hourly customer service representatives with any of the job titles set out in the Settlement Agreement.  (Dkt. 246-1 at 7-8).  The term "Covered Period" means the applicable period specified for each state-law class, beginning as early as May 30, 2008, and continuing through the date of preliminary approval of the settlement, May 31, 2016.  (*Id*. at 5-7).

### D.   **The Settlement**

The Settlement creates a non-reversionary common fund of $9,250,000. (Dkt. 246-1 at 12).  After deducting the Class Representative Service Awards, Class Counsel's Attorneys' Fees and Costs Payment, and the costs of claims administration, the remainder of the Settlement will be distributed to the Class Members who have not opted-out of the Settlement.  Unclaimed funds will be either be reallocated to the Class Members who did cash the issued checks, or allocated equally to these *cy pres* beneficiaries: (1) Legal Aid Society – Employment Law Center and (2) Public Justice.  (*See* Dkt. 246-1 at 22).

In exchange, participating Class Members will release Alorica from claims arising under state statutory law or common law and under the FLSA described in the Settlement Agreement.  (*Id*. at 21). The scope of these releases was fully described in the Court-approved Notice.  (*See* Dkt. 246-2 at 6-8).

E.     **Notice Process**

1.     **The Settlement's Class Notice Requirements Were Satisfied.**

The procedures for giving notice to the Class Members, as set forth in the Settlement and ordered in the Preliminary Approval Order, have been properly followed.   Sagafi Decl. ¶ 37; (*See* Dkt. 262, §V.A.-B.; Dkt. 246-1, §VI.D.).   The Court directed that the proposed Class Notice and exclusion forms be sent to Class Members, in the manner specified by the Settlement.  (Dkt. 262, §V.A.-B.).

The Parties implemented the instructions of the Preliminary Approval Order in this regard. On or about June 20, 2016, Alorica provided the settlement administrator, Garden City Group, LLC ("Settlement Administrator" or "GCG"), with a list of each Class Member's last known contact information and information adequate to calculate Class Members' award allocations, including the number of weeks during which the Class Member worked in a Covered Position for Alorica and the location where the Class Member worked.  Sagafi Decl. ¶ 36.  On July 12, 2016, GCG sent the Class Notice and exclusion forms to each of the approximately 156,000 Class Members.  *Id.*

The Notice and the exclusion forms contained detailed information about the lawsuit, including the total amount of the settlement, the method by which the settlement funds would be allocated among the Class Members, and procedures for opting-out of or objecting to the settlement.  (*See* Dkt. 246, Exh. B, Class Notice). The Notice also provided contact information for Class Counsel and the Settlement Administrator.  *Id.*

The Settlement Administrator followed accepted best practices to ensure that the Notice reached as many Class Members as feasible.  Sagafi Decl. ¶ 37.  GCG disseminated the Court-approved Notice to all Class Members by first class mail, using the National Change of Address ("NCOA") database to verify the accuracy of

all addresses prior to sending the Notices.  *Id.*  GCG also ran traces on the addresses of any returned Notices to again search for an updated address.  *Id.*  The Settlement Administrator also maintained a toll-free telephone number and a website to provide Class Members with additional information.  *Id.*

III.   **ARGUMENT**

A.   **The Best Practicable Notice of Settlement Has Been Provided to the Class.**

The mailing of the Class Notice and exclusion forms to Class Members, and the general administration of the notice process as described above, meets the requirements for the "best practicable" notice in this case as necessary to protect the due process rights of Class Members.  (*See* Dkt. 262 at 5, Preliminary Approval Order §V.A.) ("The Class Notice is the best notice practicable under the circumstances and allows Class Members a full and fair opportunity to consider the Settlement."); *see also Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 811-12 (1985) (provision of "best practicable" notice with description of the litigation and explanation of opt-out rights satisfies due process); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974) (individual notice must be sent to class members who can be identified through reasonable means); *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested Parties of the pendency of the action and afford them an opportunity to present their objections").  Therefore, the Court may proceed to determine the fairness and adequacy of the Settlement, and order its approval, secure in the knowledge that all absent Class Members have been given the opportunity to participate fully in the opt-out, comment, and approval process.

