Jahan C. Sagafi (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Katrina L. Eiland (Cal. Bar No. 275701)
keiland@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Allen R. Vaught (admitted *pro hac vice*)
avaught@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Telephone:  (214) 521-3605
Facsimile:  (214) 520-1181

*Additional counsel on signature page*

*Counsel for Plaintiffs and Settlement Class Members*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

|  |  |
|---|---|
| MELISSA LILLEHAGEN, *et al.*, on behalf of themselves and all those similarly situated,<br><br>       Plaintiffs,<br><br>       v.<br><br>ALORICA, INC.,<br><br>       Defendant. | Case No. 8:13-cv-00092-DOC(JPRx)<br><br>**PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>District Judge:     Hon. David O. Carter<br>Magistrate Judge:   Hon. Jean Rosenbluth<br><br>Hearing Date:   October 17, 2016<br>Hearing Time:   8:30 a.m.<br>Courtroom:      9D |

1
2

## NOTICE OF MOTION AND MOTION

3      PLEASE TAKE NOTICE that on October 17, 2016, at 8:30 a.m., or as

4   soon thereafter as the matter may be heard, in Courtroom 9D of this Court,

5   located at 411 West Fourth Street, Santa Ana, California, Plaintiffs Melissa

6   Lillehagen, Sharon Shaw, Janna Carlile, Shanai Witmore, Ignacio Pizana,

7   Brenda Luper, Barbara Beckerley, Michael Irvin, Dianne Maddox, Raymorn

8   Edden, Cassandra Allen, Dawn Fulmore, Vanessa Gomez, Ancelle Parker,

9   Janelle Ayers, Cynthia Fuerte, Chelsea Ramirez, and Timothy King

10  ("Plaintiffs"), on behalf of themselves and all those similarly situated ("Class

11  Members"), will, and hereby do, move this Court for an award of $3,083,333

12  in attorneys' fees, reimbursement of up to $390,000 in costs and expenses, and

13  Class Representative service awards of $10,000 each for Class Representatives

14  Beckerley, Lillehagen, and Carlile; $7,500 each for Class Representatives

15  Maddox and Edden; $5,000 each for Class Representatives Shaw, Whitmore,

16  Pizana, and Luper; and $2,500 each for Class Representatives Allen, Parker,

17  Fulmore, Gomez, Irvin, Ayers, Fuerte, Ramirez, and King.

18      As more fully discussed in the following memorandum in support of the

19  motion, this motion is made on the grounds that the requested fee is reasonable

20  under the common fund doctrine, as it represents one third of the settlement

21  fund and is consistent with the applicable Ninth Circuit authority and with fees

22  awarded in similar cases in this District.  In addition, the requested fee is

23  appropriate under the lodestar cross-check method.

24      The motion is based on this notice of motion and motion; the

25  memorandum in support of the unopposed motion for preliminary approval

26  and its supporting declarations (Dkts. 245-47); the Class Action Settlement

27  Agreement ("the Settlement") (Dkt. 246-1); the Declaration of Jahan C. Sagafi

28  in Support of Motions for Final Approval and for Attorneys' Fees,

1   Reimbursement of Costs and Expenses, and Award of Class Representative

2   Service Payments ("Sagafi Decl."); all matters of which the Court may take

3   notice; and any oral and documentary evidence presented at the hearing on the

4   motion.

5

6   Dated:  August 29, 2016          /s/ *Jahan C. Sagafi*
                                     Jahan C. Sagafi

7                                    **OUTTEN & GOLDEN LLP**

8                                    Jahan C. Sagafi (Cal. Bar No. 224887)
                                     jsagafi@outtengolden.com

9                                    Katrina L. Eiland (Cal. Bar No. 275701)

10                                   keiland@outtengolden.com
                                     One Embarcadero Center, 38th Floor

11                                   San Francisco, CA 94111
                                     Telephone:  (415) 638-8800

12                                   Facsimile:  (415) 638-8810

13

14                                   **BARON & BUDD, P.C.**

15                                   Allen R. Vaught (admitted *pro hac vice*)
                                     avaught@baronbudd.com

16                                   3102 Oak Lawn Ave, Suite 1100

17                                   Dallas, TX 75219
                                     Telephone:  (214) 521-3605

18                                   Facsimile:  (214) 520-1181

19

20                                   **HUNT, HASSLER & LORENZ LLP**
                                     Robert P. Kondras, Jr. (admitted *pro hac vice*)

21                                   kondras@huntlawfirm.net

22                                   100 Cherry Street
                                     Terre Haute, IN 47807

23                                   Telephone: (812) 232-9691

24                                   Facsimile: (812) 234-2881

25                                   *Attorneys for Plaintiffs and Settlement Class*

26                                   *Members*

27

28

1  Jahan C. Sagafi (Cal. Bar No. 224887)
2  jsagafi@outtengolden.com
   Katrina L. Eiland (Cal. Bar No. 275701)
3  keiland@outtengolden.com
4  OUTTEN & GOLDEN LLP
   One Embarcadero Center, 38th Floor
5  San Francisco, CA 94111
6  Telephone:  (415) 638-8800
   Facsimile:  (415) 638-8810
7
8  *Additional counsel on signature page*
   *Counsel for Plaintiffs and Settlement Class Members*
9

10              **UNITED STATES DISTRICT COURT**
11          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
12                  **SOUTHERN DIVISION**
13
14  |                                      | Case No. 8:13-cv-00092-DOC(JPRx)        |
15  | MELISSA LILLEHAGEN, *et*             | **PLAINTIFFS' MOTION FOR**              |
16  | *al.*, on behalf of themselves and   | **ATTORNEYS' FEES, COSTS, AND**         |
    | all those similarly situated,        | **CLASS REPRESENTATIVE SERVICE**        |
17  |                                      | **AWARDS**                              |
18  |        Plaintiffs,                   |                                         |
19  |          v.                          | District Judge:     Hon. David O. Carter |
    |                                      | Magistrate Judge:   Hon. Jean Rosenbluth |
20  | ALORICA, INC.,                       |                                         |
21  |                                      | Hearing Date: October 17, 2016          |
22  |        Defendant.                    | Hearing Time:  8:30 a.m.                |
    |                                      | Courtroom: 9D                           |
23
24
25
26
27
28

# TABLE OF CONTENTS

**PAGE**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL BACKGROUND ............................................................................... 3

    A.   Class Counsel Carefully Investigated and Actively Protected the Class Members' Claims. .................................................................. 3

    B.   The Settlement Is Highly Beneficial to the Class Members. ................. 5

    C.   Class Counsel Have Devoted Substantial Time and Resources to This Litigation. ............................................................... 5

    D.   Class Member Response to the Settlement and the Requests for Fees, Costs, And Service Awards Has Been Completely Positive. ................ 5

III.    ARGUMENT ....................................................................................................... 6

    A.   The Equitable Common Fund Doctrine Requires That Counsel Be Compensated From the Fund. ............................................... 8

    B.   The Fee Award Should Be Calculated as a Percentage of the Common Fund ........................................................................... 9

    C.   The Requested Fee Award Is Consistent With the Applicable Ninth Circuit Authority. ................................................... 11

    D.   The Requested Fee Award Is Consistent with Fees Awarded in Similar Cases in This District and Other California District Courts. ............... 11

    E.   The Requested Fee Award Is Reasonable. ........................................... 12

    F.   The Requested Fee Is Reasonable Based on the Lodestar Cross-Check. ................................................................................ 14

        1.   Time And Labor Required ......................................................... 16

        2.   The Novelty and Difficulty of the Questions Involved ............ 17

        3.   The Requisite Legal Skill Necessary ........................................ 18

        4.   The Preclusion of Other Employment ...................................... 18

        5.   The Customary Fee .................................................................... 18

        6.   Whether the Fee Is Contingent .................................................. 19

        7.   Amount of Time Spent for Results ............................................ 19

        8.   Results Obtained ........................................................................ 20

## TABLE OF CONTENTS
(continued)

PAGE

      9.     Experience, Reputation, and Ability of the Attorneys .............20

      10.    Undesirability of the Case .......................................................20

      11.    Nature And Length of Relationship With the Clients ..............21

      12.    Awards in Similar Cases...........................................................21

  G.    Class Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are Reasonable And Benefitted the Class. ..............................21