**B.**     **Final Approval Is Appropriate Under Rule 23 If It Is Fair, Adequate, and Reasonable, and Under the FLSA If It Is Fair.**

"[V]oluntary conciliation and settlement are the preferred means of dispute resolution," especially in complex class actions. *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Class action lawsuits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. *Class Plaintiffs*, 955 F.2d at 1276 (noting that "strong judicial policy [. . .] favors settlements, particularly where complex class action litigation is concerned"). On a motion for final approval of a class action settlement under Federal Rule of Civil Procedure 23(e), a court's inquiry is whether the settlement is "fair, adequate and reasonable," recognizing that "'it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton,* 327 F.3d at 952 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

Similarly, under the FLSA, a settlement that results in waiver of FLSA claims should be approved where it is "entered as part of a stipulated judgment approved by the court after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-53 (11th Cir. 1982). A settlement is fair, adequate and reasonable, and therefore merits final approval, when "the interests of the class are better served by the settlement than by further litigation." *Manual for Complex Litigation, Fourth* (Fed. Judicial Center 2004) ("*Manual*"), § 21.6 at 309.

When determining whether to grant final approval, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the Parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating Parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. The court should balance "the strength of plaintiffs' case; the risk, expense,

complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the state of the proceedings; the experience and views of counsel [. . .] and the reaction of the class to the proposed settlement." *Class Plaintiffs*, 955 F.2d at 1291; *accord Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993). "The recommendations of Plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight.").

### C. The Settlement Is Presumptively Fair Because of the Relatively Few Objections to the Settlement by Class Members to Date, the Significant Discovery Conducted, Class Counsel's Experience, and the Arms-Length Negotiations.

The Court should begin its analysis with a presumption that the Settlement is fair and should be approved, due to (1) the relatively few objections to the Settlement by the Class Members, (2) the meaningful discovery conducted, (3) Class Counsel's significant experience in this kind of litigation, and (4) the arms-length negotiations before an experienced mediator. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 852 (1999) (holding that arms-length negotiations conducted by competent counsel after appropriate discovery are *prima-facie* evidence that the settlement is fair and reasonable); *M. Berenson Co., Inc. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("Where, as here, a proposed class settlement has been reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel, it is presumptively fair."). These factors are well satisfied here.

First, with the deadline for objections only two weeks away, the Settlement Administrator has received only two objections to the Settlement. Sagafi Decl. ¶

27.  As discussed below, those objections do not go to the fairness or adequacy of the settlement.  Rather, one of the objections was submitted anonymously and contains complaints that are either non-actionable or are not released in the lawsuit, and the other was based on the objector's belief that he was paid properly.  (*See* § III.C.1., *infra*).  Second, as discussed in more detail below, the Parties engaged in a significant exchange of relevant information and data in advance of the Parties' mediation.  Sagafi Decl. ¶ 19.  As a result of these efforts, Class Counsel had sufficient information to evaluate the strengths and weaknesses of the Class claims and defenses, whether to pursue litigation or settle, and the appropriate settlement value for the claims at issue.  *Id*. ¶ 28.  Third, Class Counsel are highly experienced in wage and hour class action litigation.  *Id*. ¶¶ 5-16.  Fourth, the Settlement was reached only after arms-length, good-faith negotiations under the supervision of an experienced mediator, Judge Edward A. Infante (Ret.).  *Id*. ¶ 26.  The case has been zealously litigated by both sides.  There are no indicia of collusion.

For all these reasons, a presumption is appropriate that the class relief in the Settlement is fair.

### 1.     To Date, the Settlement Administrator and Class Counsel Have Received Only Two Objections from Class Members, Neither of Which Address the Fairness or Adequacy of the Settlement.