  H.    The Requested Class Representative Service Awards Are Reasonable. ...........................................................................................22

**IV.**      **CONCLUSION.................................................................................25**

# TABLE OF AUTHORITIES

CASES                                                                                          PAGE(S)

*In re Activision Sec. Litig.*,
    723 F. Supp. ................................................................................ 8, 10, 11

*Agofonova v. Nobu Corp.*,
    No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) ............................................. 16

*In re Am. Apparel, Inc. S'holder Litig.*,
    No. 10 Civ. 06352, 2014 WL 10212865 (C.D. Cal. July 28, 2014) .............. 7, 11

*Beckerley v. Alorica, Inc.*,
    No. 13-cv-00092-DOC (filed May 30, 2014)
    .......................................................................................... 3, 16, 19, 21

*Beesley v. Int'l Paper Co.*,
    No. 06 Civ. 703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ........................ 25

*Birch v. Office Depot, Inc.*,
    No. 06 Civ. 1690 (S.D. Cal. Sept. 28, 2007) ............................................ 8

*Blum v. Stenson*,
    465 U.S. 886 (1984) ................................................................. 1, 7, 9, 14

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ...................................................................... 6, 7, 9

*Boyd v. Bank of Am. Corp.*,
    No. 13 Civ. 0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ................ 8, 12

*Camden I Condominium Assn. v. Dunkle*,
    946 F.2d 768 (11th Cir. 1991) ...................................................... 10, 11

*In re Cenco Inc. Securities Litigation*,
    519 F. Supp. 322 (N.D. Ill. 1981) .................................................. 17, 20

*Central R. & Banking Co. v. Pettus*,
    113 U.S. 116 (1885) ..................................................................... 9

*Chemical Bank v. Jaffe & Schlesinger, P.A.*,
    19 F.3d 1306 (9th Cir. 1994) ............................................................ 7

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                                          PAGE(S)

*Class Plaintiffs v. Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ......................................................................... 14

*Cook v. Niedert*,
    142 F.3d 1004 (7th Cir. 1998) ........................................................................ 22

*Cosgrove v. Sullivan*,
    759 F. Supp. 166-67 (S.D.N.Y. 1991) ............................................................. 16

*Doty v. Costco Wholesale Corp.*,
    No. 05-3241 (C.D. Cal. May 14, 2007) ...................................................... 15, 23

*Dutton v. D&K Healthcare Resources, Inc.*,
    No. 04-147 (E.D. Mo. June 5, 2007) ............................................................... 16

*Glass v. UBS Financial Services, Inc.*,
    Case No. 06 Civ. 4068, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ................. 23

*In re GNC Shareholder Litig.*,
    668 F. Supp. 450 (W.D. Pa. 1987) ................................................................. 22

*Hainey v. Parrott*,
    No. 02-733 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ................................ 23

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................... 15, 16

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ............................................................................. 22

*In re Heritage Bond Litig.*,
    No. 02 Civ. 1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ........................ 8

*In re IDB Communications Group, Inc. Sec. Litig.*,
    No. 94 Civ. 3618-RG (C.D. Cal. Jan. 17, 1997) ............................................. 16

*Kerr v. Screen Extras Guild, Inc.*,
    526 F.2d 67 (9th Cir. 1975) ....................................................................... 15, 16

*Leonard v. Baumer (In re United Energy Corp. Sec. Litig.)*,
    1989 WL 73211 (C.D. Cal. March 9, 1989) .................................................... 21

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                    PAGE(S)

*Lillehagen v. Alorica, Inc.*,
    No. 13-0092 DOC (C.D. Cal.) (filed January 18, 2013) .......................................3

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ...............................................................11

*Moore v. PetSmart, Inc.*,
    No. 12 Civ. 3577, 2014 WL 1927309 (N.D. Cal. May 14, 2014).....................12

*Morganstein v. Esber*,
    768 F. Supp. 725 (C.D. Cal. 1991).........................................................9

*The Music Force, LLC v. Viacom, Inc.*,
    No. 04-8239 (C.D. Cal. Aug. 8, 2007) ...................................................16

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982) ...............................................................14

*In re Pacific Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................11

*Parks v. Eastwood Ins. Servs., Inc.*,
    240 Fed. App'x 172 (9th Cir. 2007).......................................................18

*Paul, Johnson, Alston & Hunt v. Graulty*,
    886 F.2d 268 (9th Cir. 1989) ..........................................................9, 10

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
    478 U.S. 546 (1986) .........................................................................14

*In re the PMI Group, Inc. Securities Litig.*,
    No. 08 Civ. 1405 (N.D. Cal. Dec. 16, 2010).........................................15

*In re Quantum Health Res., Inc.*,
    962 F. Supp. 1254 (C.D. Cal. 1997).....................................................11

*Rabin v. Concord Assets Group, Inc.*,
    No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. 1991) ...............................15

*Roberts v.  Texaco, Inc.*,
    979 F. Supp. 185 (SDNY 1997) ......................................................18, 20

1

**TABLE OF AUTHORITIES**
(continued)

2

CASES                                                                                    PAGE(S)

3

*Sewell v. Bovis Lend Lease, Inc.,*

4

  2012 WL 1320124 at *12 (SDNY 2012) .............................................................. 23

5

*Silberblatt v. Morgan Stanley,*

6

  524 F. Supp. 2d 425 (S.D.N.Y. 2007) ................................................................. 23

7

*Singer v. Becton Dickinson and Co.,*

  No. 08 Civ. 821, 2010 WL 2196104 (S.D. Cal. June 1, 2010) ............................ 12

8

9

*Singleton v. Domino's Pizza, LLC,*

  976 F. Supp. 2d 665 (D. Md. 2013) ..................................................................... 25

10

11

*Six Mexican Workers v. Arizona Citrus Growers,*

  904 F.2d 1301 (9th Cir. Cal. 1990) .................................................................. 9, 12

12

13

*State of Fla. v. Dunne,*

  915 F.2d 542 (9th Cir. 1990) .......................................................................... 10, 15

14

15

*Staton v. Boeing Co.,*

  327 F.3d 938 (9th Cir. 2003) ..................................................................... 9, 22, 23

16

17

*Steiner v. Am. Broad. Co.,*

  248 Fed. App'x 780 (9th Cir. 2007) ......................................................... 8, 15, 19

18

19

*Stevens v. Safeway, Inc.,*

  No. 05 Civ. 01988, 2009 U.S. Dist. LEXIS 17119 (C.D. Cal. Feb. 25, 2008) ................................................................................................ 23

20

21

*Sutton v. Bernard,*

  504 F.3d 688 (7th Cir. 2007) ............................................................................... 10

22

23

*Swedish Hosp. Corp. v. Shalala,*

  1 F.3d 1261 (D.C. Cir. 1993)............................................................................... 10

24

25

*Teeter v. NCR Corp.,*

  No. 08-297 (C.D. Cal. Aug. 6, 2009) ................................................................. 15

26

*Tiro v. Pub. House Invs., LLC,*

  No. 11 Civ. 7679, 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013) ..................... 25

27

28

# TABLE OF AUTHORITIES
### (continued)

CASES                                                                                                PAGE(S)

*In re Tricor Direct Purchaser Antitrust Litig.*,
    No. 05-340 (D. Del. April 23, 2009) ................................................................. 23

*In re United Rentals, Inc. Securities Litig.*,
    No. 04-1615 (D. Conn. May 26, 2009) .............................................................. 16

*In re UEC Corp. Sec. Litig.*,
    Fed. Sec. L. Rep. P 94,376 ............................................................................... 22

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ................................................................... 23

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ...................................................................... 12

*Vincent v. Hughes Air West., Inc.*,
    557 F.2d 759 (9th Cir. 1977) ....................................................................... 7, 21

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 1997) ....................................................... 7, 8, 11, 16, 19