To date, with only two weeks left before the objection deadline, only two Class Members have objected to any aspect of the settlement.  Sagafi Decl. ¶ 27. One objection was submitted anonymously.  That letter states that the settlement "is an insult to our dignity, integrity and intelligence," and requests that the Court "do not approve, reject and denied [sic] the Alorica agreement to pay $9,250.000 [sic] class member's claims at the Fairness hearing."  *Id*., Ex. D.  The letter argues: "Instead we hereby request the Court to pursuit [sic] a $100,250.000 [sic] settlement at the Fairness Hearing."  *Id.*  The letter lists 19 "fundamental grievances

affecting Alorica Cutler Bay FL employees and of course all Alorica employees nationwide," including four legal claims ("Perpetual efforts to block access to hard earned commissions," "Unpaid commissions," "Discrimination," and "Harassment") and 15 additional items (e.g., "Organized structural violence," "Cheating," "Humiliation," "Bait and switch," "Salaries in the line of poverty," etc.). *Id.* The authors expressed a desire to remain anonymous ("We speak only on the condition of anonymity because of the sensitive nature of our grievances in Alorica."), and the letter was unsigned and concludes with several pages of addresses that appear to be Alorica locations. *Id.* Because this objection does not argue that the settlement fails to satisfy the requirement that it be fair, reasonable, and adequate due to a particularized analysis of the claims being released here, and because it describes claims not being released (e.g., discrimination and harassment) and unfairness that may not be actionable (e.g., humiliation and bait and switch), it does not provide a basis for rejection of the settlement or the fee and cost request. The second objection likewise does not argue that the settlement fails to satisfy the requirement that it be fair, reasonable, and adequate. *Id*., Ex. C. Rather, it simply states that the objector believes that he was properly paid. *Id.* This small number of objections indicates a favorable class reaction, especially out of a class of more than 150,000 Class Members. *See Nat'l Rural Telecomms. Coop v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (holding that "in the absence of a large number of objections to a proposed class action settlement, settlement actions are favorable to the class members."); *see also Mandujano v. Basic Vegetable Prods. Inc*., 541 F.2d 832, 837 (9th Cir. 1976).

Moreover, with only two weeks left before the exclusion deadline, only nine Class Members have opted out of the Settlement. Sagafi Decl. ¶ 27. This overwhelmingly positive reaction of the class strongly supports final approval of the settlement. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 850

(N.D. Cal. 2010) (granting final approval where 16 of 329 class members opted out, explaining that where exclusions and opt-outs are low, there is a presumption of a favorable class reaction).

### 2. The Parties Engaged in Substantial Investigation and Analysis of the Legal Issues.

Class Counsel have engaged in extensive investigation of the claims in this case and the Parties engaged in significant discovery.  Sagafi Decl. ¶¶ 18-19.  Class Counsel reviewed tens of thousands of pages of documents produced by Alorica; interviewed and secured declarations of 48 class members throughout the United States regarding their job duties, hours worked, and other relevant information; and analyzed detailed, individualized class member payroll and time record data amounting to many hundreds of millions of data points.  *Id.*; *see also* (Dkt. 245 at 13).  In addition to extensive written discovery and the exchange of hundreds of thousands of pages of documents, Class Counsel defended depositions of 13 named Plaintiffs and Opt-Ins.  Sagafi Decl. ¶ 19.  Class Counsel also took Rule 30(b)(6) depositions of seven Alorica corporate representatives.  *Id.* The Parties also litigated many pre-trial motions, including motions to certify and decertify the FLSA collective action, Alorica's motion for interlocutory appeal of the Court's order granting FLSA conditional certification, Plaintiffs' motion to compel discovery from Alorica, Alorica's motion to compel arbitration, and cross-motions for summary judgment.  *Id.* ¶ 25.  In connection with the Court's grant of FLSA conditional certification for the mid-shift claims, Class Counsel processed and filed over 8,800 consents to join the collective action, in addition to performing necessary communications and other work relative to those Opt-Ins.  *Id.*

Class Counsel hired employment data specialists to convert, analyze, and audit pay data; and they hired an expert economist and statistician to further analyze time and pay data.  *Id.* ¶ 21.  The costs for those experts to evaluate the millions of

1   time and pay entries for the Class Members, which were paid by Class Counsel at
2   their own risk, were approximately $53,000.  *Id.*

3       In summary, the Parties engaged in substantial investigation and analysis of
4   the legal issues in reaching a Settlement in this case.  *Cf. In re Mego Fin. Corp. Sec.*
5   *Litig.*, 213 F.3d 454, 459 (8th Cir. 2000) (emphasizing that the touch stone of the
6   analysis is whether "the parties have sufficient information to make an informed
7   decision about settlement," including formal and informal discovery).