*Wade v. Kroger Co.*,
    No. 3:01-CV-699, 2008 WL 4999171 (W.D. Ky. Nov. 20, 2008) ..................... 23

*Wright v. Stern*,
    553 F. Supp. 2d 337 (S.D.N.Y. 2008) ............................................................... 23

**Statutes**

Fair Labor Standards Act .................................................................................*passim*

**Other Authorities**

Conte, *Attorneys' Fee Awards*, § 2.08 (2d ed. 1977) .............................................. 22

Newberg, *Attorney Fee Awards,* § 14.03 (1987) ..................................................... 15

## MEMORANDUM IN SUPPORT OF MOTION

## I.   INTRODUCTION

After investigation, significant discovery, vigorously contested litigation spanning many rounds of motion practice, and extensive mediation discussions, Plaintiffs Melissa Lillehagen, Sharon Shaw, Janna Carlile, Shanai Whitmore, Ignacio Pizana, Brenda Luper, Barbara Beckerley, Michael Irvin, Dianne Maddox, Raymorn Edden, Cassandra Allen, Dawn Fulmore, Vanessa Gomez, Ancelle Parker, Janelle Ayers, Cynthia Fuerte, Chelsea Ramirez, and Timothy King ("Plaintiffs"), on behalf of themselves and approximately 156,000 Alorica call center Customer Service Representatives across the country ("Class Members"), and Defendant Alorica, Inc. ("Alorica") (collectively, the "Parties"), negotiated a $9,250,000 common fund settlement of this litigation.  The entirety of this fund will be paid out by Alorica, with no money reverting to the company.  On top of this amount, Alorica will, as is customary, pay the employer's share of applicable taxes.  From this common fund, Class Counsel seek an attorneys' fee award of 331/3 %, or $3,083,333.  This fee is consistent with applicable Ninth Circuit authority and its reasonableness is underscored by the lodestar cross-check, which confirms that the multiplier is approximately 0.70x (sometimes referred to as a "negative multiplier"[1]).  Because Class Counsel will continue to perform work on this case for the benefit of the Class after filing this motion, Class Counsel's lodestar, costs, and expenses will continue to increase during 2016 and 2017.

The requested award is eminently reasonable under the common fund doctrine.  *See Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).  Class Counsel have obtained a

---

[1]    The term "negative" refers to multipliers between 0 and 1, because the multiplier results in a fee below lodestar, even though mathematically, the multiplier is of course not below 0 (which would result in a fee below zero).

very strong result for the Class Members.  Here, each Class Member will automatically receive a check without having to file a claim form.  Sagafi Decl. ¶ 27.  Unsurprisingly, the Class Member response has been overwhelmingly positive:  out of 156,341 notice packets mailed out, only nine Class Members have opted out, and only two (0.00001%) have objected to any aspect of the settlement (and those objections did not express any concern with the fees, costs, or class representative service awards).  *See id.* ¶¶ 54-55, Exs. C & D.[2]

The Settlement allows Class Counsel to seek reimbursement of litigation expenses of up to $390,000.  To date, Class Counsel have incurred approximately $257,802 in costs.  *Id.* ¶ 42.  The costs were all incurred in connection with the prosecution of the action and the execution of the settlement and are reasonable and proper.  No Class Member has objected to Class Counsel's requests for "up to $390,000" in costs.  *See id.* ¶¶ 27, 54-55, Exs. C & D; (Dkt. 246, Ex. B, Class Notice).  Class Counsel will continue to incur costs beyond this amount for the benefit of the Class (e.g., through traveling to the Final Fairness Hearing and engaging in calls and communications with Class Members).

Finally, to recognize the time and effort that named Plaintiffs expended for the benefit of the Class Members, the results they made possible for the Class, and the risks they accepted by leading the litigation, Plaintiffs request service awards of between $2,500 and $10,000 per Class Representative, based on their contributions and risks incurred.  Given their significant contributions to Class Counsel's efforts, culminating in the pending $9,250,000 settlement, the risk incurred by all Class Representatives, and viewed in light of well-established standards for such awards,

---

[2]     Plaintiffs will provide updated exclusion and objection information in a declaration from the Settlement Administrator, as well as updated hours and cost information, with their reply brief to be filed after the close of the notice period.

the amounts sought are reasonable.  Sagafi Decl. ¶¶ 33-34.  No Class Member has

objected to the requested service awards.  *Id.* ¶¶ 27, 54-55, Exs. C & D.

## II.  FACTUAL BACKGROUND

Class Counsel have zealously prosecuted the federal and state law claims

asserted here on behalf of Class Members for nearly four years.  During all phases of

litigation, Class Counsel have coordinated efforts to avoid duplication of time and

ensure all work performed benefitted the class members.

### A.  Class Counsel Carefully Investigated and Actively Protected the Class Members' Claims.

This action is the consolidated result of two lawsuits: *Lillehagen v. Alorica,*

*Inc.*, No. 13-0092 DOC (JPRx) (C.D. Cal.) (filed January 18, 2013) and *Beckerley v.*

*Alorica, Inc.*, No. 13-cv-00092-DOC (JPRx) (filed May 30, 2014).  *See* Sagafi Decl.

¶ 17; (*see also* Dkt. 221.)

Class counsel conducted extensive investigation and litigation of the claims in

this case from 2012, before the case was filed, throughout the action.  Class Counsel

reviewed and analyzed tens of thousands of pages of documents including payroll and

time tracking data, Alorica's policies and procedures regarding the company's

method of calculating Class Members' compensation and recording Class Members'

hours of work, and documents concerning Class Members' job duties.  Vaught

Preliminary Approval Decl. ¶ 26.

Moreover, Class Counsel deposed seven of Alorica's witnesses in this action.

Sagafi Decl. ¶ 19.  Those witnesses' testimony was critical in Class Counsel's effort

to build the record in support of FLSA certification, Rule 23 certification, liability,

and damages.  *Id.*  Class Counsel also interviewed many Class Members and

collected declarations from 48 Class Members nationwide regarding Alorica's

policies and procedures and overtime hours, which were key to settlement

negotiations.  *Id.* ¶ 18.  Moreover, Class Counsel hired employment data specialists to

convert, audit, and analyze time and pay data. *Id*. ¶ 21.

The litigation was hotly contested. Class Counsel defeated Alorica's motion to disqualify counsel based on its issuance of a press release and attempts to communicate with class members about their claims (Dkts. 16 and 65), Alorica's motion for summary judgment (Dkt. 135), Alorica's motion to decertify the nationwide FLSA collective (Dkt. 138), and Alorica's efforts to appeal the Court's orders granting FLSA conditional certification and denying decertification (Dkts. 75 and 219). Alorica also moved to compel arbitration (Dkt. 137). Plaintiffs successfully moved to compel important discovery (Dkts. 137 and 218). In addition, Plaintiffs brought a motion for summary judgment that, though not granted by the Court, laid out the strengths of Plaintiffs' arguments and their theory of the case (Dkt. 159).

On September 10, 2013, the parties attended a full-day mediation at JAMS in Orange County, California under the supervision of Judge George Schiavelli (Ret.). That mediation was not successful in resolving this case, and litigation continued. *See* Sagafi Preliminary Approval Decl. ¶ 24. On June 10, 2015, Plaintiffs and Alorica attended a second full-day mediation at JAMS under the supervision of Judge Edward A. Infante (Ret.). *Id*. Before that mediation, the Parties submitted detailed mediation briefs, including data analyses and assessments, and substantial evidence. *Id*. The Parties did not reach a settlement at mediation, but extensive further discussions facilitated by the mediator resulted in the Settlement. *Id.*

On May 31, 2016, this Court granted preliminary approval of the Settlement; certified, for settlement purposes only, the Settlement Class and Collective Action defined therein; appointed Class Representatives and Class Counsel; appointed the Settlement Administrator and directed dissemination of notice to the Settlement Class; and set a Final Fairness Hearing date and related dates (Dkt. 262).