8           **3.      The Recommendations of Experienced Counsel Favor**
9                        **Approval of the Settlement.**

10      The judgment of experienced counsel regarding the settlement is entitled to
11  great weight.   *Hanlon*, 150 F.3d at 1026; *Boyd*, 485 F. Supp. at 622; *Ellis*, 87
12  F.R.D. at 18. Reliance on such recommendations is premised on the fact that
13  "parties represented by competent counsel are better positioned than courts to
14  produce a settlement that fairly reflects each party's expected outcome in
15  litigation." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)
16  (*quoting In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)).

17      Here, Class Counsel endorse the Settlement as fair, adequate, and reasonable.
18  Class Counsel have extensive experience in prosecuting and litigating class action
19  wage and hour suits like this one.   Vaught Preliminary Approval Decl. ¶¶ 14-22;
20  Sagafi Decl. ¶¶ 5-16.  Class Counsel have conducted extensive investigation of this
21  case reviewing tens of thousands of pages of documents produced by Alorica;
22  interviewing and securing declarations of 48 class members throughout the United
23  States regarding their job duties, hours worked, and other relevant information;
24  analyzing detailed, individualized class member payroll and time record data
25  amounting to many hundreds of millions of data points; and, in consultation with an
26  expert economist, performing complex damages analyses and compiling supporting
27  evidence. Sagafi Decl. ¶¶ 18-21.  The fact that qualified and well-informed counsel

28

endorse the Settlement as being fair, reasonable, and adequate heavily favors this Court's approval of the Settlement.

### 4.  The Parties Participated in Arms-Length Negotiations Before an Experienced Neutral Mediator.

As set forth above, a settlement is presumed fair if it was negotiated at arm's length by experienced, competent counsel equipped with enough information to act intelligently.  *See Tijero v. Aaron Bros., Inc*., 2013 WL 6700102, at *7 (N.D. Cal. Dec. 19, 2013) (where settlement reached after parties participated in private mediation, settlement was appropriate for final approval); *Hughes v. Microsoft Corp.*, No. 98 Civ. 1646, 2001 U.S. Dist. LEXIS 5976, at *20 (W.D. Wash. Mar. 26, 2001) ("A presumption of correctness is said to attach to a class settlement reached in arms-length negotiations between experienced capable counsel after meaningful discovery.") (citing *Manual for Complex Litigation (Third)* § 30.42 (1995)).

The parties engaged in two separate mediation sessions.  Sagafi Decl. ¶ 26. After the first mediation held in 2013, the Parties engaged in significant discovery and filed cross motions for summary judgment.  *Id.* ¶ 19; *see also* (Dkts. 135 & 159).  Alorica also filed a motion for decertification.  (*See* Dkt. 138.)  Following the Court's ruling on the Parties' cross motions for summary judgment and Alorica's motion for decertification (Dkt. 217), and pursuant to the Court's direction to consolidate the matters (Dkt. 221), Class Counsel filed amended complaints consolidating all claims in both matters (Dkts. 223 & 229).  With a trial date set for the consolidated action, in June 2015, the Parties again engaged in mediation with experienced mediator, Judge Edward A. Infante (Ret.).   Sagafi Decl. ¶ 26.  Before that mediation, the Parties submitted extensive mediation briefing, including detailed data analyses and assessments, and substantial evidence.  *Id.* The Parties

did not reach a settlement at mediation, but extensive further discussions facilitated by the mediator resulted in the Settlement now before the Court. *Id.*

**D.     The Settlement Provides Substantial, Certain Benefits and Avoids the Risk, Cost, Delay, and Burden of Further Litigation**

**1.     The Value of the Settlement Favors Final Approval.**

The value of the Settlement – $9,250,000 – is an excellent result, and the Settlement compares favorably to other similar class-action settlements.   This is especially true in light of the defenses raised by Alorica regarding the propriety of class and collective certification and on the merits of Plaintiffs' claims.   Sagafi Decl. ¶ 24.  Plaintiffs faced the very real possibility that if they proceeded to trial, they might obtain little if any recovery for the Class.  *Id.*

This recovery is substantial, especially as its adequacy must be judged as "a yielding of absolutes and an abandoning of highest hopes [. . .] Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the Parties each give up something they might have won had they proceeded with litigation[.]" *Officers for Justice*, 688 F.2d at 624 (citation omitted). Accordingly, the Settlement is not to be judged against a speculative measure of what might have been achieved. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). In the end, "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.  In addition, the Court should consider that the Settlement provides for payment to the Class now, rather than a speculative payment many years down the road. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).   Therefore, the $9,250,000 settlement amount is well within the range of reasonableness.