**B.**  **The Settlement Is Highly Beneficial to the Class Members.**

Every Class Member who does not opt out will automatically be sent a check for his or her share of the $9,250,000 settlement fund based upon the simple formula described in the Settlement Agreement, carefully designed to fairly compensate Class Members based on the strength of their claims.  Sagafi Decl. ¶ 27; (Dkt. 246, Exh. A § V.F.)  Any uncashed portion of the settlement will either be reallocated to participating Class Members (if the residue is larger than $4 per participating Class Member) or be donated to two cy pres beneficiaries (the Legal Aid Society – Employment Law Center and Public Justice), which have been selected based on the fact that they promote workers' rights in a manner consistent with the aims of this litigation.  (Dkt. 246, Exh. A § VI.M).

**C.**  **Class Counsel Have Devoted Substantial Time and Resources to This Litigation.**

As of August 29, 2016, Class Counsel have devoted over 10,075 hours to the prosecution of this action, with a lodestar value of approximately $4,321,243.  Sagafi Decl. ¶ 42.  Also, Class Counsel has paid in excess of $257,802 in out-of-pocket costs.  *Id.*  By the time this Motion is heard, these figures will have increased due to additional work performed by Class Counsel for the Class Members' benefit.  Class counsel expended this effort and this money without being paid for their time, and without any guarantee of recovery.  *Id.* ¶ 38.  In prosecuting Plaintiffs' and the Class Members' claims, Class Counsel gave up the opportunity to perform other work during this time period.  *Id.*

**D.**  **Class Member Response to the Settlement and the Requests for Fees, Costs, And Service Awards Has Been Completely Positive.**

On July 12, 2016, Notice of the proposed Settlement was sent to each Class Member by first-class mail at their last known address, as updated by the Settlement Administrator.  The Notice explained:

> Class Counsel will ask the Court for attorneys' fees of 33.33% of the total settlement amount, up to $3,083,333 and out-of-pocket costs of up to $390,000, according to the terms of the Settlement Agreement. The fees will pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The costs will reimburse Class Counsel for expenses they have paid during the litigation. The attorneys' fees and costs, as awarded by the Court, shall be paid from the $9,250,000 fund created by the settlement. In addition, Class Counsel will apply to the Court for service awards of service awards of $10,000 each for Class Representatives Beckerley, Lillehagen, and Carlile; $7,500 each for Class Representatives Maddox and Edden; $5,000 each for Class Representatives Shaw, Whitmore, Pizana, and Luper; and $2,500 each for Class Representatives Allen, Parker, Fulmore, Gomez, Irvin, Ayers, Fuerte, Ramirez, and King. These service awards are being requested to compensate the Class Representatives for the time, effort, and risk they incurred in achieving this settlement for you and the other Class Members. These service awards, as determined by the Court, will also be paid from the $9,250,000 fund created by the settlement.

(*See* Dkt. 246, Ex. B, Class Notice).

Class Members have been afforded 60 days (until September 12, 2016) during which to decide whether to object and/or opt out of the Settlement.  *Id.*  To date, no Class Member has objected to Class Counsel's request for fees, costs, or class representative service awards.[3]  *See id.* ¶¶ 54-55, Exs. C & D.  This high approval rate reflects the Class Members' strong support for the settlement, and demonstrates the reasonableness of the request for fees, costs, and service awards.

## III.   **ARGUMENT**

The United States Supreme Court "has recognized consistently that a litigant or a lawyer who recovers a common fund . . . is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)

---

[3]      Although two objections to the Settlement have been received, neither of these communications objects to Class Counsel's attorneys' fees, costs, or class representative service award requests.  Sagafi Decl. ¶¶ 52-55; Exs. A-D.

(citations omitted).  This is because Class Counsel have created a "right to share the
harvest of the lawsuit" for Class Members regardless of "whether or not [the Class
Members] exercise it." *Id.* at 480.  It "is a benefit in the fund created by the efforts of
the class representatives and their counsel." *Id.*  Unless Class Members who have not
claimed "contribute to the payment of attorney's fees incurred on their behalves, they
will pay nothing for the creation of the fund and their representatives may bear
additional costs." *Id.*

In light of the Supreme Court's mandate, the Ninth Circuit has instructed that
"a private plaintiff, or his attorney, whose efforts create, discover, increase or
preserve a fund to which others also have a claim is entitled to recover from the fund
the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West.,
Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also Chemical Bank v. Jaffe &
Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994).  The traditional method for
calculating a fee award in common fund cases is to award counsel a percentage of the
total fund.  *See Blum*, 465 U.S. at 900 n.16.

In the Ninth Circuit, 25 percent of the common fund is the "benchmark" for an
attorneys' fees award in "mega-fund" class actions in the $50-200 million range.  *See,
e.g.*, *Vizcaino*, 290 F.3d at 1047.  The Ninth Circuit has instructed that district courts
are entrusted with wide discretion to approve fees above or below that benchmark,
based on the circumstances of the case.  *See id.* at 1048 ("The 25% benchmark rate,
although a starting point for analysis, may be inappropriate in some cases."); *In re
Am. Apparel, Inc. S'holder Litig.*, No. 10 Civ. 06352, 2014 WL 10212865, at *23
(C.D. Cal. July 28, 2014) ("[I]n most common fund cases, the award exceeds the
benchmark").  Where the common fund is below the $50 million "mega-fund"
threshold, an award above the 25% benchmark is particularly appropriate.  In fact, "in
class action common fund cases the better practice is to set a percentage fee and that,
absent extraordinary circumstances that suggest reasons to lower or increase the

percentage, the rate should be set at 30%." *In re Activision Sec. Litig.*, 723 F. Supp. at 1378.

The compensation sought for Class Counsel—33 1/3% of the common fund— is consistent with Ninth Circuit authority and with fees awarded in similar cases. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, No. 13 Civ. 0561, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (approving fee award of 36% of common fund settlement in wage and hour case); *Birch v. Office Depot, Inc.*, No. 06 Civ. 1690 (S.D. Cal. Sept. 28, 2007) (Sagafi Decl. ¶ 56, Ex. E) (awarding a 40% fee on a $16 million settlement); *In re Heritage Bond Litig.*, No. 02 Civ. 1475, 2005 WL 1594403, at *18 (C.D. Cal. June 10, 2005) (approving fees of  33.33% of approximately $28 million common fund).

A lodestar cross-check is often useful in confirming the reasonableness of a percentage-based fee. *See Vizcaino*, 290 F.3d at 1050 ("[W]hile the primary basis of the fee award remains the percentage method, the lodestar may provide a useful perspective on the reasonableness of a given percentage award.").  Here, the intensely contested litigation resulted in Class Counsel investing approximately $4.3 million in uncompensated time over a span of nearly four years.  Because Class Counsel are requesting significantly less than that – $3,083,333 – the lodestar multiplier will be approximately 0.70x (sometimes called a "negative multiplier").  The lodestar cross-check confirms that the 33 1/3 % fee is eminently reasonable and well below the range of fee multipliers courts routinely approve. *See, e.g.*, *id.* at 1051 (approving 3.65 multiplier and citing recent cases approving multipliers as high as 19.6); *Steiner v. Am. Broad. Co.*, 248 Fed. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier).

A. **The Equitable Common Fund Doctrine Requires That Counsel Be Compensated From the Fund.**

Federal and state courts recognize that when counsel's efforts result in the

creation of a common fund that benefits plaintiffs and unnamed class members, counsel have an equitable right to be compensated from that fund as a whole for their successful efforts in creating it. *See, e.g.*, *Boeing Co.*, 444 U.S. at 478; *Central R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (recognizing common fund doctrines); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (same). The common fund doctrine rests on the understanding that attorneys should normally be paid by their clients. *Boeing*, 444 U.S. at 478. Where the attorneys' unnamed class member clients have no express retainer agreement, those who benefit from the fund without contributing to it would be unjustly enriched if attorneys' fees were not paid out of the common fund. *Id.*

This litigation has resulted in a settlement fund of $9,250,000 to be distributed to the participating Class Members, none of whom have paid Class Counsel fees for their efforts during the litigation. Equity requires them to pay a reasonable fee, based on what the market would traditionally require, no less than if they had hired private counsel to litigate their cases individually. *Id.* at 479-481.