2.      **Further Litigation Would Involve Risk, Expense, Delay, and Burden on Class Members.**

When a party continues to deny liability, there is an inherent risk in continuing litigation.  In *Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 at *5 (N.D. Cal. April 21, 2011), the district court approved a settlement agreement in which the defendant specifically denied liability, noting that such denial of liability illustrated the risk to continued litigation.  *See also Mora v. Harley-Davidson Credit Corp.*, 2014 WL 29743 at *4 (E.D. Cal. Jan. 3, 2014) (granting final approval to settlement agreement where defendant denied any liability); *Cf. Greko v. Diesel U.S.A., Inc.*, 2013 WL 1789602 at *4 (N.D. Cal. Apr. 26, 2013) ("[E]ven with a strong case, litigation entails expense.").

Similarly here, Alorica continues to contest liability and the propriety of collective and class certification.  As described above in Section III.C.4 Alorica has vigorously litigated this case, Alorica's absolute denial of liability, paired with its diligent efforts to prevent collective and class treatment, spotlight the risks of continued litigation and favor granting final approval to the proposed Settlement Sagafi Decl. ¶ 25.

Moreover, this nationwide class and collective action involves intricate legal and factual questions under federal and state law.  *Id.* ¶ 24.  Litigating these complex claims would require substantial and additional discovery and further pre-trial motions, as well as the consideration, preparation, and presentation of voluminous documentary and testimonial evidence.  *Id.*  Trial itself would require the use of expert witnesses at the damages phase, and would involve numerous complex legal and factual issues.  *Id.*  Once liability had been established on a class-wide basis, Class Members might be required to testify at individual damages mini-trials. *Id.*  As is typical with any case, but especially so with class actions, appeals would probably follow, with the result that payments to Class Members, if any, would likely occur only after several years of delay.  *Id.*  In contrast, the

Settlement will yield a prompt, certain, and substantial recovery for the Class Members.  Such a result benefits the Parties and the court system.

### E.   The Court Should Grant Final Class Certification and Collective Action Designation.

The Court previously certified Classes for Settlement purposes only pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and as a FLSA collective action.  (*See* Dkt. 262, p. 3-4).  The Court ruled that, for purposes of the settlement, the Classes meet the Rule 23 requirements as well as the FLSA collective action requirements.   (*Id.*).   The Court also appointed the named Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel.  (*Id.* at 4).  For these reasons, and the reasons set forth in Plaintiffs motion for preliminary approval, Class Counsel respectfully submit that the Court should grant final certification and collective action designation for purposes of settlement of this matter and should confirm the appointment of the class representatives and class counsel.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs by and through Class Counsel, respectfully request that the Court (1) grant final approval of the Settlement, and (2) grant final class certification and collective action designation of the Settlement.

Dated:  August 29, 2016

        _/s/ *Jahan C. Sagafi*_
        Jahan C. Sagafi
        jsagafi@outtengolden.com
        Katrina L. Eiland (Cal. Bar No. 275701)
        keiland@outtengolden.com
        OUTTEN & GOLDEN LLP
        One Embarcadero Center, 38th Floor
        San Francisco, CA 94111
        Telephone:  (415) 638-8800
        Facsimile:  (415) 638-8810

        Allen R. Vaught (admitted *pro hac vice*)
        avaught@baronbudd.com
        BARON & BUDD, P.C.
        3102 Oak Lawn Ave, Suite 1100
        Dallas, TX 75219
        Telephone:  (214) 521-3605
        Facsimile:  (214) 520-1181

        Robert P. Kondras, Jr. (admitted *pro hac vice*)
        kondras@huntlawfirm.net
        HUNT, HASSLER & LORENZ LLP
        100 Cherry Street
        Terre Haute, Indiana 47807
        Telephone: (812) 232-9691
        Facsimile: (812) 234-2881

        *Attorneys for Plaintiffs and Settlement Class
        Members*