### B. The Fee Award Should Be Calculated as a Percentage of the Common Fund.

The fairest way – and the way that best promotes efficiency in litigation – to calculate a reasonable fee when contingency fee litigation has produced a common fund is by awarding Class Counsel a percentage of the total fund. *See, e.g.*, *Blum*, 465 U.S. at 900 n.16; *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. Cal. 1990) (common fund fee is generally "calculated as a percentage of the recovery"); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *Morganstein v. Esber*, 768 F. Supp. 725, 728 (C.D. Cal. 1991).

The percentage of the fund method is appropriate for several reasons. The percentage method comports with the legal marketplace, where plaintiffs' counsel's success is frequently measured in terms of the results they have achieved. *See*

*Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1269 (D.C. Cir. 1993) (in common fund cases, "the monetary amount of the victory is often the true measure of [counsel's] success"). By assessing the fee in terms of the benefit to the class, the percentage method "more accurately reflects the economics of litigation practice" which, "given the uncertainties and hazards of litigation, must necessarily be result-oriented." *Id.* (internal quotations and citations omitted).

In general, people who lack the resources to hire counsel by the hour typically secure legal representation by agreeing to payment of the fee in the form of a percentage of any future recovery. The percentage of the fund approach mirrors this aspect of the market and, accordingly, reflects the fee that would have been negotiated by the class members in advance, had such negotiations been feasible, given the prospective uncertainties and anticipated risks and burdens of the litigation. *See, e.g.*, *Paul, Johnson, Alston & Hunt*, 886 F.2d at 271; *Sutton v. Bernard*, 504 F.3d 688, 692 (7th Cir. 2007).

This percentage approach has other benefits and advantages. Most notably, it aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently and to focus on maximizing the size of the class's recovery, rather than their own lodestar hours. *In re Activision Sec. Litig.*, 723 F. Supp. at 1375; *see State of Fla. v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) (recognizing a "recent ground swell of support for mandating a percentage-of-the-fund approach in common fund cases"); *Camden I Condominium Assn. v. Dunkle*, 946 F.2d 768, 773 (11th Cir. 1991) ("[E]very Supreme Court case addressing the computation of a common fund fee award has determined such fees on a percentage of the fund basis."). By contrast, the lodestar multiplier method creates a disincentive for early settlement, since counsel's lodestar will necessarily be low early in the litigation. *Vizcaino*, 290 F.3d at 1050 n.5. The percentage method is also easier for courts to calculate than any alternative method, since, unlike the lodestar multiplier

- 10 -

method, it does not require the court to evaluate the reasonableness of hours incurred or hypothesize about how day-to-day or hour-by-hour decisions might have been made differently by counsel.  *Id.*; *In re Activision Sec. Litig.*, 723 F. Supp. at 1378.  In light of these benefits, courts have resoundingly approved the percentage of the fund method for calculating a reasonable fee award in common fund cases.  In this case, Class Counsel respectfully submit that this method is appropriate here.

### C.    The Requested Fee Award Is Consistent With the Applicable Ninth Circuit Authority.

The Ninth Circuit and district courts in this Circuit have consistently reaffirmed that the 25 percent benchmark is just that – a benchmark, which can be adjusted based on the circumstances of the case.   *See Vizcaino*, 290 F.3d at 1046 n. 1, 1050 & Appendix.  The court recognized the so-called "increase-decrease rule"; that is, the percentage of an award generally decreases as the common fund increases, and vice versa.  *Id*. at 1047.

Thus, in common fund settlements of less than $50 million, such as this one, a higher percentage is often awarded by the district court and affirmed by the Ninth Circuit.  *See, e.g.*, *In re Pacific Enterprises Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33% of $12 million common fund); *In re Activision Sec. Litig.*, 723 F. Supp. at 1375 (awarding 32.8% of $3.5 million common fund); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 460 (9th Cir. 2000) (affirming award of 33.3% of $1.725 million).

### D.    The Requested Fee Award Is Consistent with Fees Awarded in Similar Cases in This District and Other California District Courts.

In this District, attorneys representing a class "routinely recover attorneys' fees in the range of 20 to 40 percent of the common fund."  *In re Quantum Health Res., Inc.*, 962 F. Supp. 1254, 1258 (C.D. Cal. 1997).  In fact, "[i]n most common fund cases, the award exceeds the benchmark" of 25 percent.  *In re Am. Apparel, Inc.*

*S'holder Litig.*, No. 10 Civ. 6352, 2014 WL 10212865, at *23 (C.D. Cal. July 28, 2014); *see also Boyd*, 2014 WL 6473804, at *9 (approving fee award of 36% of common fund).

Plaintiffs' fee request is also consistent with fee awards routinely approved by district courts across California. *See, e.g.*, *Moore v. PetSmart, Inc*., No. 12 Civ. 3577, 2014 WL 1927309, at *5 (N.D. Cal. May 14, 2014) (30% fee award from $10 million common fund); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 492 (E.D. Cal. 2010) (33.3% fee award from $300,000 common fund and collecting cases); *Singer v. Becton Dickinson and Co*., No. 08 Civ. 821, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (fee award of 33.33% of a common fund).

### E.    <u>The Requested Fee Award Is Reasonable.</u>

It is appropriate to adjust the benchmark upward if the circumstances indicate the benchmark is too small based on the relevant factors. *Six Mexican Workers*, 904 F.2d at 1311.  In this case, the requested 33 1/3% fee is justified by the intensity, considerable duration, complexity, and uncertainty of the litigation.  Class Counsel accepted and litigated this action solely on a contingency fee basis, and have received no compensation for the outlay of attorney time, nor for any of the expenses incurred. Sagafi Decl. ¶ 38.  Class Counsel have expended significant time and resources on this litigation.  *See id.* ¶ 43.  There has never been any guarantee that Class Counsel would ever be paid for that time or reimbursed for those costs.

Moreover, this litigation involved many significantly complex issues, which exacerbated the risk of nonrecovery.  *See id*. ¶ 23.   Alorica asserted several legal arguments against Plaintiffs' claims, including among others that: (a) Plaintiffs' counsel could not adequately represent Plaintiffs and Class Members and should be disqualified (Dkt. 16); (b) no Rule 23 class could be certified as to any claim; (c) the state law claims were legally infirm; (d) the pre- and post-shift claims, which constituted a significant portion of the value of Plaintiffs' damages model, were not

appropriate for class or collective treatment; (e) Plaintiffs could not prove Alorica's knowledge of the off-the-clock work on a classwide basis or at all; and (f) there were significant offsets for Plaintiffs' damages estimates that substantially reduced Alorica's exposure.  Sagafi Decl. ¶ 23.  The litigation also involved a significant degree of factual complexity.  *Id.* ¶ 24.

The complexity of this case is evidenced by the parties' extensive litigation of numerous issues over the span of several years before arriving at a settlement agreement.  *Id.* ¶ 25.  Even after a settlement in principle was reached, the parties contested many aspects of the settlement agreement before it was finalized.  *Id.* ¶ 26.  These issues meant that Plaintiffs could lose on Rule 23 class certification, trial, or appeal, which created substantial risk that Plaintiffs and Class Members would recover nothing in this litigation.  In short, Plaintiffs were by no means assured of success, and Class Counsel were not assured of any remuneration for years of work invested.

The reasonableness of the requested fee is further supported by the high quality of Class Counsel's legal representation.  Two of the nation's top plaintiff-side class action firms, Baron & Budd and Outten & Golden, collaborated, along with co-counsel Hunt, Hassler & Lorenz, in the prosecution of these claims.  Class Counsel won nearly all motions presented to the Court (the sole significant exception being their affirmative summary judgment motion, which is a motion rarely granted in favor of plaintiffs in wage and hour litigation) and took and defended extensive discovery.  The efforts expended by Class Counsel in this case are described above and in the supporting declarations.[4]  As these declarations reflect, Class Counsel's diligent and efficient pursuit of this matter positioned Plaintiffs to successfully settle

---

[4]      Plaintiffs will submit updated figures and additional declarations supporting their motion for fees and costs in connection with their reply brief.

this case for $9,250,000 and to provide meaningful redress for the approximately 156,000 Class Members.

The Class Members' response also supports a decision that the fee request is reasonable.  The requested fees (both as a percentage and a raw dollar amount) were clearly stated in the class notice, mailed to each Class Member by first-class mail at their last known address.  Sagafi Decl. ¶ 27; (*see also* Dkt. 246, Ex. B, Class Notice).  However, no objections to the fees requested have been received.  *See* Sagafi Decl. ¶¶ 54-55, Exs. C & D.  The absence of objections to the fees requested supports the conclusion that the requested award is reasonable.  *See, e.g.*, *Class Plaintiffs v. Seattle*, 955 F.2d 1268 (9th Cir. 1992) (affirming district court's order approving settlement agreement and allocation plan over objections by several groups of bondholders); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 636 (9th Cir. 1982) (affirming district court's order approving consent decree over objections by a class representative).

**F.** **The Requested Fee Is Reasonable Based on the Lodestar Cross-Check.**

The lodestar cross-check, resulting in a "negative" multiplier of approximately 0.70x, confirms that the 33 1/3% fee is reasonable.  Under the lodestar method, the lodestar is calculated by multiplying the reasonable hours expended by a reasonable hourly rate.  *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  The court may then apply a multiplier to the lodestar to arrive at a reasonable fee.  *Blum*, 465 U.S. at 888.  The appropriate multiplier is determined in light of certain factors, including:

> (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the requisite legal skill necessary; (4) the preclusion of other employment due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount at controversy and the results obtained; (9) the experience, reputation, and

ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) (a lodestar figure "may be adjusted upward or downward to account for several factors including the quality of the representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment") (citing *Kerr*).  The Ninth Circuit requires "only that fee awards in common fund cases be reasonable under the circumstances."  *Dunne*, 915 F.2d at 545.

Currently, Class Counsel's collective lodestar is approximately $4,321,243. Sagafi Decl. ¶ 42.  Thus, the requested fee currently results in a lodestar multiplier of 0.70x, meaning that Class Counsel will receive less than their hourly rate for each hour worked.  This already low figure will only decrease in the coming months as Class Counsel continue to perform work for the Class.  This multiplier, which reflects the amount of time spent by Class Counsel in prosecuting the case, is well below the range of multipliers routinely approved in this Circuit in comparable common fund settlements.  *See Vizcaino*, 290 F.3d at 1051 (approving multiplier of 3.65 and citing recent cases approving multipliers as high as 19.6); *Steiner*, 248 Fed. Appx. at 783 (affirming award with multiplier of 6.85); *see also* Newberg, *Attorney Fee Awards,* § 14.03 at 14-5 (1987) ("[M]ultiples ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied."); *Rabin v. Concord Assets Group, Inc.*, No. 89 Civ. 6130, 1991 WL 275757 (S.D.N.Y. 1991) (4.4 multiplier) ("In recent years multipliers of between 3 and 4.5 have become common.") (internal quotations and citations omitted); *In re the PMI Group, Inc. Securities Litig.*, No. 08 Civ. 1405 (N.D. Cal. Dec. 16, 2010) (Sagafi Decl. ¶ 57, Exs. F & G) (approving 4.76 multiplier); *Teeter v. NCR Corp.*, No. 08-297 (C.D. Cal. Aug. 6, 2009) (Sagafi Decl. ¶ 58, Ex. H) (approving 4.61 multiplier); *Doty v. Costco Wholesale Corp.*, No. 05-

3241 (C.D. Cal. May 14, 2007) (Sagafi Decl. ¶ 59, Ex. I) (approving 9.07 multiplier); *The Music Force, LLC v. Viacom, Inc.*, No. 04-8239 (C.D. Cal. Aug. 8, 2007) (Sagafi Decl. ¶ 60, Ex. J) (approving 6.43 multiplier); *In re IDB Communications Group, Inc. Sec. Litig.*, No. 94 Civ. 3618-RG (C.D. Cal. Jan. 17, 1997)[5] (approving multiplier of 6.2).[6]

Consideration of the *Kerr* and *Hanlon* factors demonstrates that the requested multiplier is warranted in this case.

### 1.      Time And Labor Required

As described in the supporting declaration, Class Counsel together have devoted 10,075 hours to this litigation.  Sagafi Decl. ¶ 42.  In reaching this figure, Class Counsel have exercised billing judgment, ensuring that only time appropriately charged to a paying client was included.  *Id.* ¶ 41.  In addition, Class Counsel allocated work within the team efficiently to avoid duplication of effort.  *Id.* ¶ 40.  Moreover, this figure includes time only through August 2016, and thus excludes the additional hours that Class Counsel will continue to spend.

The more than 10,000 hours that Class Counsel has thus far expended were reasonably and efficiently spent given the substantial result achieved.  Class Counsel: (1) interviewed Plaintiffs and numerous Class Members and witnesses; (2) prepared and filed the Complaint in both this action and *Beckerley*; (3) developed the strategy

---

[5]      This order is not available in published form, but is cited in the *Vizcaino* Appendix.

[6]      Multipliers in this range are often awarded outside the Ninth Circuit as well. *Agofonova v. Nobu Corp.*, No. 07 Civ. 6926 (S.D.N.Y. Feb. 6, 2009) (Sagafi Decl., ¶ 61, Ex. K) (approving 4.34 multiplier); *In re United Rentals, Inc. Securities Litig.*, No. 04-1615 (D. Conn. May 26, 2009) (Sagafi Decl., ¶ 62, Exs. L & M) (approving 4.5 multiplier); *Dutton v. D&K Healthcare Resources, Inc.*, No. 04-147 (E.D. Mo. June 5, 2007) (Sagafi Decl., ¶ 63, Ex. N) (approving 5.6 multiplier); *Cosgrove v. Sullivan*, 759 F. Supp. 166-67 n.1 (S.D.N.Y. 1991) (approving 8.74 multiplier).

for prosecuting the claims in this case; (4) met and conferred regarding discovery disputes and filed discovery letters and a Motion to Compel; (5) reviewed well over ten thousand pages of documents and voluminous data produced by Alorica; (6) took the depositions of seven of Alorica's corporate witnesses and defendant plaintiff and opt-in depositions; (7) interviewed and drafted declarations for 48 Class Members nationwide; (8) prepared and filed Plaintiff's Motion for Conditional Certification and Plaintiff's Reply brief and opposed Alorica's Motion to Decertify the FLSA Collective Action, as well as Alorica's interlocutory appeal of this Court's conditional certification order; (9) responded to multiple other motions filed by Alorica, in which Alorica sought to prevent any collective or class action from going forward; (10) in consultation with employment data experts, performed complex damages analyses and compiled supporting evidence; (11) prepared detailed mediation briefing; (12) participated in two mediations; (13) participated in post-mediation settlement negotiations; (14) engaged in in-depth, extensive, contentious negotiations to finalize the settlement agreement and the class notice; (15) guided the Settlement Administrator in implementation of the Settlement; and (16) responded to Class Member inquiries throughout the litigation and settlement. *Id.* ¶¶ 18-32.

### 2. <u>The Novelty and Difficulty of the Questions Involved</u>

The purported variation in enforcement of Alorica's policies and procedures and individualized nature of Class Members' claims created a substantial danger that Plaintiffs and Class Members would not recover on a classwide basis at trial. *See id.* ¶ 23. Furthermore, Plaintiffs had to overcome many obstacles, such as FLSA certification and extensive discovery into Alorica's data systems and timekeeping policies, before they could collect and analyze timekeeping data to determine the extent of potential damages. *Id.* While Plaintiffs believe that they would have prevailed in this case, that outcome was by no means assured. *See, e.g.*, *In re Cenco Inc. Securities Litigation*, 519 F. Supp. 322, 327 (N.D. Ill. 1981) ("The uncertainty as

to the likelihood of success at trial made it unlikely that a settlement would be reached.  Thus, the contingency factor here was very high and for this reason, dictates that plaintiffs' counsel deserves significantly greater compensation than they would have absent the high risk factors.").  Here, Plaintiffs request a much lower multiplier – in fact, a "negative" one.

### 3.    The Requisite Legal Skill Necessary

This case required Class Counsel to be well-versed in not only issues of complex collective and class actions, but also in federal and state laws regarding off-the-clock and overtime work and difficult damages analyses.  While each of these areas alone involves nuanced legal and practical challenges, the intersection makes for particularly difficult litigation.  Class Counsel's ability in these areas rests in large part on their significant – perhaps unparalleled – experience prosecuting nationwide collective and class action overtime cases.  *See* Vaught Preliminary Approval Decl. ¶¶ 14-22; Sagafi Decl. ¶¶ 5-16.  *See Roberts*, 979 F. Supp. at 197 (emphasizing the "extraordinary skill and effort on the part of plaintiffs' counsel . . . it is the skill, ingenuity, effort and risk of counsel that, in the final analysis, produces the result").

### 4.    The Preclusion of Other Employment

Prosecution of this litigation precluded Class Counsel from accepting other potentially profitable work and weighs in favor of granting the requested fee.  Sagafi Decl. ¶ 39.  *Parks v. Eastwood Ins. Servs., Inc.*, 240 Fed. App'x 172, 175 (9th Cir. 2007) (approving increase to lodestar multiplier because "[p]reclusion from seeking other employment is a proper basis for an enhancement"); *Roberts*, 979 F. Supp. at 197.

### 5.    The Customary Fee

The requested fee is consistent with the applicable Ninth Circuit authority and with the fees awarded in similar cases in this District.  It also falls well below the range of multipliers approved by the Ninth Circuit and district courts in this and other

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Circuits.  *See Vizcaino*, 290 F.3d at 1052–54 (approving multiplier of 3.65 and citing a survey of class settlements from 1996-2001 listing multipliers as high as 19.6); *Steiner*, 248 Fed. App'x at 783 (approving multiplier of 6.85); *see also* fn. 6, above. In light of both the customary percentage and the range of multipliers commonly approved, Plaintiffs' fee request is reasonable.  Class Counsel's hourly rates are also reasonable.  The rates are commensurate with those prevailing in the applicable market for attorneys with comparable skill and experience litigating complex wage and hour class and collective actions.  Sagafi Decl. ¶ 46.

### 6.    Whether the Fee Is Contingent

Class Counsel undertook this litigation on a purely contingent basis, with no assurance of recovering attorneys' fees or out-of-pocket costs.  *Id*. ¶ 49.  A multiplier enhancement would be appropriate to compensate counsel for representing a class despite the risk that counsel may not be paid at all, but Class Counsel are actually requesting a multiplier that *decreases* the fee down from lodestar.  *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 ("Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'") (citations omitted).

### 7.    Amount of Time Spent for Results

Class Counsel achieved very strong results as efficiently as possible, given the significant amount of time they expended in litigating the case.  Here, pursuing FLSA certification and Rule 23 certification of the new "*Beckerley*" claims, litigating summary judgment, going to trial, and possibly litigating appeals likely would have required Class Members to wait several more years before obtaining relief.  As the Ninth Circuit held in *Vizcaino*, class counsel should not "receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief."  290 F.3d at 1050 n.5.

8. **Results Obtained**

Class Counsel have obtained very strong results for the Class Members. The $9,250,000 common fund represents a significant recovery, and it provides a powerful incentive for Alorica and other call center companies (and other employers generally) to ensure that further violations do not occur. This benefit conferred to the public also supports Plaintiffs' requested fee. *See e.g.*, *Vizcaino*, 290 F.3d at 1049 ("The court observed that the litigation also benefitted employers and workers nationwide by clarifying the law of temporary worker classification. . . . Incidental or nonmonetary benefits conferred by the litigation are a relevant circumstance."); *In re Cenco*, 519 F. Supp. at 327 (approving multiplier of 4 on public policy grounds where "[t]he public has also benefitted from this litigation for it helps insure that state and federal regulations are enforced and provides incentives for private actions in the future."). Here, the settlement furthers important public policy objectives by incentivizing corporate compliance with the law and by demonstrating the viability of private enforcement.

9. **Experience, Reputation, and Ability of the Attorneys**

Class Counsel's experience, reputation, and ability, which are detailed in the supporting documentation, support a multiplier as well. *See* Vaught Preliminary Approval Decl. ¶¶ 14-22; Sagafi Decl. ¶¶ 5-16. There are few, if any, law firms in the country with Class Counsel's combination of breadth and depth of experience and ability, particularly with respect to litigating complex class actions. *Id. See* also *Roberts*, 979 F. Supp. at 197 (emphasizing the "extraordinary skill and effort on the part of plaintiffs' counsel . . . [I]t is the skill, ingenuity, effort and risk of counsel that, in the final analysis, produces the result.").

10. **Undesirability of the Case**

The risk and complexity summarized above demonstrate that recovery was not guaranteed. Many other attorneys experienced in employee rights litigation might

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

have refused to represent these Class Members.

### 11.    Nature And Length of Relationship With the Clients

Class counsel Baron & Budd began investigating these claims in 2012, and
have worked with lead Plaintiff Lillehagen since then – i.e., for approximately four
years – to achieve this result for her and the Class Members.  Sagafi Decl. ¶ 33.  Her
decision to retain Baron & Budd was based on lead counsel Allen Vaught's
experience, expertise, and qualities as an attorney.  *Id*.  Then, in 2014, lead Plaintiff
Beckerley retained Outten & Golden to represent her in asserting new claims against
Alorica, leading to the filing of *Beckerley* in 2014.  During investigation and
litigation, Class Counsel worked closely with all Plaintiffs (as well as many
individual Class Member witnesses) to learn about the factual predicates for their
claims and discuss their claims and strategy with them.  Sagafi Decl. ¶ 18.
Throughout the litigation, Class Counsel have maintained a close and productive
relationship with these Plaintiffs.  *Id.* ¶ 33.

### 12.    Awards in Similar Cases

The requested 33 1/3% fee is consistent with the Ninth Circuit authority and
with fees awarded in similar cases in this District.  *See, e.g.*, § III.D, above.

### G.    Class Counsel Are Entitled to Recover Their Out-of-Pocket Expenses, Which Are Reasonable And Benefitted the Class.

Class Counsel may seek reimbursement of litigation expenses of up to
$390,000 from the fund.  Reimbursement of expenses is appropriate for the same
reasons attorneys' fees should be paid out of the fund:  all beneficiaries should bear
their fair share of the costs of the litigation, and these are the normal costs of
litigation that clients traditionally pay.  *See, e.g.*, *Leonard v. Baumer* (*In re United
Energy Corp. Sec. Litig.*), 1989 WL 73211, at *6 (C.D. Cal. March 9, 1989) (quoting
Newberg, *Attorney Fee Awards* § 2.19 (1987)); *see also Vincent*, 557 F.2d at 769
("[T]he doctrine is designed to spread litigation costs proportionately among all the

beneficiaries so that the active beneficiary does not bear the entire burden alone and the 'stranger' beneficiaries do not receive their benefits at no cost to themselves."). Reimbursement for reasonable out-of-pocket expenses that were "incidental and necessary to the representation of those clients" is appropriate. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994).

To date, Class Counsel have incurred approximately $257,802 in litigation costs and expenses and will incur additional costs through the conclusion of this matter. Sagafi Decl. ¶ 42. These costs include filing fees, payments to the mediator and special master, damages expert fees, fees payable to the FLSA notice administrator, travel, and other reasonable litigation-related costs. *Id.* This figure is reasonable in light of the complexity and size of the action.

All of these costs were necessary in connection with the prosecution of this litigation and were made for the benefit of the Class. No Class Member has objected to the request for costs. Sagafi Decl. ¶¶ 27, 54-55, Exs. C & D. Accordingly, they are reimbursable. *See In re UEC Corp. Sec. Litig.*, Fed. Sec. L. Rep. P 94,376; *In re GNC Shareholder Litig.*, 668 F. Supp. 450, 452 (W.D. Pa. 1987); Conte, *Attorneys' Fee Awards*, § 2.08 at 50-51 (2d ed. 1977).

### H. The Requested Class Representative Service Awards Are Reasonable.

It is customary for "named plaintiffs . . . [to be] eligible for reasonable incentive payments" as part of a class action settlement. *Staton*, 327 F.3d at 977. Service or incentive payments constitute "an essential ingredient of any class action," because they provide an incentive to bring important cases that have a broad impact benefiting a class of individuals, not just the plaintiff. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). These payments recognize the Plaintiffs' time, effort, and inconvenience, as well as the risk they are exposed to in asserting their and others' rights in a particularly public and powerful manner. By bringing the litigation

on behalf of others in addition to themselves, class representatives in employment

class actions provide a valuable service to their fellow workers.  More broadly, they

promote the public policy goals set forth by the legislatures that enacted the

underlying substantive statutes at issue.

For these reasons, courts routinely approve the award of service payments to

class representatives for their assistance to the class.  *See, e.g.*, *Stevens v. Safeway,*

*Inc.*, No. 05 Civ. 01988, 2009 U.S. Dist. LEXIS 17119, *34-37 (C.D. Cal. Feb. 25,

2008) ($20,000 and $10,000 to two class representatives); *Glass v. UBS Financial*

*Services, Inc.*, Case No. 06 Civ. 4068, 2007 WL 221862, at *16-17 (N.D. Cal. Jan.

26, 2007) ($25,000 each to four class representatives); *Van Vranken v. Atl. Richfield*

*Co.*, 901 F. Supp. 294, 300 (N.D. Cal. 1995) ($50,000 to one class representative);

*Doty* (Sagafi Decl. ¶ 41, Ex. I) ($20,000 each to two plaintiffs).[7]

When evaluating the reasonableness of an incentive award, courts may

consider factors such as "'the actions the plaintiff has taken to protect the interests of

the class, the degree to which the class has benefited from those actions, . . . the

amount of time and effort the plaintiff expended in pursuing the litigation . . . and

reasonabl[e] fear[s of] workplace retaliation.'"  *Staton*, 327 F.3d at 977 (quoting

*Cook*, 142 F.3d at 1016); *see also Van Vranken*, 901 F.Supp. at 299; *Silberblatt v.*

*Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative

. . . whose future employability has been impaired may be worthy of receiving an

---

[7]     *See also In re Tricor Direct Purchaser Antitrust Litig.*, No. 05-340 (D. Del.
April 23, 2009) (Sagafi Decl., ¶ 64, Ex. O) ($50,000 each three class representatives);
*Wade v. Kroger Co.*, No. 3:01-CV-699, 2008 WL 4999171, at *13 (W.D. Ky. Nov.
20, 2008) ($30,000 each to multiple class representatives); *Wright v. Stern*, 553 F.
Supp. 2d 337, 342 (S.D.N.Y. 2008) ($50,000 each to 11 class representatives );
*Hainey v. Parrott*, No. 02-733 2007 WL 3308027 (S.D. Ohio Nov. 6, 2007) ($50,000
each to four class representatives).

additional payment, lest others be dissuaded.").

Here, the service payments sought under the proposed settlement of service awards of $10,000 each for Class Representatives Beckerley, Lillehagen, and Carlile reflect their considerable efforts in making possible a valuable settlement for the Class Members, expending significant time and effort since the inception of the case, and subjecting themselves to the risk of unfavorable treatment by future employers. Sagafi Decl. ¶ 33.  Plaintiffs Beckerley, Lillehagen, and Carlile have actively participated in the case by, for example, regularly discussing the facts of the case with Class Counsel and providing documents and information to Class Counsel.  *Id*.  All three Plaintiffs submitted to depositions and provided declarations and other insight in support of the case.  *Id*.  Their participation was particularly critical in helping Class Counsel understand the nature of Alorica's policies and practices regarding pay for off-the-clock work time and timekeeping systems.  *Id*.  Lastly, these lead plaintiffs took on the burden and responsibility of leading this case despite the very real possibility of retaliation by Alorica or future potential employers (who often ask in the interview process whether an applicant has ever sued an employer).  *Id*.  In short, their participation in the litigation carried a significant cost and was critical to its success.  The case literally would not have existed without them.  The requested service payment is reasonable, especially in light of the substantial Class recovery.

The service payments of $7,500 each for Class Representatives Maddox and Edden, and $5,000 each for Class Representatives Shaw, Whitmore, Pizana, and Luper, are also wholly reasonable.  The service award amounts are deserved, as they reflect the Class Representatives' considerable efforts in assisting in the prosecution of the case.  *Id.* ¶ 34.  Maddox, Shaw, Whitmore, Pizana, and Luper all submitted to deposition or provided declarations.  *Id*.  They all offered critical documents and other evidence to Class Counsel and helped Class Counsel decipher data and documents produced by Alorica.  *Id.* These Class Representatives took these actions

despite the real possibility of retaliation and impaired employment opportunities.  *Id.*

The $2,500 service payments to Class Representatives Allen, Parker, Fulmore, Gomez, Irvin, Ayers, Fuerte, Ramirez, and King are also reasonable in light of the risks they took by affiliating themselves publicly with the lawsuit and the benefits they conferred on the Class Members by strengthening the case.  Their representation of various states' Class Members enhanced the case's value overall by increasing Alorica's potential exposure.  *Id.*  The modest $2,500 award is reasonable in light of these risks and contributions.[8]

Finally, the class notice detailed these proposed service awards, and no Class Member objected to them.  *Id.* ¶ 27; (Dkt. 246, Exh. B, Class Notice).

## IV.    CONCLUSION

For the foregoing reasons, Class Counsel respectfully request that the Court issue an order approving the requested payments of $3,083,333 in attorneys' fees, up to $390,000 in costs, and Class Representative service payments of $2,500 to $10,000 each for the Class Representatives as described herein.

---

[8]     *See, e.g.*, *Beesley v. Int'l Paper Co.*, No. 06 Civ. 703, 2014 WL 375432, at *4 (S.D. Ill. Jan. 31, 2014) (acknowledging that litigation against one's employer requires "fortitude" and "carries unique risks . . . , including alienation from employers or peers"); *Tiro v. Pub. House Invs., LLC*, No. 11 Civ. 7679, 2013 WL 4830949, at *11 (S.D.N.Y. Sept. 10, 2013) (Incentive awards "are particularly appropriate in the employment context where the plaintiff is often a former or current employee of the defendant, and thus . . . he has, for the benefit of the class as a whole, undertaken the risks of adverse actions by the employer or co-workers." (alteration in original) (quoting *Frank*, 228 F.R.D. at 187) (internal quotation marks omitted)); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (noting that named plaintiffs risk future employers finding out, through a simple Google search, that they filed a class action lawsuit against their prior employer); *Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees . . . fac[e] potential risks of being blacklisted as 'problem' employees.").

| | |
|---|---|
| 1 | Dated:  August 29, 2016 |

   /s/ *Jahan C. Sagafi*
Jahan C. Sagafi  (Cal. Bar No. 224887)
jsagafi@outtengolden.com
Katrina L. Eiland (Cal. Bar No. 275701)
keiland@outtengolden.com
OUTTEN & GOLDEN LLP
One Embarcadero Center, 38th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Allen R. Vaught (admitted *pro hac vice*)
avaught@baronbudd.com
BARON & BUDD, P.C.
3102 Oak Lawn Ave, Suite 1100
Dallas, TX 75219
Telephone:  (214) 521-3605
Facsimile:  (214) 520-1181

Robert P. Kondras, Jr. (admitted *pro hac vice*)
kondras@huntlawfirm.net
HUNT, HASSLER & LORENZ LLP
100 Cherry Street
Terre Haute, IN 47807
Telephone: (812) 232-9691
Facsimile: (812) 234-2881

*Attorneys for Plaintiffs and Settlement Class Members*